**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** KINGS

----------------------------------------------------------------x

GARY APPLE,

Plaintiff/Petitioner,

- against -

Index No.501944/2023

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

Defendant/Respondent.

----------------------------------------------------------------x

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Case)**
(Uniform Rule § 202.5-bb)

**You have received this Notice because**:

1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney. (Attorneys: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

**If you choose to participate in e-filing, you must have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

- serving and filing your documents electronically
- free access to view and print your e-filed documents
- limiting your number of trips to the courthouse
- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: www.nycourts.gov/efile-unrepresented or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated: 01.19.2023

Stewart Lee Karlin, Esq.
Name
Stewart Lee Karlin Law Group, PC
Firm Name

111 John St., 22nd Fl., NY, NY 10038
Address

(212) 792-9670
Phone

slk@stewartkarlin.com
E-Mail

To: NYC Law Department
100 Church Street
New York, NY 10007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------------------------X

GARY APPLE,

Plaintiff,

-against-

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

Defendant.

----------------------------------------------------------X

Index No. 501944/2023

Date Purchased:

Plaintiff designates Kings County as the place of trial

**SUMMONS**

The basis of the venue is:
Kings County where Defendant resides.

Plaintiff resides: 243 E. 81st St., 7A, New York, NY 10028

To the above-named Defendants:

You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons to serve a notice of appearance on the Plaintiff's attorney within twenty days after service of the summons exclusive of the day of the service, where service is made by delivery upon you personally within the state, or within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
January 19, 2023

Yours, etc.,

DEFENDANT'S ADDRESS
NYC Law Department
100 Church Street
New York, New York 10007

s/ Stewart Lee Karlin
STEWART LEE KARLIN, ESQ.
Attorney for Plaintiff
111 John Street, 22nd Floor
New York, New York, 10038
(212) 792-9670

NEW YORK STATE SUPREME COURT
COUNTY OF KINGS
-------------------------------------------------------X
GARY APPLE,

Plaintiff,

Index No. 501944/2023

-against-

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

Defendant.
-------------------------------------------------------X

**COMPLAINT AND JURY DEMAND**

Plaintiff Gary Apple, by his attorney, STEWART LEE KARLIN, LAW GROUP, PC., by and through their undersigned counsel for his complaint herein alleges as follows:

**FIRST CLAIM FOR RELIEF-IDEA**

**Nature of the Proceeding**

1. The proceeding is an enforcement action pursuant to the Individual with Disabilities Act ("Hereinafter "IDEA"), 20 U.S.C. § 1415 (I) (2) (a) from a series of favorable Impartial Hearing decisions in which the Defendant Department of Education of the City of New York (hereinafter the "DOE or Defendant") was ordered to reimburse Plaintiff for tuition but refused to do so.

2. Defendant is in violation of the IDEA, and the laws of the State of New York which require that children with disabilities receive an appropriate and adequate education and not to be intentional discriminated against due to a disability and be reasonable accommodated. The decisions are attached as Exhibit "A through Exhibit "C"

## THE PARTIES

3. Plaintiff Gary Apple is the father of EA who resides in within the City of New York where the DOE is required to deliver a free and appropriate education to his daughter.

4. Defendant DOE is charged by law with the responsibility for the operation, management and control of public education within the City of New York. Among the School Board's duties are responsibility pursuant to IDEA and New York law, for providing a FAPE to all children who reside within the City of New York including Plaintiff Apple's daughter. The DOE is further responsible for finding children with disabilities and providing them with an appropriate IEP and following the Impartial Hearing decision including decisions that require reimbursement.

## JURISDICTION AND VENUE

5. This court has concurrent jurisdiction over the subject matter of this proceeding pursuant to IDEA, 20 U.S.C. §1415, (I) (2) (A).

6. Venue lies in Kings County in that the DOE principal place of business is in Kings County.

## FACTUAL STATEMENT

7. Plaintiff seeks recovery of the tuition at the Robert Louis Stevenson School for four years for Mr. Apple's daughter EA. The years not reimbursed by the Defendants are: 2018-2019; 2019-2020; 2020-2021; and 2021-2022. Financial loss to Mr. Apple after the Defendants refused to comply with the orders of the Impartial Hearing Officers in IHO Decisions #178252 by IHO Edgar de Leon (never Appealed by the Defendants) and #220018 by IHO Steven Forbes (never Appealed by Defendants) in sum total is $243,320.00. This amount must be paid directly to parent, the Mr. Apple.

8. The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." Bd. Of Educ. V. Rowley, 458 U.S. 176, 179-91 (1982). Implicit in the congressional purpose of providing access to a free and appropriate public education (hereinafter "FAPE") is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicap child. (Id.)

9. Pursuant to 20 U.S.C. §1401(9) and 34 C.F.R. §300.17 FAPE is defined as follows:

> Special Education and related services that are provided at public expense under public supervision and direction and without charge; meet the standards of the SEA… include an appropriate preschool, elementary school, or secondary school education in the State involved; and are provided in conformity with the individualized education program (IEP).

10. In determining the appropriate placement for a child, preference is given to the least restrictive environment and the appropriate schools nearest the child's home (Id.). The IDEA requires that unless the IEP of a child with a disability requires some other arrangement, the child is to be educated in the school that he or she would attend if the student was otherwise not disabled. In selecting the least restrictive environment, consideration is given to any potential harmful effect on the child or on the quality of the services that he or she needs. A child with a disability is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general education curriculum. See 34 C.F.R. § 300.116.

11. Where a school system fails to provide special education or related services to a student with a disability, the student is entitled to compensatory education, "i.e., replacement of educational services the child should have received in the first place." Reid v. District of

Columbia, 401 F.3d 516 (D.C. Cir. 2005). An award of compensatory education "should aim to place the disabled children in the same position they would have occupied but for the school district's violations of IDEA" (Id.). Compensatory education is a remedy for "past deficiencies" therefore a finding as to whether a student was "denied a FAPE in the relevant time period is a necessary prerequisite to a compensatory education award." Peak v. District of Columbia, 526 F. Supp. 2d 32 (D.C. Cir. 2007).

12. Pursuant to New York Education Law § 4401(c)(1) the DOE shall have the burden of proof, the burden of persuasion, and the burden of production in impartial hearings except for instances where the parent is seeking tuition reimbursement for a unilateral parental placement and in those cases the parent shall have the burden of persuasion and the burden of production as to the appropriateness of the placement. The burden of proof in matters such as this shall only be met upon a fair preponderance of the evidence. The preponderance of the evidence standard requires that the trier of fact to find that the existence of a fact is more probable than its nonexistence. Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust for Southern California, 508 U.S. 602, 622 (1993).

13. At no time during the years cited herein did the Defendants present any evidence whatsoever that indicated that it had provided Mr. Apple's daughter with a FAPE. Additionally, Defendants failed to make a recommendation for an appropriate program for Student for any year after EA left the iSchool, in 2017. IHO Forbes wrote in his July, 2022 decision:

> "A school district may not argue that the "equities are in its favor once it has failed to provide a FAPE or concedes that it has not. N.R. v. Department of Education of the City of New York, 2009 WL 874061 (S.D.N.Y. 2009). In any case, in the instant matter, the

> Respondent offered no evidence or argument on the subject of the equities. I therefore find that the District has conceded the that there are, in fact, no equitable considerations which would mitigate against full reimbursement. In addition, a review of the evidence in the record reveals that no such equitable considerations exist." (See Exhibit "C"

14. A court or a hearing officer may order a district to reimburse the parents of a student with a disability for the student's unilateral private placement if the district failed to make a FAPE available in a timely manner and the unilateral private placement is appropriate, 34 CFR 300, 148 (c); Florence County Sch. Dist. Four v. Carter, 20 IDELR 532 (US 1993). A unilateral private placement is appropriate for reimbursement purposes if it offers instruction that is specially designed to meet the student's unique needs as well as the support services the student requires to benefit from that instruction, M.N. v. State of Hawaii, Dep't of Educ., 60 IELR 181 (9th ir. 2013, unpublished); Ward v. Board of Education of the Enlarged City Sch. Dist. Of Middletown, NY, 63 IDELR 121 (2d Cir. 2014, unpublished).

15. In the case brought herein for payment reimbursement, Defendants did not challenge the appropriateness of the unilateral placement. Moreover, there was a clear demonstration that the unilateral placement chosen by the Parent was appropriate. Specifically, the evidence demonstrated that RLS engaged Student in classes, programs and related services which were specifically tailored to address Student's needs and challenges. Student was provided with numerous accommodations and afforded the opportunity to engage in both individual and small group instruction, and related services providers that collaborated with her classroom teacher. Over the course of the four school years cited here as unpaid (an additional amount of $50,000 was settled with Defendants in 2018, Decision #171299 and is not included in this Notice of Claim), Student demonstrated consistent progress across a

broad array of subjects and areas of disability and continued to show marked personal growth.

16. IHO Forbes stated in his Decision (#220018, p. 14):

> "A school district may not argue that the "equities are in its favor once it has failed to provide a FAPE or concedes that it has not. N.R. v. Department of Education of the City of New York, 2009 WL 874061 (S.D.N.Y. 2009). In any case, in the instant matter, the Respondent offered no evidence or argument on the subject of the equities. I therefore find that the District has conceded the that there are, in fact, no equitable considerations which would mitigate against full reimbursement. In addition, a review of the evidence in the record reveals that no such equitable considerations exist."

17. Mr. Apple's daughter was a student at the iSchool, a public school, at the beginning 2017. Every day was a struggle at the iSchool. She was placed in every type of class configuration, dealt with numerous school counselors and psychologists, and her parents attended countless meetings with faculty and administrators. Though Student is a lovely and kind child, she had no friends, and experienced her days in isolation. She was bullied, not invited to parties, and did not attend school functions. She was not misbehaving but shutting down. Because Student is different and has special challenges, over the years she had grown separated from her peers, and began to exhibit self-harm.

18. As far as EA's performance and grades at the iSchool were concerned, early on it became clear that she was failing. Yet, despite this very early indication things were going poorly, none of the teachers or staff reached out to the parents to discuss the situation and come up with possible solutions. Time after time, the parents sent emails to the staff, pleading for more information and meetings to discuss ways to help EA. Usually these emails were not answered, and no one ever requested that the parents come in to discuss EA's needs.

19. The parents' efforts to keep EA in the public-school setting worked out terribly. Despite all their efforts to work with the NYC Department of Education and the CSE, the results were poor. EA's needs were simply not being met.

20. In the fall of 2017 EA's parents were in despair. The public-school system simply had not been able to get through to her. In the Fall of 2017, the parents concluded that in the proper environment, Student could experience educational success, friendship, bonding, and the self-esteem that had eluded her over the many years in the public-school system. The parents were not critical of the NYC public school system in general. Indeed, Student's twin sister continued to thrive in public school but Student was doing just the opposite.

21. The parents and Student toured schools and found Robert Louis Stevenson. They were very impressed with the school's approach and felt confident that EA's emotional and psychological needs would be met along with her scholastic goals.

22. Thereafter an Impartial Hearing request was made by Mr. Apple and his Advocate in December 2017 for reimbursement of the tuition at RLS for November 2017-June 2018, $50,000.

23. The DOE agreed that they had not provided Student with FAPE, and the NYC Department of Education had no alternative setting to recommend.

24. On March 1, 2018, the Department informed the Advocate, Betsy Combier, that Impartial Hearing case #171299 had been recommended for settlement. All parties signed a settlement agreement on August 7, 2018.

25. Mariam Mahmood Qureshi, Director of the Special Education Unit in the Office of the General Counsel of the NYC Department of Education signed the final Stipulation of Settlement for the case #171299, and Arbitrator Mindy Wolman signed an Order of

Termination on August 23, 2018. The parents received a check for $50,000 after submitting all the required documents.

26. On May 16, 2018 the new psychoeducational evaluation of Student by Dr. Sonel Rowley and Dr. Peter Pramataris at Lenox Hill Hospital was received by Mr. Apple.

27. On May 29, 2018, the parent advocate sent an email to CSE 10 on West 125th Street in Manhattan asking for an IEP meeting. No response was ever received. No IEP meeting was set up by the CSE, and no alternative placement for Student was sent from the Department.

28. Mr. Apple requested an Impartial Hearing in October 2018. In March, tragedy struck Student's family when her mother suffered a brain aneurism, and was incapacitated. EA and her sister moved into their father's apartment (the parents were divorced) and the father, Mr. Apple, obtained custody.

29. Impartial Hearing #178252 was held on December 21, 2018 in front of Arbitrator Edgar De Leon. Parent Advocate requested $6,950 for the July 2018 summer school session, and $69,500 tuition for the school's tuition 2018-2019. At the Hearing the Department brought in one person to testify, Ms. Ann Metroka. Ms. Metroka and the Department submitted the SESIS Event Log (Entry #8, dated 12/14/18) for Student's case which showed that Ms. Metroka had called Student's mother to discuss the case, and Ms. Metroka was told by mom that an IEP was not necessary, but to please speak with the Advocate. No calls were made to the Advocate by Defendant.

30. On this SESIS report submitted by the Defendants in their case was an entry showing that Ms. Metroka had deleted Student's case log from the database in or about mid-April 2018.

31. On April 30, 2019, Arbitrator Edgar De Leon issued the following Decision:

> "ORDERED that upon reasonably satisfactory proof of services having been rendered, the DOE shall either reimburse the Parent or

directly pay the cost of the student's tuition at the private school for the 2018-2019 school year as follows: July 2018 Summer Session at the private school ($6,950) and tuition reimbursement and/or direct payment for the student's 2018-2019 academic year at the private school ($69,500), totaling: $76,450; and it is further

ORDERED that the CSE shall forthwith reconvene to produce a new IEP for the student that considers all of the student's available evaluations and any related services that he should receive for the 2019-2020 school year."

32. Defendant did not Appeal the final Order of HO de Leon. The required documents (Student's grades, attendance, progress reports and financial data on checks sent for the entire amount of tuition 2018-2019) were submitted to the NYC Department of Education on or about the middle of May 2019, about two weeks after the decision was issued.

33. Mr. Apple and Advocate never heard from the Defendants about any IEP meeting until March 16,2021, when an IEP meeting was held with CSE 10. No payment of the $76,450 has been made, pursuant to the Order of Arbitrator Edgar De Leon dated April 19 2019. In 2021 Mr. Apple once again submitted all the necessary papers with Student's grades, attendance, services, etc., yet no payment was received nor was any explanation given to Mr. Apple.

34. Reimbursement for 2019-2020 put on hold due to the pandemic and the lack of payment by the Department after the decision in Case #178252 in 2019.

35. From April 2019 to September 2022, Mr. Apple and his Advocate made countless calls to CSE 10, the Impartial Hearing Implementation Office and others at the NYC Department of Education, including the Office of Special Education Policy, Contracts and Purchasing, non-public schools' payments, and the Committee For Special Education asking for the status of the reimbursement.

36. Mr. Apple was told in June 2020 that all hearings were put on hold, and to wait until June 2021 due to COVID. Nonetheless, he and his Advocate continued to try to reach anyone at the non-public payables' office, all in vain. As stated above, the CSE finally scheduled an IEP meeting in March 2021 and sent a placement letter to Mr. Apple, who did not accept it. The Life Sciences School on East 96th Street could not offer Student a FAPE.

37. In October 2021 Mr. Apple filed a request for reimbursement of the tuition:

• As a result of the Impartial Hearing #178252, the Award of $76,450

• For summer 2020 and the academic year 2020-2021: $81,950

• For summer 2021 and the academic year 2021-2022: $84,920

TOTAL: $76,450 (2019 Award) +$166, 870 (tuition + summer 2020-2021, 2021- 2022)

38. At the Hearing in 2022, IHO Forbes informed Mr. Apple that he could not order the 2018-2019 payment cited in the Decision of IHO de Leon in April 2019. Forbes told Mr. Apple he had to seek relief in a Court.

39. On July 26, 2022, IHO Steven Forbes issued an ORDER:

• That the New York City Department of Education is directed to reimburse and/or fund the cost of the Student's 2020-2021 and 2021-2022 placement at RLS in the amount of $166,870.00;

• As to the tuition reimbursement/funding, all payments shall be made directly to the non-public, unilateral placement(s) upon a showing by the Parent that tuition has not been paid out-of-pocket by the Parent. If the Parent can show that out-of-pocket payment to the placement(s) was made by the Parent, then the Parent shall be reimbursed by the District;

• The district must immediately upon receipt, enter this order on a system that is used to keep track of such orders.

40. In support of his Order, HO Forbes wrote:

> "In the instant matter, the Respondent presented no evidence whatsoever that indicated that it had provided Student with a FAPE for the 2020-2021 and 2021-2022 school years. Moreover, the evidence is quite clear that Respondent failed to make a recommendation for an appropriate program for Student for either the 2020-2021 or 2021-2022 school year. As a result, there can be little question that the Student was denied a FAPE for the 2020-2021 and 2021-2022 school years…One of the fundamental tenets of equity jurisdiction is that 'he that hath committed iniquity shall not have equity.' (p. 11) …. Moreover, there was a clear demonstration that the unilateral placement chosen by the Parent was appropriate." (p. 12)

41. The order was not appealed and Plaintiff had requested payment on many occasions.

42. A court or a hearing officer may order a district to reimburse the parents of a student with a disability for the student's unilateral private placement if the district failed to make a FAPE available in a timely manner and the unilateral private placement is appropriate, 34 CFR 300, 148 (c); Florence County Sch. Dist. Four v. Carter, 20 IDELR 532 (US 1993).

43. In neither of the cases brought herein, #178252 and #220018", did Defendant challenge the appropriateness of the unilateral placement. Specifically, the evidence demonstrated that RLS engaged Student in classes, programs and related services which were specifically tailored to address Student's needs and challenges. Defendant never appealed either HO de Leon nor HO Forbes' Orders.

44. Defendant offered no evidence or argument on the subject of the equities, and therefore the Department conceded that there are no equitable considerations which would mitigate against full reimbursement. "A school district may not argue that the "equities are in its favor once it has failed to provide a FAPE or concedes it has not. N.R. v. Department of Education of the City of New York, 2009 WL 874061 (S.D.N.Y. 2009)" (Forbes Order, p. 14).

45. HO Forbes included in his Order the class action case L.V. v. NYC Department of Education, 03 Civ. 9917 (SDNY). This lawsuit challenged the failure of the Department of Education ("DOE") of the City of New York to timely implement orders issued by impartial hearing officers in connection with impartial hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq. and N.Y. Education Law § 4401, et seq. In 2007, the parties entered into a Stipulation of Settlement (the "Stipulation") in which the DOE agreed to timely implement these orders.

46. In January 2021, the Court granted plaintiffs' motion for the appointment of a special master. On April 14, 2021, the Court entered an Order appointing David Irwin of Thru-Ed as the Special Master. On May 14, 2021, the Court entered an Order detailing the duties and authority of the Special Master which included, among other things, the authority to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders. Pursuant to this Order, the Special Master may have access to education records of students, upon DOE's compliance with the Family Education Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. Part 99) ("FERPA").

47. In April 2021 Plaintiff's Advocate contacted Advocates For Children and the Defendant to give information about the non-payment of the April 2019 Order of HO de Leon. Advocate continued to attempt to get this payment from the Defendant.

48. On December 13, 2022, Plaintiff received an email, attached below as Exhibit "D", saying in relevant part:

> "Re: Non-Implementation Notice: LV v. New York City Department of Education

Case number: 178252

Order Date: 5/3/2019

Dear Parent:

As part of the Settlement in LV, et al. v. New York City Dept. of Educ., et al., an Independent Auditor reviews the timeliness of the New York City Department of Education's ("DOE") implementation of impartial hearing orders.

The Independent Auditor has reviewed the DOE's implementation of the Order(s) issued in the case(s) referenced above. Based on its review, the Independent Auditor has determined that the DOE has failed to timely implement all or part of the Order(s) referenced above concerning your child."

49. Because payment has not been received for either of the HO Orders #178252 and #220018, Plaintiff duly filed a notice claim on October 1, 2022 and the claim remains unadjusted.

50. As a result of the foregoing conduct by the School Board, the School Board has violated IDEA 20 U.S.C. § 1400 et. seq. and the regulations promulgated pursuant to IDEA and as result plaintiff has been damaged in the amount of $243,320.00 for the tuition reimbursement and any other relief that is fair and proper.

51. Plaintiff is also seeking a reasonable attorney fee and costs and expenses.

WHEREFORE, it is respectfully requested for the aforementioned reasons that a judgment be made declaring for the aforementioned reasons that IDEA has been violated and that the DOE be ordered to reimburse the Plaintiff pursuant to the Impartial Hearing Orders for $243,320.00 for

the tuition reimbursement to Plaintiff, attorney fees, costs and expenses and any other relief that is fair and proper.

**PLAINTIFF HEREIN DEMANDS A JURY TRIAL**

Dated: New York, New York
January 19, 2023

STEWART LEE KARLIN
LAW GROUP, P.C.

Stewart Lee Karlin, Esq.
*Attorneys for Plaintiff*
111 John St., 22nd Floor
New York, NY 10038
(212) 792-9670
slk@stewartkarlin.com

# EXHIBIT "A"

FINDINGS OF FACTS & DECISION

| | |
|---|---|
| Case Number: | 178252 |
| NYS Identifier Number | N/A |
| Student's Name: | ["Confidential"] |
| Date of Birth: | March 21, 2003 |
| District: | 03 |
| Hearing Requested By: | Parent |
| Dates(s) of Hearing: | 12/21/18 |
| Actual Record Close Date: | 04/19/19 |
| Hearing Officer: | Edgar De Leon |

Case No. 178252

NAMES AND TITLES OF PERSONS WHO APPEARED

| Name | Title | For | Date |
|---|---|---|---|
| Nessan O'Sullivan | DOE Representative | DOE | 12/21/18 |
| Ann Metroka | Special Ed. Teacher | DOE | 12/21/18 |
| Betsy Combier | Advocate | PARENT | 12/21/18 |
| Gary Apple | Father | PARENT | 12/21/18 |
| Lana Farina | Clinical Director | PARENT | 12/21/18 |

On October 3, 2018, I was appointed as the Impartial Hearing Officer ("IHO") to conduct a hearing pursuant to the Individual with Disabilities in Education Act ("IDEA"), 20 United States Code, Section 1415(f)(1) and Part 200 of the Regulations of the Commissioner of Education, concerning a dispute between the Parent of a (16) year old student attending a private school and the New York City Department of Education ("DOE") - District: 03, regarding the student's special education program. I was appointed after the recusal of at least one other IHO. After adjournments were granted on consent of the parties or for cause, the impartial hearing was held on December 21, 2018 A list of the witnesses who appeared and the documents taken into evidence is annexed to this decision.

## BACKGROUND

The Parent in this case alleges that the student was denied a "free and a appropriate public education" ("FAPE") for the 2018-2019 extended school year. At the impartial hearing, the Parent seeks the following relief: Tuition reimbursement and/or direct payment for the student's July 2018 Summer Session at the private school ($6,950) and tuition reimbursement and/or direct payment for the student's 2018-2019 academic year at the private school ($69,500), totaling: $76,450.

## THE DOE'S CASE

The DOE concedes that an IEP and an offer of FAPE was not made for the 2018-2019 school year. (T-20) However, the DOE argues that the Parent failed to cooperate with the agency and frustrated its efforts to provide FAPE for the "10-month" student. (T-21)

The DOE called (1) witness to testify on its behalf and submitted (8) documents in evidence. In sum, substance and relevant part, the testimony on behalf of the DOE is as follows:

The DOE's only witness works at the CSE 10 as an assigned teacher. (T-32-3) She testified that the original IEP meeting date was in March of 2018. (T-34) She does not know who sent the assessment letter to the Parent but it did not come out of her unit. (T-34 & D-2) She called the private school to obtain progress reports and called the Parent to schedule the March 5th meeting at 1:15 pm. (T-38) The student's mother asked her for the meeting to be re-scheduled for mid-April on a Friday. (T-39) At that point, the Parent did not have an advocate. (T-40) She only became aware that the Parent had an advocate on April 13th, the same day the meeting was scheduled to occur. (T-41) Subsequently, she spoke with the advocate and understood that the Parent no longer wanted the services, which the student's father also stated. (T-42) After that, the advocate changed her position and asked for an IEP in late May and from that point, the DOE had (60) days to produce the document. (T-46)

During cross examination, the witness testified that the student's mother stated she had a private evaluation done on March 5th that she would share with the DOE. (T-48-9) The day before the April meeting, the student's father contacted her and told her that the student was attending a private school and did not see the need for a CSE meeting. (T-56) The father subsequently sent the same message in an email that he copied the advocate on. (T-57-8) The father did not tell her that he had gotten a private evaluation. (Id.) However, she eventually received the private evaluation that came with a request for a meeting which she did nothing about because it was addressed to

the Chairperson who would handle it. (T-59) She did not contact the advocate because they work directly with the Parents, unless the Parent indicates that she is to call the advocate and she received no indication from the Parent that she would be working with the advocate. (T-60) She received the Parent's email on April 18th. (T-62) The next email she received from the advocate was on the 18th later in the day, in which the advocate stated that they would not be using the DOE special education services and did not understand why they must attend an IEP meeting. (T-63)

The witness further testified that she learned of the student's mother's brain aneurysm in April. (T-67) There is an entry from "Maurice Collins" on July 17, 2018 that indicates the student's mother wants an IEP and is following up, but she does not know what happened after that entry was made. (T-79-80)

There was no substantive testimony developed during the witness' re-direct examination and there was no re-cross examination of the witness. (T-82-4)

THE PARENT'S CASE

The Parent argues that the student was failing in public school and was pulling her hair and showing other anxious disorders. (T-22-3) The Parent concedes that the DOE sent notice of an IEP meeting to the student's mother but did not notify the student's father and her advocate, of whom the agency was aware. (T-28-9)

The Parent called (2) witness and submitted (5) documents in evidence. In sum, substance and relevant part, the testimony on behalf of the Parent is as follows:

The Parent's first witness has a PhD in psychology who is licensed in New York State and is the Clinical Director of the private school. (T-87-8) She testified that she met the student in November of 2017 during the admissions process. (T-90-1) They

reviewed the student's psychoeducational or neuropsychological evaluation and an updated letter from her psychiatrist. (T-91) The student's grades for the 1st quarter of the 9th grade in the 2017-2018 school year shows (6) classes, (5) of which she received an "F" failing grade and in(1) she received a "C." (T-92-3 & P-D) The student's evaluation indicated that the student had "trichotillomania" where she would pull out and ingest her hair and has ADHD, with difficulties in executive functioning and tremendous social difficulties. (Id.) The student also had a history of being bullied and was perceived as oppositional and defiant. (Id.)

The witness testified that the student was previously in an ICT class. (T-98) In her opinion, a 12:1 class would still be too large for the student. (T-101) At the private school, the student is in a class with (5) to (10) students with (1) teacher. (T-102-3) The private school teachers are also advisors taught in ways to engage complex students. (T-103-4) The private school uses "dialectic behavior treatment" ("DBT") which is an evidence-based treatment that is geared towards students with complex issues. (T-108) The private school does not accept students with considerable behavior problems because they are a school for internalizing issues like anxiety, depression and ADHD. (T-110) There are (75) students at the private school and all have special needs. (Id.) The student has perfect attendance at the private school. (T-111)

The witness further testified that the student is making progress with making eye contact and is feeling more comfortable at the private school. (T-112) The student's grades have not been consistent and she continues to require step-by-step instruction to transition. (T-113-6) The private school is a small, specialized, therapeutic college-

prep program that offers on-demand clinical support. (T-118) The private school's learning specialist can either "push-in" or "pull out" and provides on-going support to every teacher. (T-118-9) The student spends one full period every day with the learning specialist. (Id.)

On cross examination, the witness testified that the student is taking a photography class because she requested it. (T-123-4) The work with the learning specialist in the learning center does include a lot of focus on math, but she's available to work on any subject needed with the student. (T-125)

There was no substantive testimony developed during the witness' re-direct examination and there was no re-cross examination of the witness. (T-128-31)

The second and final witness for the Parent is the student's father. (T-132) He testified that he is divorced from the student's mother for about 12 years. (T-133) At the public school the student was failing everything. (T-135-6) Since the divorce their children were pretty evenly split between him and the student's mother but since the aneurysm, they are with him (100) percent of the time. (T-140) The mother' aneurysm occurred March of this year. (Id.) He does not know if the DOE had him listed as a contact person and did not have to interact with the DOE much at all, as they were having a private evaluation, and had retained an advocate. (Id.) In the past he had been contacted by the DOE and he did not tell the agency about the student's mother's aneurysm. (T-141)

During cross examination, the witness testified that he did not recall sending an email on April 13th that said "Please cancel tomorrow's IEP meeting. Since [student's

name] is in private school that is directly addressing her needs, the evaluation does not seem necessary at this moment." (T-154-5 & D-8)

There was no substantive testimony developed during the witness' re-direct examination and there was no re-cross examination of the witness. (T-155-6)

FINDINGS OF FACTS & DECISION

IDEA ensures that students with disabilities are afforded a free and appropriate public education ("FAPE"). (20 U.S.C. § 1400 & Schaffer v. Weast, 126 S.Ct. 528 [2005]) A FAPE includes special education and related services designed to meet the student's unique needs, provided in conformity with a comprehensive written IEP. (20 U.S.C. 1401(8) & 141(d) and 34 C.F.R. § 300.13) The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief. (Schaffer, 126 S.Ct. 528, 537)

The DOE may be required to reimburse Parents for their expenditures for private educational services obtained for a student, if the services offered by the DOE were inadequate or inappropriate, the services selected by the Parents are appropriate and equitable considerations support the parent's claim. (Sch. Comm. Of Burlington v. Dept. of Educ., 471 U.S. 359 (1985), Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993), Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2nd Cir. 2005])

The first step is to determine whether the DOE offered to provide the student a FAPE. (Mrs. C. v. Voluntown, 226 F.3d 60, 66 [2nd Cir. 2000]) A FAPE is offered to a student when (a) the DOE complies with procedural requirements set forth in IDEA and (b) the IEP developed by the CSE through the procedures set forth in IDEA, is reasonably calculated to enable the student to receive educational benefits. (Bd. Of

Educ. V. Rowley, 458 U.S. 176, 206-7 [1982]) The student's recommended program must also be provided in the least restrictive environment ("LRE"). (20 U.S.C. § 1412(a)(5)(A), 34 C.F.R. § 300.550(b), 8 NYCRR §200.6(a)[1])

The Parent bears the burden of showing that the private school placement selected is appropriate. (SRO Nos.: 95-57, 94-29 & 93-34) The Parents must show that the private school placement offers an educational program that meets the student's special education needs. (Burlington, 471 U.S. at 370 & SRO No. 94-20) The private school need not be approved by the state educational agency to provide instruction to children with disabilities. (Florence County School District Four et. al. v. Carter, 510 U.S. 7 [1993]). It is also not required that the private school employ certified special education teachers or have its own IEP for the student. (SRO No. 94-20)

Finally, the IHO must consider whether equitable considerations favor the Parents' request for tuition reimbursement. State Review Officer ("SRO") Decision 06-004 holds:

> Equitable considerations are relevant to fashioning relief under the IDEA (Burlington, 471 U.S. at 374; M. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 68 [2d Cir. 2000]; see Carter, 510 U.S. at 16 ["Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required"]). Such considerations "include the parties' compliance or noncompliance with state and federal regulations pending review, the reasonableness of the parties' positions, and like matters" (Wolfe v. Taconic Hills Cent. Sch. Dist., 167 F. Supp. 2d 530, 533 [N.D.N.Y. 2001], citing Town of Burlington v. Dep't of Educ., 736 F.2d at 773, 801-02 [1st Cir. 1984], aff'd, 471 U.S. 359 [1985]). With respect to equitable considerations, a parent may be denied tuition reimbursement upon a finding of a failure to cooperate with the CSE in the development of an IEP or if the parent's conduct precluded the CSE's ability to develop an appropriate IEP (Warren G. v. Cumberland Co. Sch. Dist., 190 F.3d 80, 86 [3rd Cir. 1999]; see Application of the Bd. of Educ., Appeal No. 04-102; Application of the Bd. of Educ., Appeal No. 04-026). In the absence of evidence demonstrating that petitioners failed to cooperate in the development of the IEP or otherwise engaged in conduct that precluded the development of an appropriate IEP, or failed to give proper notice,

equitable considerations generally support a claim of tuition reimbursement. (Application of a Child with a Disability, Appeal No. 04-049).

In Burlington, the Court found that Congress intended retroactive reimbursement to Parents by school officials as an available remedy in a proper case under the IDEA. (Burlington, 471 U.S. at 370-71, Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 111 [2d Cir. 2007] and Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186 at 192 [2d Cir. 2005]) "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it offered the student a FAPE. (Burlington, 471 U.S. at 370-71, 20 U.S.C. § 1412[a][10][C][ii] and 34 C.F.R. § 300.148)

Here, the DOE concedes that an IEP and an offer of FAPE was not made for the 2018-2019 school year. (T-20) Regardless of the Parent's initial refusal to participate in an IEP meeting, the DOE witness conceded that the advocate changed her position and asked for an IEP in late May of 2018 and from that point, the DOE had (60) days to produce the document. (T-46) That gave the agency plenty of time to produce an IEP for the student before the start of the 2018-2019 school year. The agency failed to do so. The DOE teacher testified that she did not contact the advocate because they work directly with the Parents, unless the Parent indicates that she is to call the advocate and she received no indication from the Parent that she would be working with the advocate. (T-60) It is evident that the Parent and advocate equivocated in their rejection and then request for an IEP meeting, but that does not excuse the agency's failure to honor and pursue the advocates' subsequent request for an IEP meeting. (Supra) Accordingly, I

find that the DOE did deny the student a FAPE and that equitable considerations do not bar an award of tuition reimbursement to the Parent.

A private school placement must be "proper under the Act." (See Carter, 510 U.S. at 12, 15 and Burlington, 471 U.S. at 370), i.e., the private school offered an educational program which met the student's special education needs. (See Gagliardo, 489 F.3d at 112, 115; Walczak, 142 F.3d at 129 and Matrejek, 471 F. Supp. 2d at 419) A parent's failure to select a program approved by the State in favor of an unapproved option is not itself a bar to reimbursement. (See Carter, 510 U.S. at 14) The private school need not employ certified special education teachers or have its own IEP for the student. (See Carter, 510 U.S. 7; SRO No. 08-085; 08-025; 08-016; 07-097; 07-038; 02-014 and 01-105) Parents also need not show that the placement provides every special service necessary to maximize the student's potential. (See Frank G., 459 F.3d at 364-65) When determining whether the parents' unilateral placement is appropriate, "[u]ltimately, the issue turns on" whether that placement is "reasonably calculated to enable the child to receive educational benefits." (See Frank G., 459 F.3d at 364; see Gagliardo, 489 F.3d at 115 [citing Berger v. Medina City Sch. Dist., 348 F.3d 513, 522 [6th Cir. 2003] [stating "evidence of academic progress at a private school does not itself establish that the private placement offers adequate and appropriate education under the IDEA"]])

The witness the psychologist who testified for the Parent said that the student was previously in an ICT class but at the private school, the student is in a class with (5) to (10) students with (1) teacher. (T-98 & 102-3) The private school teachers are advisors taught in ways to engage complex students and uses “dialectic behavior

treatment" ("DBT") which is an evidence-based treatment that is geared towards students with complex issues. (T-103-4 & 108) There are (75) students at the private school, all with special needs and the student has perfect attendance. (T-111) The student is making progress at the private school with making eye contact and is feeling more comfortable at the private school although her grades have not been consistent and she continues to require step-by-step instruction to transition. (T-112-6) Nevertheless, the private school is a small, specialized, therapeutic college-prep program that offers on-demand clinical support and its learning specialist can either "push-in" or "pull out" and provides on-going support to every teacher. (T-118-9) The student spends one full period every day with the learning specialist. (Id.) In my opinion, the private school is "reasonably calculated to enable the child to receive educational benefits." (See Frank G., Gagliardo & Berger, supra)

For all of the reasons stated herein, I find that the Burlington/Carter test is satisfied in favor of the Parent and that they have met their burden under Schaffer to prevail in their request for tuition reimbursement.

**NOW therefore**, it is hereby

**ORDERED** that upon reasonably satisfactory proof of services having been rendered, the DOE shall either reimburse the Parent or directly pay the cost of the student's tuition at the private school for the 2018-2019 school year as follows: July 2018 Summer Session at the private school ($6,950) and tuition reimbursement and/or direct payment for the student's 2018-2019 academic year at the private school ($69,500), totaling: $76,450; and it is further

**ORDERED** that the CSE shall forthwith reconvene to produce a new IEP for the student that considers all of the student's available evaluations and any related services that he should receive for the 2019-2020 school year.

DATED: April 30, 2018
New York, New York

*Edgar De Leon mw*
Edgar De Leon - I.H.O.

**PLEASE TAKE NOTICE**

**The parent and/or the New York City Department of Education has a right to obtain a review of this decision by a State Review Officer of the New York State Education Department under Part 200.5(k) of the Regulations of the Commissioner of Education, Section 4404 of the Education Law, and the Individuals with Disabilities Education Act. Directions and forms can be found on the Office of State Review website: http://www.sro.nysed.gov/RevisedRegulationsOverview.html**

Case No. 178252

DOCUMENTATION ENTERED INTO RECORD

| Number/Letter | Title | Dated | For | # of Pages |
|---|---|---|---|---|
| 01 | DPC | 10/01/18 | DOE | 04 |
| 02 | 10-Day Notice | 11/21/17 | DOE | 01 |
| 03 | Assessment Planning | 01/19/18 | DOE | 01 |
| 04 | Meeting Notice | 02/02/18 | DOE | 03 |
| 05 | Meeting Notice | 03/06/18 | DOE | 03 |
| 06 | Assessment Planning | 04/03/18 | DOE | 01 |
| 07 | Case Closing Form | 04/19/18 | DOE | 02 |
| 08 | SESIS Event Log | 12/14/18 | DOE | 05 |
| A | *Withdrawn / Not Received* | N/A | PARENT | N/A |
| B | School Contract | 11/2018 | PARENT | 07 |
| C | 1st Qtr. Assessment | 11/2018 | PARENT | 06 |
| D-E | *Withdrawn / Not Received* | N/A | PARENT | N/A |
| F | Lenox Hill Hospital | 11/03/17 | PARENT | 02 |
| G | Lenox Hill Hospital | 11/01/17 | PARENT | 02 |
| H | Psychoeducational Evaluation | 05/10/18 | PARENT | 19 |
| I-K | *Withdrawn / Not Received* | N/A | PARENT | N/A |
| N/A | N/A | N/A | IHO | N/A |

# EXHIBIT "B"

# IMPARTIAL HEARING

# For

# Emily Apple

# Case # 220018

# May 13, 2022

# HEARING OFFICER

# STEVEN FORBES, ESQ.

**Submitted by Parent Advocate Betsy Combier**

# INDEX

| ID | DATE | TITLE | PAGES |
|---|---|---|---|
| A. | October 22, 2021 | Impartial Hearing Request | 6 |
| B. | July 2020 | Summer School Record | 4 |
| C. | July 2021 | Summer School Record | 5 |
| D. | 2020-2021 | School Records | 33 |
| E. | 2021-2022 | School Records | 28 |
| F. | 2020-2022 | Parent's Payments | 13 |
| G. | March 19, 2021 | CSE School Placement | 11 |
| H. | April 19, 2019 | Decision , Case #178252 | 14 |

A-1

Betsy Combier
315 East 65th Street, 4C
New York, N.Y. 10065
917-596-1762
Betsy.combier@gmail.com

Impartial Hearing Office
131 Livingston Street, Room 201
Brooklyn, NY 11201
IHOquest@schools.nyc.gov

October 22, 2021

New York State Education Department
Office of Special Education-Impartial Hearing Reporting System Unit
89 Washington Avenue-Room 307M
Albany, New York 12234

RE: Emily Apple
D.O.B. 3/21/2003
N.Y.C. ID #214371148

**REQUEST FOR IMPARTIAL HEARING**

To Whom It May Concern,

Emily Apple is currently a senior at the Robert Louis Stevenson School ("RLS") in Manhattan, and is receiving FAPE at this school, where she has pendency. She has been a student at RLS since November, 2017 when her parents had to take her out of her public school setting at the iSchool, in Manhattan, because Emily could not succeed either academically or emotionally in the public school setting. In this Request we ask for reimbursement to the parent Gary Apple for Emily Apple's placement in the Robert Louis Stevenson School for the 2020-2021 and 2021-22 school years, with the summer programs for both 2020 and 2021. Emily's attendance during both years has been notably excellent and the reason for the request herein for two academic years and summer school is the lack of timely response from the CSE of the Department of Education setting up an IEP meeting, discussing Emily's results and COVID-19 delays.

Parents are also requesting direct and immediate payment of the 2019 Award, $76,450, for the 2018-2019 school year and the 2018 summer session, which was won at an Impartial Hearing decided by Hearing Officer Edgar de Leon, on April 30 2019. The NYC Department of Education never appealed this Award, yet never paid the amount ordered, despite submission by the parent of all required documents to the NYC Department of Education Bureau of Nonpublic School Payables at 65 Court Street in Brooklyn in May 2019.

These facts are further detailed below.

Factual Background

A-2

Emily Apple is a twin. She and her twin sister were in the NYC public school system for 8 years. While Emily's twin sister was able to succeed at the iSchool from which she graduated in June 2021 and is now a freshman in college, Emily's story is very different. Every year was a struggle at the iSchool. She was placed in every type of class configuration, dealt with numerous school counselors and psychologists, and her parents attended countless meetings with faculty and administrators. Though Emily is a lovely and kind child, she had no friends, and experienced her days in isolation. She was bullied, not invited to parties, and did not attend school functions. She was not misbehaving, but shutting down. Because Emily is different and has special challenges, over the years she had grown separated from her peers.

As far as Emily's performance and grades at the iSchool were concerned, early on it became clear that she was failing just about everything. Yet, despite this very early indication things were going poorly, none of the teachers or staff reached out to the parents to discuss the situation and come up with possible solutions.

Time after time, the parents sent emails to the staff, pleading for more information and meetings to discuss ways to help Emily. Usually these emails were not answered, and no one ever requested that the parents come in to discuss Emily's needs.

Things kept getting worse but the parents continued to seek help from the iSchool faculty. The administrators never initiated any meetings or actions.

The parents attended every school meeting and conference, and reached out frequently for support from the school. The parents did not want Emily to attend a special private school. They wanted Emily to go to a public school with general education kids. The teachers and counselors were, however, clueless about how to get through to Emily. She tried to pay attention, but could not. She plucked out her eyebrows and chewed her finger nails. The public schools are simply not equipped to deal with someone like Emily. Emily disconnected from everything

The parents' efforts to keep Emily in the public school setting worked out terribly. Despite all their efforts to work with the NYC Department of Education and the CSE, the results were poor. Emily's needs were simply not being met. In the fall of 2017 Emily's parents were in despair. The public school system simply had not been able to get through to her.

In the Fall of 2017, the parents concluded that in the proper environment, Emily could experience educational success, friendship, bonding, and the self-esteem that had eluded her over the many years in the public school system. The parents were not critical of the NYC public school system in general. Indeed, Emily's twin sister continued to thrive in public school but Emily was doing just the opposite.

The parents and Emily toured schools and found Robert Louis Stevenson. They were very impressed with the school's approach and felt confident that Emily's emotional and

psychological needs would be met along with her scholastic goals. Also, and this is no small thing, Emily actually liked the school. The staff had a special way that seemed to get through to her.

The Advising Model

At Stevenson, Advisory is a cornerstone of their program. This is stated on their website:

" Based on concepts of mentoring and coaching, teachers form strong relationships for a full school year with their advisees. Intentionally non-clinical, Advisors are teaching faculty who help their cohorts make effective use of Stevenson's supports and opportunities. Students start each day with a 15-minute check-in, end with a 15-minute check-out and meet midday to work cooperatively on a given topic. No other school provides this level of daily advisory support as well as constant communication with parents.

Advisors, who are all classroom teachers, perform an essential function crucial to the success of Stevenson students. They meet with their advisees three times daily, both in groups and individually. Students receive help to cope with school-related pressures including attendance, punctuality, academic matters, behavior, feelings, and peer relationships, as well as issues that arise at home and in the community. Additional contacts take place to address any and all difficulties students may be facing in their academic, social, or personal lives. Rather than shielding the students from demands or expectations they might prefer to avoid, Advisors help students to face these realities. As such, students are helped not only to succeed academically, but also to develop dependable coping abilities for the various challenges of adolescence and beyond.

Advising groups are small, averaging eight students, and are formed based on our knowledge of students' psycho-social profiles. The fit with the personality of a particular Advisor, who is well-suited to serve their needs, is also considered. While the head Advisor is the lead contact with the students, a second faculty member serves as a backup Advisor to insure continuity and keep things running smoothly. The interpersonal composition of a group is also taken into consideration. It is our aim to create groups that are supportive and cultivate a sense of belonging.

With the close guidance of their Advisors, students learn to set realistic, attainable goals. They are given opportunities to try again and again without being labeled as failures and without feelings of defeat. We expect progress to be made in incremental, sometimes uneven steps (though at times surges forward do occur)."

At RLS, Emily is in a class with (5) to (10) students with (1) teacher. The teachers are also advisors taught in ways to engage complex students. The private school uses "dialectic behavior treatment" ("DBT") which is an evidence-based treatment that is geared towards students with complex issues, as in Emily's case.

Emily needs this educational support, and has continued to show improvement at RLS up to the present day. RLS is a small, specialized, therapeutic college-prep program that offers on-demand clinical support. The school's learning specialist can either "push-in" or "pull out" and provides on-going support to every teacher. Emily spends one full period almost every day with the learning specialist. This School offers Emily the necessary learning environment and support services she needs. Her parents and the staff at RLS agree that the school is the appropriate place for Emily, and she has won pendency.

Timeline of Events to Obtain Tuition Reimbursement 2017-2021

An Impartial Hearing request was made by Emily's Advocate in December 2017 for reimbursement of the tuition at RLS for November 2017-June 2018, $50,000.The DOE agreed that they had not provided Emily with FAPE, and the NYC Department of Education had no alternative setting to recommend. On March 1, 2018 the Department informed the Advocate, Betsy Combier, that Impartial Hearing case #171299 had been recommended for settlement. All parties signed a settlement agreement on August 7, 2018. Mariam Mahmood Qureshi, Director of the Special Education Unit in the Office of the General Counsel of the NYC Department of Education signed the final Stipulation of Settlement for the case #171299, and Arbitrator Mindy Wolman signed an Order of Termination on August 23, 2018. The parents received a check for $50,000 after submitting all the required documents.

On May 16, 2018 the new psychoeducational evaluation of Emily Apple by Dr. Sonel Rowley and Dr. Peter Pramataris at Lenox Hill Hospital was received by Emily's parents, and on May 29, 2018 I, parent advocate Betsy Combier, sent an email to CSE 10 on West 125th Street in Manhattan asking for an IEP meeting. No response was ever received. No IEP meeting was set up by the CSE, and no alternative placement for Emily was sent from the Department.

I requested an Impartial Hearing in October 2018. In March, tragedy struck Emily's family when her mother suffered a brain aneurism, and was incapacitated. Emily and her twin sister were moved into their father's apartment (the parents were divorced) and the father, Gary Apple, took over. I called Ms. Metroka at the CSE and told her not to call the mother, but to speak with me and the father. We never heard from Ms. Metroka, despite multiple attempts by telephone and email.

Impartial Hearing #178252 was held on December 21, 2018 in front of Arbitrator Edgar De Leon. Parent Advocate requested $6,950 for the July 2018 summer school session, and $69,500 tuition for the school's tuition 2018-2019. At the Hearing the Department brought in one person to testify, Ms. Ann Metroka. Ms. Metroka and the Department submitted the SESIS Event Log (Entry #8, dated 12/14/18)for Emily's case which showed that Ms. Metroka had called Emily's mother to discuss the case, and Ms. Metroka was told by Bonnie Apple that an IEP was not necessary, but to please speak with the Advocate, me. I did not receive any calls from Ms. Metroka after this call to Bonnie Apple. On this SESIS report submitted by the Department in their case was an

entry shocking the Arbitrator, Mr. Apple and myself with the information showing that Ms. Metroka had deleted Emily Apple case log from the database in or about mid-April 2018.

On April 30, 2019, Arbitrator Edgar De Leon issued the following Decision:

"**ORDERED** that upon reasonably satisfactory proof of services having been rendered, the DOE shall either reimburse the Parent or directly pay the cost of the student's tuition at the private school for the 2018-2019 school year as follows: July 2018 Summer Session at the private school ($6,950) and tuition reimbursement and/or direct payment for the student's 2018-2019 academic year at the private school ($69,500), totaling: $76,450; and it is further

**ORDERED** that the CSE shall forthwith reconvene to produce a new IEP for the student that considers all of the student's available evaluations and any related services that he should receive for the 2019-2020 school year."

The Department did not Appeal this Decision. The required documents (Emily Apple's grades, attendance, progress reports and financial data on checks sent for the entire amount of tuition 2018-2019) were submitted to the NYC Department of Education on or about the middle of May 2019, about two weeks after the decision was issued. Neither I nor the parent Gary Apple heard from the CSE about an IEP meeting until March, 2021, when an IEP meeting was held with CSE 10, Gary Apple and myself on 3/16/2021. No IEP meeting was set up and no payment of the $76,450 has been made, pursuant to the Order of Arbitrator Edgar De Leon.

Reimbursement for 2019-2020 put on hold due to the pandemic and the lack of payment by the Department after the decision in Case #178252

I made countless calls to Ms. Ann Metroka and others at the NYC Department of Education, including the Office of Special Education Policy, Contracts and Purchasing, non-public schools' payments, and the Committee For Special Education from September 2019 through June 2020, when I was told that all hearings were put on hold, and to wait until June 2021 due to COVID. I continued to try to reach anyone at the non-public payables office, all in vain. As stated above, the CSE finally scheduled an IEP meeting in March 2021 and sent a placement letter to Gary Apple, who did not accept it. Emily is happy and making great progress at RLS, and needs to remain there for her senior year 2021-2022, for which we are asking reimbursement as well..

We request that the following amounts be reimbursed to the parent Gary Apple:

- As a result of the Impartial Hearing #178252, the Award of $76,450
- For summer 2020 and the academic year 2020-2021: $81,950
- For summer 2021 and the academic year 2021-2022 : $84,920

TOTAL: $76,450 (2019 Award) +$166, 870 (tuition+summer 2020-2021, 2021-2022)

The New York City Department of Education did not comply with Arbitrator de Leon's Order to hold an IEP meeting "forthwith" after the April 30, 2019 Decision was received by all parties. As the Department failed to set up any IEP meeting, failed to respond to any requests for settlement or a proposed placement, and failed to meet Emily's educational needs in the past, we believe that this private school placement should be at "public expense."

Please ensure that all communications with respect to this impartial hearing request are sent to Betsy Combier (Betsy.Combier@gmail.com).

Sincerely,

________/s/______________

Betsy Combier, Parent Advocate
315 East 65th Street, 4C
New York, N.Y. 10065
917-596-1762
Betsy.combier@gmail.com

B-1

STEVENSON
ROBERT LOUIS STEVENSON SCHOOL
24 West 74th Street, New York, NY 10023, Tel: 212 787 6400, Fax: 212 873 1872

**STUDENT: Apple, Emily** **DOB: 03/21/2003**

# SUMMER SCHOOL CLASS ATTENDANCE & SCHEDULE 2020

| JUN 29 | jUN 30 | JUL 1 | JUL 2 | JUL 3 | JUL 6 | JUL 7 | JUL 8 | JUL 9 | JUL 10 | JUL 13 | JUL 14 | JUL 15 | JUL 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| / | / | / | / | H | / | / | / | / | / | / | / | / | / |

| JUL 17 | JUL 20 | JUL 21 | JUL 22 | JUL 23 | JUL 24 |
|---|---|---|---|---|---|
| / | / | / | / | / | / |

/ = In attendance A = Absent H = Holiday

| | DAILY CLASS SCHEDULE |
|---|---|
| PERIOD 1 | SCIENCE |
| PERIOD 2 | GLOBAL HISTORY |
| PERIOD 3 | ALGEBRA & GEOMETRY |

Note: On 3/16/20 our school shifted to a remote learning format due to the COVID-19 pandemic and the statewide closure of school buildings

B-2

ROBERT LOUIS STEVENSON SCHOOL

EDUCATIONAL EVALUATION

**TO: Emily Apple**
**ADVISOR: Sabika & Sophia**
**FROM: Fletcher**

**Summer Session 2020**

**REGARDING OUR WORK IN: Foundations of Science**

**OVERVIEW:**
This summer session course was designed to introduce and/or reinforce the fundamentals of the practice of science to students. The course focuses on the Scientific Method, as it is the basis for all practiced science. Here, we explore each facet of the method and discuss the importance of them before having the students design and perform their own experiments. We also make sure to dive into what exactly makes an experiment valid or invalid before finishing the course by looking at the deeper issue of Ethics in science.

**ACADEMIC PROGRESS**

X Superior Achievement
▢ Excellent Progress
▢ Good Progress
▢ Satisfactory Progress
▢ Unsatisfactory Progress

**CLASS PARTICIPATION**

X Outstanding Participation
▢ Good Participation
▢ Adequate Participation
▢ Participation needs improvement

**MOTIVATION AND EFFORT**

X Highly motivated
▢ Adequate motivation and effort
▢ More effort is needed

**CLASS PROJECTS/TESTS**

X Excellent class projects/tests
▢ Satisfactory class projects/tests
▢ Uneven class projects/tests
▢ Unsatisfactory class projects/tests

**ASSIGNMENTS**

X Assignments are complete
▢ Assignments are late
▢ Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

X Relating and working well with others
▢ Improvement shown in work with others
▢ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

X Cooperative Behavior
▢ Inconsistent Behavior
▢ Frequently inattentive
▢ Disruptive Behavior

**CLASS ATTENDANCE**

X Excellent Attendance
▢ Satisfactory Attendance
▢ Absences interfere with progress
▢ Too many absences to earn credit

**CLASS PROMPTNESS**

X Usually on time
▢ Lateness interferes with progress

**RECOMMENDATIONS:**
- Keep this kind of energy and momentum

**GRADE: P+**

**COMMENTS:**
Emily, this has been an outstanding summer session with you. Your participation daily, your offering of helpful videos that we later used in class, and the way you assisted peers through difficult assignments have all put you over the top in terms of grades. Your experiment was the single most scientifically sound in the class, eliminating all conceivable variables, and your presentation was excellent in its order and its results. Stellar job.

B-3

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Sabika**
**FROM: Jacob Friedman**

**Summer Session, July 2020**

**REGARDING OUR WORK IN: Witches! 2**

**OVERVIEW:**
During the first two weeks of summer school, students read, analyzed, and discussed a number of texts on witches and witch hunts both throughout history and in the contemporary world. During the third week, students selected and further analyzed three texts in a graphic organizer. In the final week, students turned their graphic organizer into either an outline or a draft of a 1-3 page paper.

**ACADEMIC PROGRESS**

X Superior Achievement
▢ Excellent Progress
▢ Good Progress
▢ Satisfactory Progress
▢ Unsatisfactory Progress

**CLASS PARTICIPATION**

X Outstanding Participation
▢ Good Participation
▢ Adequate Participation
▢ Participation needs improvement

**MOTIVATION AND EFFORT**

X Highly motivated
▢ Adequate motivation and effort
▢ More effort is needed

**CLASS PROJECTS/TESTS**

▢ Excellent class projects/tests
X Satisfactory class projects/tests
▢ Uneven class projects/tests
▢ Unsatisfactory class projects/tests

**ASSIGNMENTS**

X Assignments are complete
▢ Assignments are late
▢ Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

X Relating and working well with others
▢ Improvement shown in work with others
▢ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

X Cooperative Behavior
▢ Inconsistent Behavior
▢ Frequently inattentive
▢ Disruptive Behavior

**CLASS ATTENDANCE**

X Excellent Attendance
▢ Satisfactory Attendance
▢ Absences interfere with progress
▢ Too many absences to earn credit

**CLASS PROMPTNESS**

X Usually on time
▢ Lateness interferes with progress

**RECOMMENDATIONS:** Have a great rest of the summer

**GRADE:** P+

**COMMENTS:**

Emily, you did excellent work this summer. You completed all the texts we read during the first two weeks, demonstrating a commitment to the content we studied. You did thorough and thoughtful analysis in your outline, which you completed early. The comments you made in class discussion raised the level of discourse in the class, and you showed a willingness to ask questions and be intellectually curious. Well done!

B-4

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Sabika**
**FROM: Sabika Khan**

**Summer Session, July 2020**

**REGARDING OUR WORK IN: Building Algebra & Geometry Skills 3**

**OVERVIEW:** The first half of the course focused on solving multi-step equations. Students were able to break down the steps for solving equations with variables on one side, both sides and algebraic proportions. Students examined scenarios where there is no solution, an infinite number of solutions and one solution. Students discussed common mistakes made when solving equations. The second half of the course focused on classifying and simplifying polynomials. Students were able to classify polynomials based on their number of terms and degrees and discussed the value in using mathematical terminology. Students were able to add, subtract and multiply polynomials using their knowledge of exponent laws.

**ACADEMIC PROGRESS**

- ▢ Superior Achievement
- ▢ Excellent Progress
- x Good Progress
- ▢ Satisfactory Progress
- ▢ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▢ Outstanding Participation
- ▢ Good Participation
- x Adequate Participation
- ▢ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▢ Highly motivated
- x Adequate motivation and effort
- ▢ More effort is needed

**CLASS PROJECTS/TESTS**

- ▢ Excellent class projects/tests
- x Satisfactory class projects/tests
- ▢ Uneven class projects/tests
- ▢ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▢ Assignments are complete
- ▢ Assignments are late
- x Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- x Relating and working well with others
- ▢ Improvement shown in work with others
- ▢ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- x Cooperative Behavior
- ▢ Inconsistent Behavior
- ▢ Frequently inattentive
- ▢ Disruptive Behavior

**CLASS ATTENDANCE**

- ▢ Excellent Attendance
- ▢ Satisfactory Attendance
- x Absences interfere with progress
- ▢ Too many absences to earn credit

**CLASS PROMPTNESS**

- x Usually on time
- ▢ Lateness interferes with progress

**RECOMMENDATIONS:**

- Share your solutions with the class

**GRADE:** P

**COMMENTS:**

Emily, congratulations on successfully completing this course! You consistently attended class on time and followed along with all the lessons. You submitted the class notes and submitted a few of the assigned questions that were to be completed independently. You did not complete work from the classes that you missed. It is clear from the work you completed that you have mastered how to solve multistep problems and that you are familiar with the exponent laws. When multiplying binomials, you multiplied the first, outside and inside terms correctly but added the last terms. Make sure you read the feedback given to you so you do not repeat the same mistakes. When asked to share your solutions with the class, you always declined. In the fall I would like to see you share your knowledge with the class and complete all of the assigned questions. Enjoy the rest of your summer. See you in September!

E-1

STEVENSON
ROBERT LOUIS STEVENSON SCHOOL
24 West 74th Street, New York, NY 10023, Tel: 212 787 6400, Fax: 212 873 1872

**STUDENT: Apple, Emily** **DOB: 03/21/03**

## SUMMER SCHOOL CLASS ATTENDANCE & SCHEDULE 2021

| JUL 6 | jUL 7 | JUL 8 | JUL 9 | JUL 12 | JUL 13 | JUL 14 | JUL 15 | JUL 16 | JUL 19 | JUL 20 | JUL 21 | JUL 22 | JUL 23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| / | / | / | / | / | / | / | / | / | / | / | / | / | / |

| JUL 26 | JUL 27 | JUL 28 | JUL 29 | JUL 30 |
|---|---|---|---|---|
| / | / | / | / | / |

**/ = In attendance** **A = Absent** **H = Holiday**

| DAILY CLASS SCHEDULE |
|---|
| PERIOD 1: US HISTORY |
| ADVISING |
| PERIOD 2: POETRY |
| PERIOD 3: STEM LABORATORY |
| ADVISING/STUDENT PREP |

STEVENSON
ROBERT LOUIS STEVENSON SCHOOL

24 West 74th Street
New York, NY 10023
212-787-6400

7/30/2021

**Summer Educational Evaluation 2021/2022**

**1**

Gary Apple
**Emily Apple**
243 E 81st
New York, NY 10028

Grade: 12
Advisor: Daniel Aulbach-Sidibe

**Poetry: Overcoming Obstacles** Grade **B** Teacher **Rochelle Greenidge**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | | X |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | X | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | | X | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | X | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | X | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | | X | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

During this summer session, students explored a variety of poems, expanded their poetic vocabulary, and improved their writing skills. Students read, interpreted, and critically analyzed how poetic style and structure supported the main theme of each piece. Content included an examination of poems by authors, such as Rudyard Kipling and Charles Bukowski, a study of the relationship between subject and visual form within concrete poetry, and the creation of personal concrete poems. Themes of resilience and overcoming obstacles were highlighted through daily class discussions and weekly writing assignments. In addition to determining and understanding the meanings of poems, students defined and identified poetic devices, including similes, metaphors, and anaphoras. Students also followed grammar and punctuation rules in order to practice clear writing. Near the end of the summer session, students

used different literary texts including song lyrics and animated short films to make text-to-text and text-to-life connections within a well-structured paragraph. Students started the writing process with an argument organizer in which they crafted a clear topic sentence, provided reasons to support their main claim, inserted examples and direct quotes to enhance their reasons, and included a wrap-up statement. Assessment occurred through formal argument organizers and written paragraphs, informal free writes, formal in-class poetry assignments, and contributions to class discussions.

Emily, from the start of the first week, you decided that you would not do any of the written assignments that required interpretation and critical analysis of poetry by Kipling, Henley, and Bukowski. Given the opportunity to work on your own creation, you switched between adding to your extensive document and watching videos that were not relevant to your story or class content. After more creative writing activities were incorporated into the first section of class, you began to actively participate and were among the first volunteers to share your written work, including your Salt & Pepper short story. You produced a stellar final project in which you identified common themes and made intertextual connections between poems and songs.

**STEM Laboratory** Grade **C+** Teacher **Shaun Fletcher**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | X | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | | X | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | | X | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

This Summer Session class was based upon weekly STEM challenges that involved hands-on activities and challenged students to utilize mathematics skills and the scientific method along with proper measurements and documentations to produce results. We

explored principles of design for buildings required to hold mass by constructing paper platforms, then turned those principles sideways with the challenges of bridge design, all out of paper. Next we moved to principles of motion with paper airplane designs and finished off with rubber band racers to include concepts of tension and energy transfer/transformation.

Emily, your did fairly well this session. You completed each task we had, though your work was often hastily done. It is evident that you had the creativity and capacity to accomplish each of the four given tasks to a higher degree than you did if you had taken a little more time on them. However, your engagement with your peers and your willingness to help go a long way and will continue to serve you well in the future.

**U.S. History: Freedom!** Grade **D+** Teacher **Jacob Friedman**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | X | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | X | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | | X | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | X | | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | X | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | X | |

This summer, we investigated three different conceptions of freedom in the United States: freedom of expression, freedom of enterprise, and freedom from exploitation. For the first week and a half of summer school, students answered questions based on slides on each of these conceptions of freedom, and then took a cumulative Kahoot quiz. Then, students selected 3 texts to read together based on these notions of freedom. Finally, students outlined an essay in which they argued which of the three notions of freedom has been most important to US history.

Emily, you had a satisfactory summer term, despite some challenges. You completed most of the freedom slides questions, and earned full credit on the text set guide, Text 1: Ghost Dance, and Text 2: Marie Equi jailed. Although you did not complete assignments 3 and 4, you made up for it by satisfactorily completing both the Skeleton pre-write and the Skeleton itself, in which you outlined a powerful case for freedom of expression as foundational to US history. During class discussion, you were your typical engaged and opinionated

self, which is great to see. You were often late and often struggled to stay on topic during independent work time-- let's continue to work on that. Have a great rest of your summer!

D-1

STEVENSON
ROBERT LOUIS STEVENSON SCHOOL

## ENROLLMENT CONTRACT 2020 SUMMER SESSION AND THE 2020-2021 SCHOOL YEAR

NAME OF STUDENT: Emily Apple

NAME OF PARENTS: Gary Apple

**The Robert Louis Stevenson School (hereafter referred to as the School) is pleased to offer a place to your child for the 2020 Summer Session and the 2020-2021 school year. You may accept this placement by returning a fully signed copy of this Enrollment Contract, together with a deposit in the amount of $5,000 made payable to the Robert Louis Stevenson School following the schedule below. The place offered by the School will be kept available until April 13, 2020.**

This Enrollment Contract sets forth the terms and conditions upon which the Robert Louis Stevenson School will hold a place for your child and provide educational services.

Tuition for the 2020 Summer Session and the 2020-2021 academic year set by the Board of Trustees is $81,950 (eighty-one thousand, nine hundred and fifty dollars), payable as follows:

| | |
|---|---|
| Deposit due April 13, 2020 | = $5,000 |
| Payment due June 1, 2020 | = $10,000 |
| Payment due July 1, 2020 | = $10,000 |
| Payment due Aug 1, 2020 | = $10,000 |
| Payment due Sept 1, 2020 | = $10,000 |
| Payment due Oct 1, 2020 | = $10,000 |
| Payment due Nov 1, 2020 | = $10,000 |
| Payment due Dec 1, 2020 | = $10,000 |
| Payment due January 2, 2021 | = $ 6,950 |

Please note that Stevenson does not send reminder invoices. Families are responsible to track and follow the payment due dates on the contract.

In accepting this offer of admission, you agree to be responsible for and to pay the full tuition of $81,950 and to accept the following terms and conditions:

1. This Contract is for the Summer Session commencing on June 29, 2020 and the academic year commencing on September 2, 2020 (start date) and ending on or about June 16, 2021 (end date) without deductions for absence, withdrawal, dismissal or any other cause.

2. Payment in accordance with the established schedule is a condition for provision of educational services. The School reserves the right to terminate educational services including class attendance for non-payment upon two weeks' notice. Termination of services does not relieve Parent(s)/Guardian(s) of any obligations set forth herein, with the following exception: the Contract can be cancelled within two weeks of the start date of this Enrollment Contract if the student is placed by Parent(s)/Guardian(s) in a public school or state approved non-public school (NPS) class recommended by the local education agency (in New York City, the Department of Education) in accordance with an Individualized Education Program. Notice of such placement and cancellation must be provided by certified mail to the Head of School, within two weeks of the start date shown above, together with a copy of the Final Notice of Recommendation provided by the public school/NPS and evidence of enrollment in the recommended placement. Proof

D-2

of attendance will be required. If the Contract is cancelled due to public school placement as described above the Parent(s)/Guardian(s) are responsible for tuition costs incurred prior to notice of Contract termination. Tuition charges will be calculated on the basis of $7,450 per month of school, beginning June 29, 2020. Any portion of the month prior to notice of termination will result in a charge for the full month.

3. If payment is not made in accordance with the payment schedule, the amount of the unpaid outstanding payment shall incur late fees from the day after the applicable due date that was owed to the School. Late fees will be computed at the rate of 1.25% per month.

4. If you take steps to initiate review of your child's right to public support for the Robert Louis Stevenson placement, the School will provide information requested by the public school system or your attorney in connection with this review, but will not do so unless you have complied with all of your obligations pursuant to this Contract.

5. The Robert Louis Stevenson School has offered a place to your child on the expectation, based on the diagnostic and educational records you have provided, that you will continue his or her ongoing psychotherapeutic treatment, that the School will be able to meet his or her educational needs, and that your child will be able to benefit from enrollment. The School reserves the right to terminate this contract at any time, if, in the judgment of the School, it is not able, with existing staff and resources, to meet the needs of your child. In addition, the School reserves the right to terminate this contract if the School's behavior management interventions are not effective and, in the judgment of the School, your child's conduct disrupts the orderly operation of the School and warrants change of placement or expulsion.

6. Parents and other visitors to the School are expected to abide by the School's rules and policies, and such compliance by parents, guardians, or other persons closely associated with the student is a condition of the Student's continued enrollment. The School may suspend or terminate the enrollment of your child at any time, or may rescind this Enrollment Contract if (i) parent, guardian, or other person closely associated with the student disregards, does not abide by, or fails to meet School rules and expectations; (ii) a parent, guardian, or other individual closely associated with the Student fails to cooperate with the School or demonstrates an unwillingness or inability to positively contribute to the School community; or (iii) the School determines that your child's continued attendance at the School, or the involvement of a parent or guardian, is not, for any other reason, in the best interest of the Student or the School.

7. The School's offer of enrollment to your child is contingent on receipt of a current physical examination which includes current immunization information as well as current medical information concerning allergies, medications, and other health needs of your child, and, in addition, authorization for the School to contact your child's physician and all mental health professionals working with your child in the event of an emergency. If upon review of medical information, Robert Louis Stevenson deems special arrangements are necessary, you are expected to cooperate in the development and implementation of an individualized health management plan in consultation with the local Committee on Special Education and/or with your child's physician to minimize risks to your child and others.

8. By signing this Contract, you grant to the School the right to distribute, transmit, publish, copy, or otherwise use any image of the student and/or family members involved with the School's educational programs or functions for the School's educational purposes or in the School's advertising or promotional materials. If you do not wish to allow the permission as set forth above, you must notify the School in writing by certified mail addressed to the Head of School.

9. Withdrawal or absence of a student for any reason during the term of this Contract, does not relieve Parent(s)/Guardian(s) of any payment obligations under this Contract except as indicated in Paragraph 2 above.

10. This Enrollment Contract is for the full amount of the 2020 Summer Session and the 2020-2021 School Year only, and it does not guarantee placement in any other portion of the academic year, or academic year thereafter.

D-3

ADDITIONAL FEES AND COSTS
Tuition payments cover instructional costs. You may be asked to pay additional costs for class trips or other extracurricular events that are not directly related to the School curriculum. In addition, you will be responsible for costs incurred by the School to comply with Parental requests, including assessments recommended by the School as necessary for continuation for educational programming. Such costs may include, but are not limited to, copying costs, costs of postage or delivery, or travel.

MODIFICATION FOR ACTS BEYOND THE SCHOOL'S CONTROL
The School reserves the right, in its sole and exclusive discretion, to suspend its duties and obligations, under this Contract or otherwise, immediately without notice, during periods that the School is affected by force majeure events including, but not limited to, fire, acts of God, war, governmental action, epidemic, pandemic, or any other event beyond the School's control. If such an event occurs, the School duties and obligations under this Contract may be suspended or postponed until such time as the School, in its sole discretion, may safely reopen or resume normal operations. In such instance, the Tuition obligations under this Contract shall continue and the School shall not be liable for any such failure or delay in its performance. Parents understand that School schedules may be extended for a period of time equal to the time lost due to any delay so caused and/or classes may be conducted via distance-learning basis and/or weekend classes may be scheduled, at the School's discretion.

PARENT/GUARDIAN SIGNATURES
Parent(s)/Guardian(s) of the Student are individually and jointly responsible for the tuition payments, notwithstanding any agreements with respect to such obligations between the parties. The Contract shall not become effective until the School also signs and returns a copy to the undersigned.

ACCEPTED AND AGREED:

1) [signature] 6/9/20
Signature of Parent (Guardian) Date

Gary Apple
Print Name of Parent (Guardian)

2) ______________________ ______________
Signature of Parent (Guardian) Date

______________________
Print Name of Parent (Guardian)

ACCEPTED AND AGREED:

[signature] 6/15/20
Carl Pozzi Date
Chief Financial and Operating Officer
The Robert Louis Stevenson School

D-4

Robert Louis Stevenson School
24 West 74 Street
New York NY 10023
212 787-6400
212 873-1872 FAX
website www.stevenson-school.org

**ATTENDANCE**
**2020-2021**

Student: Apple Emily
LAST NAME, FIRST
Address: 1680 York Ave #4E
New York, NY 10128
Date of Birth: 3.21.03 Phone No: (917)721-0829

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | A | B | C |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| September | | / | / | / | W | W | H | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | H | / | / | | 19 | 19 | 0 |
| October | / | / | W | W | / | / | / | / | / | W | W | H | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | 21 | 21 | 0 |
| November | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | H | H | H | W | W | / | | 18 | 18 | 0 |
| December | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | H | H | H | H | H | W | W | H | H | H | H | 14 | 14 | 0 |
| January | H | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | H | / | / | / | / | W | W | / | / | / | / | / | W | W | 19 | 19 | 0 |
| February | S | / | / | / | / | W | W | / | / | / | / | / | W | W | H | H | H | H | H | W | W | / | / | / | / | / | W | W | | | | 14 | 14 | 0 |
| March | / | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | H | H | H | 20 | 20 | 0 |
| April | H | H | W | W | H | H | H | H | H | W | W | / | / | / | / | / | W | W | / | / | A | / | / | W | W | / | / | / | A | / | | 15 | 13 | 2 |
| May | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | H | 20 | 20 | 0 |
| June | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | | | | | | | | | | | | | | | | 12 | 12 | 0 |

For the 2020-2021 school year, Stevenson implemented a hybrid learning program due to the ongoing Covid-19 pandemic.

A= school days in month
B= attendance in month
C= absence in month

W = Weekend H = Holiday, Vacation A = Absent / = Present S = Snow Day

Prepared by *Ben Weeks*

Ben Weeks EXECUTIVE ASSISTANT
Name Title

D-5

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nicholas Alexandrakos**
**Melissa Jeffay**

**1st Quarter, November 2020**

**REGARDING OUR WORK IN: Advising**

**ADVISING**
Students meet with their advisors three times daily, both individually and in small groups. Morning check-ins are designed to help prepare students for the day and assess whether there are any issues that might impact their functioning that need to be addressed. Mid-morning advising time is structured to help students maintain organization, compose weekly goals, learn coping skills, and participate in group discussions. Each week, advisors meet individually with students to provide feedback about their academic and behavioral progress in each class. At check-out, advisors meet with students to review their planbooks and ensure that they have all materials necessary to complete homework. Additionally, advisors and students meet as needed to resolve any additional issues (eg., resolve conflicts with peers; request accommodations from teachers).

| | | |
|---|---|---|
| **ATTENDANCE**<br>**MORNING CHECK-IN**<br>x Usually on time<br>▢ Lateness/Absences interfere with progress<br><br>**AFTERNOON CHECK-OUT**<br>▢ Usually on time<br>x Lateness/absences interfere with progress | **PARTICIPATION**<br>**GOAL SETTING**<br>▢ Exceeds Expectation<br>▢ Meets Expectation<br>x Needs improvement<br><br>**GROUP DISCUSSION**<br>▢ Exceeds Expectation<br>x Meets Expectation<br>▢ Needs improvement<br><br>**WEDNESDAY SHEETS**<br>▢ Exceeds Expectation<br>x Meets Expectation<br>▢ Needs improvement | **SOCIAL SKILLS**<br>**INTERACTION WITH OTHER STUDENTS**<br>▢ Exceeds Expectation<br>x Meets Expectation<br>▢ Needs improvement<br><br>**COMMUNICATION WITH ADVISOR**<br>▢ Exceeds Expectation<br>x Meets Expectation<br>▢ Needs improvement<br><br>**ROUTINES/ PLANNING/ ORGANIZATION**<br>▢ Demonstrates responsible use of calendar.<br>x Needs reminders to follow calendar responsibly.<br>▢ Maintains organized work and materials<br>x Needs help organizing work materials<br><br>**CREDIT** |

**INDIVIDUAL STUDENT GOALS FOR THE QUARTER:**

1. **Have a more organized schedule at home and school.** **Needs Improvement**

   Advisor Comments: Emily, next quarter let's continue to establish more of a routine with your organization to ensure you are prepared for your classes each day. I suggest checking your schedule of classes and google classroom daily. Also, an afternoon or nightly review would help ensure you were prepared for the next day.

2. **Receive Honor Roll recognition in Q1** **Needs Improvement**

   Advisor Comments: This has been an excellent goal to set and now we will expand on this in Q2. In order to fully achieve this goal I suggest we schedule you to attend Study Center twice a week to ensure you stay up to date and do not fall behind.

D-6

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick**
**FROM: Adam Van Auken**

**1st Quarter, November 2020**

**REGARDING OUR WORK IN: Computer Science 2 001**

**OVERVIEW:**
In Computer Science II, students have the opportunity to choose a customized learning path and delve deeper into an area of interest. Possible topics include object-oriented programming, cybersecurity, game design, virtual reality, web development, and robotics.

**ACADEMIC PROGRESS**

- ▢ Superior Achievement
- ▢ Excellent Progress
- X Good Progress
- ▢ Satisfactory Progress
- ▢ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▢ Outstanding Participation
- X Good Participation
- ▢ Adequate Participation
- ▢ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▢ Highly motivated
- X Adequate motivation and effort
- ▢ More effort is needed

**CLASS PROJECTS/TESTS**

- ▢ Excellent class projects/tests
- X Satisfactory class projects/tests
- ▢ Uneven class projects/tests
- ▢ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▢ Assignments are complete
- ▢ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▢ Improvement shown in work with others
- ▢ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▢ Inconsistent Behavior
- ▢ Frequently inattentive
- ▢ Disruptive Behavior

**CLASS ATTENDANCE**

- X Excellent Attendance
- ▢ Satisfactory Attendance
- ▢ Absences interfere with progress
- ▢ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▢ Lateness interferes with progress

**RECOMMENDATIONS:**
- Share Piskel username and password
- Write at least one paragraph for Google Classroom assignments

**GRADE: A**

**COMMENTS:**
Emily, you had a good first quarter in Computer Science 2. You started out the quarter strong with an interesting and ambitious learning plan: learning to create and animate sprites. You had a goal of creating at least 10 sprites and you nearly achieved that objective. Highlights of your work included the animated “Ala idle bob” and “Hoodie Eye.” Assignment 6 is incomplete (please see my comment in Google Classroom). For the second quarter, I will need you to share your Piskel username and password so I can see your progress and not just your finished work.

D-7

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick Alexandrakos**
**FROM: Mitchell J Martinez**

**1st Quarter, October 2020**

**REGARDING OUR WORK IN: Studio Arts Period 2**

**OVERVIEW:** For Studio Arts 1st quarter, students practiced self-expression and visual communication through guided, independent technical exploration. Students created composite images through 2D and 3D digital manipulation tools, painted, drew, sculpted and used textiles. They used the media of their choice, while lessons focused on the Visual Arts Language. Projects, lectures and class discussion centered around how the Elements of Art & Principles of Design are used to communicate.

**ACADEMIC PROGRESS**

- ▫ Superior Achievement
- ▫ Excellent Progress
- ▫ Good Progress
- ▫ Satisfactory Progress
- X Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▫ Outstanding Participation
- X Good Participation
- ▫ Adequate Participation
- ▫ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▫ Highly motivated
- ▫ Adequate motivation and effort
- X More effort is needed

**CLASS PROJECTS/TESTS**

- ▫ Excellent class projects/tests
- ▫ Satisfactory class projects/tests
- X Uneven class projects/tests
- ▫ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▫ Assignments are complete
- ▫ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▫ Improvement shown in work with others
- ▫ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▫ Inconsistent Behavior
- ▫ Frequently inattentive
- ▫ Disruptive Behavior

**CLASS ATTENDANCE**

- X Excellent Attendance
- ▫ Satisfactory Attendance
- ▫ Absences interfere with progress
- ▫ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▫ Lateness interferes with progress

**RECOMMENDATIONS:**
**Your attendance is excellent, but you are not completing the assignments given. Complete the assignments as they are given.**

**GRADE: N/A**

**COMMENTS:**

The amount of work turned in and general participation in conversation has been inconsistent this quarter. Occasional assignments had been executed well, demonstrating understanding. While other assignments are either missing or did not demonstrate strong understanding of the concept covered. Remember that mastering the arts is a process; it is fun, often frustrating, and can be extremely rewarding, with practice. The more you put into it, the more you will get back. Setting and keeping deadlines for steps to completion of projects, using the resources available for presentation, responding to my offers to help or reaching out for help or extended deadlines when you are struggling, will help you build your abilities. I hope to see you back in the next quarter, completing assignments and communicating your needs when you need help and support.

D-8

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick**
**FROM: Daniel Aulbach-Sidibe**

**1st Quarter, November 2020**

**REGARDING OUR WORK IN: Mystical Mathematics**

**OVERVIEW:** In this first quarter of the 2020-2021 school year, we began our class by looking at the 'seed of life' and the geometric building blocks of the observable world. We surveyed the major branches of mathematics and tackled the topics of morphology and graph theory. In addition to learning the tenets of these topics we worked to see their practical applications and usefulness in decoding puzzles and word problems. The grades in the class were determined by: classwork (30%), Homework (20%), class participation (10%) and Formal Assessments (which consist of tests and quizzes) (40%).

**ACADEMIC PROGRESS**

- ▫ Superior Achievement
- ▫ Excellent Progress
- X Good Progress
- ▫ Satisfactory Progress
- ▫ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▫ Outstanding Participation
- X Good Participation
- ▫ Adequate Participation
- ▫ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▫ Highly motivated
- X Adequate motivation and effort
- ▫ More effort is needed

**CLASS PROJECTS/TESTS**

- ▫ Excellent class projects/tests
- X Satisfactory class projects/tests
- ▫ Uneven class projects/tests
- ▫ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- X Assignments are complete
- ▫ Assignments are late
- ▫ Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- ▫ Relating and working well with others
- X Improvement shown in work with others
- ▫ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▫ Inconsistent Behavior
- ▫ Frequently inattentive
- ▫ Disruptive Behavior

**CLASS ATTENDANCE**

- ▫ Excellent Attendance
- X Satisfactory Attendance
- ▫ Absences interfere with progress
- ▫ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▫ Lateness interferes with progress

**RECOMMENDATIONS:**

Ask for help when you need it
Show your work

**GRADE: B**

**COMMENTS:**

You have really done some great hands on work this quarter, especially when it came to making Mobius Strips and other projects that involved drawing and showing a graphical representation of your work. Thank you for showing up to class and being ready to work. I am so proud of your progress.

The following are the topics that we have covered this quarter in math class, the letter represents your level of mastery by topic:

M - Mastery A - Approaching Mastery D - Developing Mastery I - Initial Development

'seed of life' - A
morphologym- A
graph theory - A

D-9

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick**
**FROM: Fletcher**

**1st Quarter, November 2020**

**REGARDING OUR WORK IN: Human Sciences 4**

**OBJECTIVES AND CONTENT:**
Human Sciences is a course designed to introduce students to concepts of thought and sciences that currently only arise from or mostly only apply to humans such as philosophy, psychology, and sociology. This course is currently graded heavily on classroom participation due to the abstract and discussion-based nature of the content. Tests, quizzes, homework assignments, and presentations are also factors. Quarter One began with the uniquely human concept of morals and ethics, working through Virtue Ethics, Utilitarianism, and Kantian Ethics.

**ACADEMIC PROGRESS**

- ○ Superior Achievement
- ○ Excellent Progress
- X Good Progress
- ○ Satisfactory Progress
- ○ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ○ Outstanding Participation
- ○ Good Participation
- X Adequate Participation
- ○ Participation needs improvement

**MOTIVATION AND EFFORT**

- ○ Highly motivated
- X Adequate motivation and effort
- ○ More effort is needed

**CLASS PROJECTS/TESTS**

- ○ Excellent class projects/tests
- X Satisfactory class projects/tests
- ○ Uneven class projects/tests
- ○ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ○ Assignments are complete
- ○ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ○ Improvement shown in work with others
- ○ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ○ Inconsistent Behavior
- ○ Frequently inattentive
- ○ Disruptive Behavior

**CLASS ATTENDANCE**

- ○ Excellent Attendance
- X Satisfactory Attendance
- ○ Absences interfere with progress
- ○ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ○ Lateness interferes with progress

**RECOMMENDATIONS:**

- More active engagement would be nice
- Make sure you stay on top of your work

**GRADE: C**

**COMMENTS:**

Emily, you had a good quarter, given the circumstances. Active participation is strongly encouraged in a discussion-heavy course like this one and we would love to hear from you even more than we already do. I know the readings were particularly challenging, so we will not have as many of them, or at least not as in-depth as the Apology. The expectations will be going up across the board in Q2 and I know you can meet them.

D-10

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick**
**FROM: Cindy Ricot**

**1st Quarter, November 2020**

**REGARDING OUR WORK IN: Diversity in Literature 005**

**OVERVIEW:** In Diversity in Literature this quarter, we have been exploring the literature of Hispanics. We read excerpts from the novel I Am Not Your Perfect Mexican Daughter by Erika L. Sanchez and Poet X by Elizabeth Acevedo. Through our examination of these novels, we have discussed a number of issues such as poverty, grief, and sexism. We have also engaged in numerous writing tasks in order to build stamina and have begun the refining process to produce higher level writing. Our class engages in regular discussions to foster independent and critical thinking. Students also engage in journaling and independent reading weekly. For their final project, students were asked to write a 3 paragraph essay that answered the question: *What is the impact of representation / perception (positive OR negative) on identity and behavior?* Grading is based on homework assignments, writing prompts, and their final.

**ACADEMIC PROGRESS**

- ▢ Superior Achievement
- ▢ Excellent Progress
- X Good Progress
- ▢ Satisfactory Progress
- ▢ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▢ Outstanding Participation
- X Good Participation
- ▢ Adequate Participation
- ▢ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▢ Highly motivated
- X Adequate motivation and effort
- ▢ More effort is needed

**CLASS PROJECTS/TESTS**

- ▢ Excellent class projects/tests
- X Satisfactory class projects/tests
- ▢ Uneven class projects/tests
- ▢ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- X Assignments are complete
- ▢ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▢ Improvement shown in work with others
- ▢ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- X Inconsistent Behavior
- ▢ Frequently inattentive
- ▢ Disruptive Behavior

**CLASS ATTENDANCE**

- ▢ Excellent Attendance
- X Satisfactory Attendance
- ▢ Absences interfere with progress
- ▢ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▢ Lateness interferes with progress

**RECOMMENDATIONS:**

- **Continue to increase participation**
- **Increase attendance**
- **Accept and implement feedback**

**GRADE: C**

**COMMENTS:**
You started off strong, but fell off a bit this quarter. Although you definitely have the ability to complete quality work, you missed a few assignments. You did finish your adjusted end of quarter project earning a combined grade of 160/180. Continue to push your essay writing. If you push yourself, you will see tremendous growth as you continue your education.

D-11

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick**
**FROM: Michael Sweet**

**1st Quarter, November 2020**

**REGARDING OUR WORK IN: Humanities**

**OVERVIEW:**
In this class, we seek to gain a broader understanding of world history through its interaction with literature. For example, how does storytelling both deepen and widen our knowledge of the events that brought the Western world to the current era? Our key text is *A Little History of the World* by Ernst Gombrich, although we also incorporate other brief written and visual texts into our studies. The main goal of this course is to allow students to gain a "broad vision" of how things came to be as the history of the Western world unfolded. Assessment is mostly based on participation and engagement in class lectures and discussions, as well as the student's ability to demonstrate learning, which will be tailored to each student based on their individual needs.

**ACADEMIC PROGRESS**

- ▢ Superior Achievement
- ▢ Excellent Progress
- ▢ Good Progress
- X Satisfactory Progress
- ▢ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▢ Outstanding Participation
- ▢ Good Participation
- ▢ Adequate Participation
- X Participation needs improvement

**MOTIVATION AND EFFORT**

- ▢ Highly motivated
- ▢ Adequate motivation and effort
- X More effort is needed

**CLASS PROJECTS/TESTS**

- ▢ Excellent class projects/tests
- X Satisfactory class projects/tests
- ▢ Uneven class projects/tests
- ▢ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- X Assignments are complete
- X Assignments are late
- ▢ Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▢ Improvement shown in work with others
- ▢ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▢ Inconsistent Behavior
- ▢ Frequently inattentive
- ▢ Disruptive Behavior

**CLASS ATTENDANCE**

- X Excellent Attendance
- ▢ Satisfactory Attendance
- ▢ Absences interfere with progress
- ▢ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▢ Lateness interferes with progress

**RECOMMENDATIONS:**
**-Work to expand your writing in response to classroom prompts -- writing is too brief**
**-Work to engage in class more and reduce distractions**

**GRADE: B**

**COMMENTS:**

Emily, your commitment to making it to class consistently and on time was impressive this quarter. I also appreciated that you had your video active at all times. These are great things to see during remote learning. Additionally, your quiz, discussion comments, and comments during class all demonstrate a solid understanding of the material covered and an ability to think in historical terms. You have a lot to add to a history class and I hope you will continue to study this most important discipline. Onward!

D-12

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick Alexandrakos**
**Mellissa Jeffay**

**3rd Quarter, March 2021**

**REGARDING OUR WORK IN: Advising**

**ADVISING**
Students meet with their advisors three times daily, both individually and in small groups. Morning check-ins are designed to help prepare students for the day and assess whether there are any issues that might impact their functioning that need to be addressed. Mid-morning advising time is structured to help students maintain organization, compose weekly goals, learn coping skills, and participate in group discussions. Each week, advisors meet individually with students to provide feedback about their academic and behavioral progress in each class. At check-out, advisors meet with students to review their planbooks and ensure that they have all materials necessary to complete homework. Additionally, advisors and students meet as needed to resolve any additional issues (eg., resolve conflicts with peers; request accommodations from teachers).

| ATTENDANCE | PARTICIPATION | SOCIAL SKILLS |
|---|---|---|
| **MORNING CHECK-IN**<br>▫ Usually on time<br>X Lateness/Absences interfere with progress<br><br>**AFTERNOON CHECK-OUT**<br>▫ Usually on time<br>X Lateness/absences interfere with progress | **GOAL SETTING**<br>▫ Exceeds Expectation<br>▫ Meets Expectation<br>X Needs improvement<br><br>**GROUP DISCUSSION**<br>▫ Exceeds Expectation<br>▫ Meets Expectation<br>X Needs improvement<br><br>**WEDNESDAY SHEETS**<br>▫ Exceeds Expectation<br>▫ Meets Expectation<br>X Needs improvement | **INTERACTION WITH OTHER STUDENTS**<br>▫ Exceeds Expectation<br>X Meets Expectation<br>▫ Needs improvement<br><br>**COMMUNICATION WITH ADVISOR**<br>▫ Exceeds Expectation<br>X Meets Expectation - when present<br>▫ Needs improvement<br><br>**ROUTINES/ PLANNING/ ORGANIZATION**<br>x Demonstrates responsible use of calendar.<br>▫ Needs reminders to follow calendar responsibly.<br>▫ Maintains organized work and materials<br>x Needs help organizing work materials<br><br>**CREDIT** |

**INDIVIDUAL STUDENT GOALS FOR THE QUARTER:**

1. **Present an organization to Advising that you are passionate about** **Exceeds Expectations**

   Advisor Comments: Emily, you were the first student to present your organization to our Advising. This was a tremendous event because you set a very high standard for the group. Everyone benefits when we are having wildlife awareness discussions.

2. **Submit Humanities assignments on their due dates** **Needs Improvement**

   Advisor Comments: This has been an excellent goal to set and one to keep as we enter the final quarter. In order to fully achieve this goal I suggest that you attend Study Center twice a week. This will ensure that you stay up to date, do not fall behind, and experience increased levels of academic success.

D-13

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick**
**FROM: Adam Van Auken**

**3rd Quarter, March 2021**

**REGARDING OUR WORK IN: Computer Science 2 001**

**OVERVIEW:**
In Computer Science II, students have the opportunity to choose a customized learning path and delve deeper into an area of interest. Possible topics include object-oriented programming, cybersecurity, game design, virtual reality, web development, and robotics.

**ACADEMIC PROGRESS**

- ▫ Superior Achievement
- ▫ Excellent Progress
- X Good Progress
- ▫ Satisfactory Progress
- ▫ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▫ Outstanding Participation
- X Good Participation
- ▫ Adequate Participation
- ▫ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▫ Highly motivated
- X Adequate motivation and effort
- ▫ More effort is needed

**CLASS PROJECTS/TESTS**

- ▫ Excellent class projects/tests
- X Satisfactory class projects/tests
- ▫ Uneven class projects/tests
- ▫ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- X Assignments are complete
- ▫ Assignments are late
- ▫ Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▫ Improvement shown in work with others
- ▫ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▫ Inconsistent Behavior
- ▫ Frequently inattentive
- ▫ Disruptive Behavior

**CLASS ATTENDANCE**

- X Excellent Attendance
- ▫ Satisfactory Attendance
- ▫ Absences interfere with progress
- ▫ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▫ Lateness interferes with progress

**RECOMMENDATIONS:**
- Ask for help if stuck on a problem for more than a day

**GRADE: B+**

**COMMENTS:**
Emily, you had a good third quarter in computer science 2. You started the quarter off well with a new learning plan: continuing your study of Javascript that you began last year. This led to solving several difficult problems that employed a variety of important computer science concepts including if statements, while loops, modulus, and functions. Highlights of your work included solving the challenging Hailstone Sequence and finishing the balloon challenge. Emily also was a valuable member of the class by participating in class discussion and helping another student finish an assignment. Good work.

D-14

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

TO: **Apple, Emily**
ADVISOR: **Alexandrakos, Nick**
FROM: **Mitchell Martinez**

**3rd Quarter, March 2021**

**REGARDING OUR WORK IN: Studio Arts 260**

**OVERVIEW:** We continued, in the third quarter, to explore through guided, independent technical practice. Students were encouraged to continue to explore with 2D and 3D digital manipulation tools and to paint, draw, sculpt and use textiles as before. Projects, lectures and class discussion focused on Critique, Pattern, the Grid Technique, Color Theory, the nature of Color as an Element of Art, The elements of Color, the use of the Color Wheel and the nature of prismatic light in traditional and industrial arts.. Students explored Harmony and Discord as methods of self expression while they created images working with a variety of Color Harmonies (Complementary, Analogous, Triadic) and we explored the history of Western Art through the Impressionists, Post Impressionists, Fauvists, and Pop Art as well as contemporary design. Students studied the works of Andy Wharhol, Basquiat, Yayoi Kusuma, Chuck Close, Henry Matisse, Andre Derrain, Claude Monet, Berthe Morisot, Vincent Van Gogh, Jasper Johns and others.

**ACADEMIC PROGRESS**

- ▢ Superior Achievement
- ▢ Excellent Progress
- x Good Progress
- ▢ Satisfactory Progress
- ▢ Unsatisfactory Progress

**CLASS PARTICIPATION**

- x Outstanding Participation
- ▢ Good Participation
- ▢ Adequate Participation
- ▢ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▢ Highly motivated
- x Adequate motivation and effort
- ▢ More effort is needed

**CLASS PROJECTS/TESTS**

- ▢ Excellent class projects/tests
- x Satisfactory class projects/tests
- ▢ Uneven class projects/tests
- ▢ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▢ Assignments are complete
- ▢ Assignments are late
- x Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- x Relating and working well with others
- ▢ Improvement shown in work with others
- ▢ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- x Cooperative Behavior
- ▢ Inconsistent Behavior
- ▢ Frequently inattentive
- ▢ Disruptive Behavior

**CLASS ATTENDANCE**

- x Excellent Attendance
- ▢ Satisfactory Attendance
- ▢ Absences interfere with progress
- ▢ Too many absences to earn credit

**CLASS PROMPTNESS**

- x Usually on time
- ▢ Lateness interferes with progress

**RECOMMENDATIONS:**
**Make sure to keep focused on class activities, lectures/videos and demonstrations by avoiding watching outside videos during class.**

**Complete all assignments**

**GRADE: B**

**COMMENTS: During most of the quarter, you have been extremely cooperative and attentive, participating in most class conversations and turning in strong work that reflects a subtle understanding of the topics at hand.This is reflected in your individual assignment grades. You have recently begun watching non-class videos during class and it is clear that when this begins happening, your assignments become less focused on the assignment and the lesson at hand. Missing the final two assignments for the quarter has affected the final grade.**

D-15

ROBERT LOUIS STEVENSON SCHOOL
EDUCATIONAL EVALUATION

**TO:** Emily Apple
**ADVISOR:** Nick
**FROM:** Daniel Aulbach-Sidibe

**3rd Quarter, March 2021**

**REGARDING OUR WORK IN:** Mystical Mathematics-006

**OVERVIEW:** In the third quarter of the 2020-2021 school year the class took another look at the five platonic solids and broke them down into '2D nets.' We then explored the concept and applications of imaginary and complex numbers as well as the basic tenets of proofs. We then read and discussed articles related to procrastination and looking at tools and strategies to combat inertia through various TED talks and articles by psychologists and neuroscientists. The grades in the class were determined by Classwork (30%), Homework (20%), class participation (10%) and Formal Assessments (which consisted of tests and quizzes) (40%).

**ACADEMIC PROGRESS**

- ▫ Superior Achievement
- ▫ Excellent Progress
- ▫ Good Progress
- ▫ Satisfactory Progress
- X Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▫ Outstanding Participation
- ▫ Good Participation
- ▫ Adequate Participation
- X Participation needs improvement

**MOTIVATION AND EFFORT**

- ▫ Highly motivated
- ▫ Adequate motivation and effort
- X More effort is needed

**CLASS PROJECTS/TESTS**

- ▫ Excellent class projects/tests
- ▫ Satisfactory class projects/tests
- X Uneven class projects/tests
- ▫ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▫ Assignments are complete
- ▫ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- ▫ Relating and working well with others
- X Improvement shown in work with others
- ▫ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▫ Inconsistent Behavior
- ▫ Frequently inattentive
- ▫ Disruptive Behavior

**CLASS ATTENDANCE**

- ▫ Excellent Attendance
- X Satisfactory Attendance
- ▫ Absences interfere with progress
- ▫ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▫ Lateness interferes with progress

**RECOMMENDATIONS:**

- Please turn on your camera during class.
- Make sure to open the document on Google classroom each time we meet.

**GRADE: C+**

**COMMENTS:**

Emily, you had a great start and end to Q3. Some of your best moments were when you were able to respond to videos in writing and when you shared relevant materials to the topics we discussed. You were keenly interested in in looking at why we procrastinate (HW#3) and I loved when you volunteered to be the Kahoot Host - you're a natural! It is my hope that as the year completes you can work to complete assignments that may not initially be of interest to you, but that will help you to grow as a student.

D-16

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick**
**FROM: Fletcher**

**3rd Quarter, March 2021**

**REGARDING OUR WORK IN: Human Sciences 4**

**OBJECTIVES AND CONTENT:**
Human Sciences is a course designed to introduce students to concepts of thought and sciences that currently only arise from or mostly only apply to humans such as philosophy, psychology, and sociology. This course is currently graded heavily on classroom participation due to the abstract and discussion-based nature of the content. Quarter three moved from the Philosophy semester into the Psychology semester, during which we have started the exploration of the history and paradigm shifts psychology has gone through. Students have engaged in activities to reinforce concepts as well as gauge understanding.

**ACADEMIC PROGRESS**

- ▢ Superior Achievement
- ▢ Excellent Progress
- X Good Progress
- ▢ Satisfactory Progress
- ▢ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▢ Outstanding Participation
- ▢ Good Participation
- X Adequate Participation
- ▢ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▢ Highly motivated
- X Adequate motivation and effort
- ▢ More effort is needed

**CLASS PROJECTS/TESTS**

- ▢ Excellent class projects/tests
- X Satisfactory class projects/tests
- ▢ Uneven class projects/tests
- ▢ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▢ Assignments are complete
- ▢ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▢ Improvement shown in work with others
- ▢ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▢ Inconsistent Behavior
- ▢ Frequently inattentive
- ▢ Disruptive Behavior

**CLASS ATTENDANCE**

- ▢ Excellent Attendance
- X Satisfactory Attendance
- ▢ Absences interfere with progress
- ▢ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▢ Lateness interferes with progress

**RECOMMENDATIONS:**

- More consistent participation
- Let's work on the written work

**GRADE: C-**

**COMMENTS:**
Emily, you had a good quarter overall. Most of the quarter, you were present and active on camera. When we did interactive lessons, such as the Kahoots or Perception activities, you were great. Where we have room for growth still is in the completion of written work. You inconsistently worked on material. What you did was done well, showing a good grip on the material. Let's keep the good level of participation and add in a little more work completion, so that we can close out the year as strong as possible.

D-17

ROBERT LOUIS STEVENSON SCHOOL

EDUCATIONAL EVALUATION

**TO: Emily Apple**
**ADVISOR: Nick**
**FROM: Cindy Ricot**

**3rd Quarter, March 2021**

**REGARDING OUR WORK IN: Diversity in Literature 005**

**OVERVIEW:** In Diversity in Literature this quarter, we have been exploring the literature of the Middle East. We have explored the art of the graphic novel through our study of Marjane Satrapi's Persepolis. Through our examination of this piece, we have discussed and studied character development, government corruption, women's rights, and much more. We have also engaged in writing tasks and completed structured notes to ensure student comprehension of the text. The final project was to create a 50-cell graphic novel of their lives that focused on major events, people, experiences, etc. that influenced their identities. Our class engages in regular discussions to foster independent and critical thinking during which time students are able to engage with the texts in a safe and highly rigorous manner. Students also regularly engage in independent reading and reading aloud exercises. Grading is based on all assignments, writing prompts, and participation.

**ACADEMIC PROGRESS**

- ▫ Superior Achievement
- X Excellent Progress
- ▫ Good Progress
- ▫ Satisfactory Progress
- ▫ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▫ Outstanding Participation
- ▫ Good Participation
- X Adequate Participation
- ▫ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▫ Highly motivated
- X Adequate motivation and effort
- ▫ More effort is needed

**CLASS PROJECTS/TESTS**

- X Excellent class projects/tests
- ▫ Satisfactory class projects/tests
- ▫ Uneven class projects/tests
- ▫ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▫ Assignments are complete
- ▫ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▫ Improvement shown in work with others
- ▫ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▫ Inconsistent Behavior
- ▫ Frequently inattentive
- ▫ Disruptive Behavior

**CLASS ATTENDANCE**

- ▫ Excellent Attendance
- X Satisfactory Attendance
- ▫ Absences interfere with progress
- ▫ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▫ Lateness interferes with progress

**RECOMMENDATIONS:**

- **Increase work completion**
- **Increase participation**

**GRADE: B-**

**COMMENTS**: Emily, you did a fantastic job on your alternative final project which was a graphic novel about one of your characters. Your writing was compelling and art work was exceptional. You earned 100%. This quarter you completed some great work. Next quarter I would like to see an increase in your participation and work completion. It is important to push through to complete assignments even when you may not be excited to do so.

D-18

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick and Melissa**
**FROM: Lauren Teresa**

**3rd Quarter, March 2021**

**REGARDING OUR WORK IN: Intro to Humanities 003**

**OVERVIEW:** In this course, we delve into world history through a variety of lenses in the form of both primary and secondary source materials. These materials include: literature, art, architecture, music, historical texts and treatises, and linguistics. We are keen on making connections between those who came before us and ourselves. The main goal of this course is to allow students to gain a "broad vision" of how things came to be as the history of the world unfolded. Assessment is mostly based on participation and engagement in class lectures and discussions, as well as the student's ability to demonstrate learning, which will be tailored to each student based on their individual needs. Assessment often includes writing samples and opportunities to display knowledge of learned material by creating work products that are representative of one of the lenses that we use to look at the world cultures we are studying. This quarter we focused on the dichotomy between the East and West during the Medieval Period. We watched as the Roman Empire collapsed in the West and Christianity became a dominant force and how Islam spread in the East as well as North Africa and parts of Spain leading to different empires and expansion of learning. We saw how this relationship led to conflict sowing the seeds for future interactions with the East to change.

**ACADEMIC PROGRESS**

- ▫ Superior Achievement
- ▫ Excellent Progress
- X Good Progress
- ▫ Satisfactory Progress
- ▫ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▫ Outstanding Participation
- X Good Participation
- ▫ Adequate Participation
- ▫ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▫ Highly motivated
- ▫ Adequate motivation and effort
- X More effort is needed

**CLASS PROJECTS/TESTS**

- ▫ Excellent class projects/tests
- ▫ Satisfactory class projects/tests
- X Uneven class projects/tests
- ▫ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▫ Assignments are complete
- ▫ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▫ Improvement shown in work with others
- ▫ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▫ Inconsistent Behavior
- ▫ Frequently inattentive
- ▫ Disruptive Behavior

**CLASS ATTENDANCE**

- ▫ Excellent Attendance
- ▫ Satisfactory Attendance
- X Absences interfere with progress
- ▫ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▫ Lateness interferes with progress

**RECOMMENDATIONS:**
**Continue to participate in class discussion**
**Submit classwork assignments**
**Attend regularly**

**GRADE: D**

**COMMENTS:**
Emily, you started the quarter off strong submitting most of your classwork assignments. As the quarter proceeded you stopped handing in assignments, and you started missing more classes. Your participation in class discussions improved this quarter, and we appreciated you sharing your ideas on art and intellectual culture during the Medieval period. Next quarter we will work on submitting assignments on time, attending regularly, and completing claims with evidence in your writing.

STEVENSON
ROBERT LOUIS STEVENSON SCHOOL

24 West 74th Street
New York, NY 10023
212-787-6400

6/18/2021

## Educational Evaluations 2020/2021
## Quarter 4

Bonnie Apple
**Emily Apple**
1680 York Ave #4E
New York, NY 10128

Grade: 11
Advisor: Nick Alexandrakos

**Advising** Grade **P** Teachers **Nick Alexandrakos**, **Melissa Jeffay**

| **Attendance** | Usually on time | Lateness/ Absences interfere with progress |
|---|---|---|
| Morning Check-In | X | |
| Mid-Morning Advising | X | |
| Afternoon Check-Out | | X |

| **Participation** | Exceeds Expectation | Meets Expectation | Needs improvement |
|---|---|---|---|
| Goal Setting | | | X |
| Group Discussion | | | X |
| Wednesday Sheets | | | X |

| **Social Skills** | Exceeds Expectation | Meets Expectation | Needs improvement |
|---|---|---|---|
| Interaction with other Students | | X | |
| Communication with Advisor | | X | |

| **Routines/Planning/Organization** | Demonstrates responsible use of Chromebook. | Needs reminders to use Chromebook responsibly. |
|---|---|---|
| Chromebook | | X |

| | Materials in binder are organized | Needs help organizing materials |
|---|---|---|
| Organization of Materials | | X |

Students meet with their advisors three times daily, both individually and in small groups. Morning check-ins are designed to help prepare students for the day and assess whether there are any issues that might impact their functioning that need to be addressed. Mid-morning advising time is structured to help students maintain organization, compose weekly goals, learn coping skills, and participate in group discussions. Each week, advisors meet individually with students to provide feedback about their academic and behavioral progress in each class. At check-out, advisors meet with students to review their planbooks and ensure that they have all materials necessary to complete homework. Additionally, advisors and students meet as needed to resolve any additional issues (eg., resolve conflicts with peers; request accommodations from teachers).

{0}.Find time to draw and create. Exceeds Expectation

Advisor Comments: Emily, at times we engaged in detailed and thoughtful reflection about this goal, which you set yourself. Consider setting this goal again when schools resumes.

2. Attend Study Center, Student Prep and ask the Learning Specialist for academic help. Needs Improvement

Advisor Comments: In the upcoming academic year, your teachers and advisors highly recommend that you improve your Student Prep and Study Center attendance. Your academic teachers and the Learning Specialist look forward to you being present. Occasional participation will not yield the desired results.

**Diversity in Literature** Grade **B** Teacher **Cindy Ricot**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | X | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | X | | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | X | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | X | | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | X | | |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | X | | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | | X | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

In Diversity in Literature this quarter, we have been exploring Asian Literature with a focus on Chinese immigrants. We have explored the immigrant experience looking not only at the initial immigrants but the lives of their children and descendants. Through our examination of the novel Hunger by Lan Samantha Chang and an excerpt from the text American Hate: Survivors Speak Out, we have discussed and studied the effect of representation, or lack thereof, on society and issues specific to immigrants. We have also engaged in writing tasks, note taking, quizzes, and discussions. The final project was to write an essay that answered the following question: What is the Impact of Representation on Society, and how can it impact Asian immigrants in particular? This essay asked students to support their thesis using three different sources. Our class engages in regular discussions to foster independent and critical thinking, during which students are able to question each other and engage with the texts in a safe and highly rigorous manner. Students also regularly engage in writing, independent and whole-group reading, and note taking. Grading is based on all assignments, writing prompts, and participation.

Emily, it has been amazing having you in my class again this year. This quarter we jumped into our book, Hunger, to explore the Asian immigrant experience, its effects on later descendants, the effect representation has on not only society in general but also on Asian immigrants and their families in particular. As we read, we took notes, engaged in discussions, and took quizzes. You struggled with the note taking portion this quarter so we decided to assign an alternative assignment. You worked on No Red Ink to complete

grammar and writing practice, including a short response based on two excerpts from two different sources. You completed both these assignments. Next quarter continue to work on your writing and pushing yourself to write outside of your comfort zone. For your alternative final, you were given the task of writing a story using your characters where there was injustice -- their justice system is corrupt and different groups or factions are targeted and discriminated against. You could decide if there would be war, in-fighting, protests, or if a hero would arise. Although you weren't able to finish the story, you had a clear plan for where the story would go and portion that you were able to finish was excellent. You used your character Urlin as the protagonist who rises up to defend those being mistreated by the Orcs. This behavior is something that we have seen throughout history as ones fight for equal and fair treatment. You earned a 90 out of 100 on your final. Keep up the great work as you go into next year!

**Humanities** Grade **D-** Teacher **Lauren Teresa**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | | X |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | | X |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | | | X |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | X | | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | | X | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

In this course, we delve into world history through a variety of lenses in the form of both primary and secondary source materials. These materials include: literature, art/media, architecture, music, historical texts and treatises, and linguistics. We are keen on making connections between those who came before us and ourselves. The main goal of this course is to allow students to gain a "broad vision" of how things came to be as the history of the world unfolded. Assessment is mostly based on participation and engagement in class lectures and discussions, as well as the student's ability to demonstrate learning, which will be tailored to each student based on their individual needs. Assessment often includes writing samples and opportunities to display knowledge of learned material by creating work products that are representative of one of the lenses that we use to look at the world cultures we are studying. This quarter we focused on the formation of the Modern World. Through a variety of source materials including the introduction of film and photography we were able to explore how our contemporary world was shaped by events that began as far back as the Age of Exploration up to and through the devastating affects of the First World War and Russian Revolution.

Emily, we discussed ways that you could improve your grade this quarter by modifying assignments and trying to make them more interesting for you. After this discussion, you completed one of the missing assignments necessary to improve your grade. You did not complete the trench letter project, which also hurt your grade. When you participate you have great things to say and I encourage you to participate more in future classes and share your ideas and opinions. In the future, make sure to stay on top of assignments and attend class consistently. Your final essay was a great way to show your understanding of history and the connections you make to art.

**Recommendations:**
**Hand in assignments on time**
**Participate more in class**

---

**Mystical Mathematics** Grade **C+** Teacher **Daniel Aulbach-Sidibe**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | X | | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | | X |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | | X | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | | X | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | X | | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | | X | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

In this fourth quarter of the 2020-2021 school year, the class was introduced to the various parts of circles, and the class worked to calculate the area and circumference without substituting in '3.14' for pi. We then introduced the concept of the radian as a way to calculate angle measurements and reviewed our work on the Unit Circle from Q3. We also introduced central angles and their relationship to arc measure and chords drawn within circles. The grades in the class were determined by classwork (30%), homework (20%), class participation (10%), and formal assessments (which consisted of tests and quizzes) (40%).

You have made solid progress this year.

I am really impressed by the candid conversations that we have had about your progress and what you can do. I was so happy that you were concerned about your performance and that you reached out to me.

Recommendations:
Believe in yourself you have so much to offer to others.

**Human Sciences** Grade **D** Teacher **Shaun Fletcher**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | | X |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | | X |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | | | X |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | | X | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | | X | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

Human Sciences is a course designed to introduce students to concepts of thought and sciences that currently only arise from or mostly only apply to humans such as philosophy, psychology, and sociology. This course is currently graded heavily on classroom participation due to the abstract and discussion-based nature of the content. Quarter four covered the psychological components of cognition and ended in an Abnormal Psychology unit. Students engaged in activities to reinforce concepts as well as gauge understanding such as small case studies and group work. The final test was an interactive case study with volunteers who played the role of specific patients allowing students to ask questions and work as a group afterward.

This quarter was dominated by the Abnormal Psychology unit with a lot of emphasis on our Case Study assignments and the discussion of those. The major purpose of the Case Studies was not really to teach student how to diagnose mental health issues, but rather focused on the critical thinking and analysis of information along a specific line. We had a number of case studies, each more complex than the last and we discussed all of them.

Emily, you did not complete most of your case studies and were not engaged in many of the class discussions. Our Final was a group Case Study with an interactive portion that during, by all accounts, you acquitted yourself admirably. For the final, you earned yourself

a B, which earned you a D in the class overall.

**Studio Art** Grade **D+** Teacher **Mitchell Martinez**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | | X |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | X | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | | X | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | | X | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | | | X | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

We continued, in the fourth quarter, to explore through guided, independent technical practice. Students were encouraged to continue to explore with 2D and 3D digital manipulation tools and to paint, draw, sculpt and use textiles as before. Projects, lectures and class discussions focused on reviewing the Principles of Design and Elements of Art. Tying these together with new techniques in order to express one's psychological and emotional state while studying the works and tropes of German Expressionists through their films, history and portraiture. Students finished the first half of the quarter in self portraits done "in the style of" German Expressionists. Students then studied the works of the Eight artists of the Ashcan School and we compared the differences with this form of American Realism contrasted against the emotional realism of the German Expressionists. Students focused on practices essential to the quick journalistic practices of the Ashcan artists: drawing the gestural figure, quick "thumbnail" sketch techniques, under drawing, laying in color and value (in a wide variety of mediums).

Emily, you regularly put yourself on camera and often took part in the class discussions, especially at the beginning of this quarter. This is a great habit to maintain as a method of engaging and keeping yourself on task.

Near the end of this quarter you have had an irregular pattern of attendance and began missing classes or logging in with camera off and not responding to direct prompts or questions, or you appeared to be watching videos when the camera was on. It is the effect this had on your attendance combined with a record of numerous missing assignments that has negatively affected your grade for this quarter.
However, you did reach out and ask for assistance in adapting the style you are comfortable with to the final assignment, which resulted in an excellent adaptation. I recommend that you work to search out these compromises when you are stuck. This has served

you well in the past, and it is a far more effective strategy than avoidance of the assignment, and it can dovetail nicely with the constant creative drawing you are making.

**Computer Science 2** Grade **C+** Teacher **Adam Van Auken**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | X | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | X | | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | X | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | X | |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | X | | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

In Computer Science II, students have the opportunity to choose a customized learning path and delve deeper into an area of interest. Possible topics include object-oriented programming, cybersecurity, game design, virtual reality, web development, and robotics.

Emily, you had an up and down 4th quarter in Computer Science 2. Some weeks, you did not submit any work. You also solved some difficult coding problems, completing the Functions Challenges unit and lesson 9.1 Timers. Highlights of your work were definitely solving the challenging Ghost Invasion and Crazy Ball problems. Although you didn't solve the final exam problem (Growing Circle) you showed grace under pressure by making good progress. Have a good summer!

**Recommendations**

- Practice your coding over the summer in the CodeHS sandbox
- Think about what areas of computer science you would like to pursue in the future

D-37

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple** **2nd Quarter, January 2021**
**ADVISOR: Nick Alexandrakos**
**Mellissa Jeffay** **REGARDING OUR WORK IN: Advising**

**ADVISING**
Students meet with their advisors three times daily, both individually and in small groups. Morning check-ins are designed to help prepare students for the day and assess whether there are any issues that might impact their functioning that need to be addressed. Mid-morning advising time is structured to help students maintain organization, compose weekly goals, learn coping skills, and participate in group discussions. Each week, advisors meet individually with students to provide feedback about their academic and behavioral progress in each class. At check-out, advisors meet with students to review their planbooks and ensure that they have all materials necessary to complete homework. Additionally, advisors and students meet as needed to resolve any additional issues (eg., resolve conflicts with peers; request accommodations from teachers).

| ATTENDANCE | PARTICIPATION | SOCIAL SKILLS |
|---|---|---|
| **MORNING CHECK-IN**<br>▢ Usually on time<br>X Lateness/Absences interfere with progress<br><br>**AFTERNOON CHECK-OUT**<br>▢ Usually on time<br>X Lateness/absences interfere with progress | **GOAL SETTING**<br>▢ Exceeds Expectation<br>▢ Meets Expectation<br>X Needs improvement<br><br>**GROUP DISCUSSION**<br>▢ Exceeds Expectation<br>▢ Meets Expectation<br>X Needs improvement<br><br>**WEDNESDAY SHEETS**<br>▢ Exceeds Expectation<br>▢ Meets Expectation<br>X Needs improvement | **INTERACTION WITH OTHER STUDENTS**<br>▢ Exceeds Expectation<br>X Meets Expectation<br>▢ Needs improvement<br><br>**COMMUNICATION WITH ADVISOR**<br>▢ Exceeds Expectation<br>X Meets Expectation - when present<br>▢ Needs improvement<br><br>**ROUTINES/ PLANNING/ ORGANIZATION**<br>x Demonstrates responsible use of calendar.<br>▢ Needs reminders to follow calendar responsibly.<br>▢ Maintains organized work and materials<br>x Needs help organizing work materials<br><br>**CREDIT** |

**INDIVIDUAL STUDENT GOALS FOR THE QUARTER:**

1. **Have a more organized schedule at home and school.** **Needs Improvement**

   Advisor Comments: As we enter the following quarter let's continue to establish more of a routine with your organization to ensure you are prepared for your classes each day. I suggest checking your schedule of classes and google classroom daily. Also, an afternoon or nightly review would help ensure you were prepared for the next day.

2. **Improve my grade in Mystical Mathematics in Q2** **Needs Improvement**

   Advisor Comments: This has been an excellent goal to set and one to keep as we enter the second half of this academic year. In order to fully achieve this goal I suggest we schedule you to attend Study Center twice a week to ensure you stay up to date and do not fall behind.

D-38

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick & Melissa**
**FROM: Adam Van Auken**

**2nd Quarter, January 2021**

**REGARDING OUR WORK IN: Computer Science 2 001**

**OVERVIEW:**
In Computer Science II, students have the opportunity to choose a customized learning path and delve deeper into an area of interest. Possible topics include object-oriented programming, cybersecurity, game design, virtual reality, web development, and robotics.

**ACADEMIC PROGRESS**

- ▢ Superior Achievement
- ▢ Excellent Progress
- ▢ Good Progress
- ▢ Satisfactory Progress
- X Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▢ Outstanding Participation
- X Good Participation
- ▢ Adequate Participation
- ▢ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▢ Highly motivated
- ▢ Adequate motivation and effort
- X More effort is needed

**CLASS PROJECTS/TESTS**

- ▢ Excellent class projects/tests
- ▢ Satisfactory class projects/tests
- X Uneven class projects/tests
- ▢ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▢ Assignments are complete
- ▢ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▢ Improvement shown in work with others
- ▢ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- ▢ Cooperative Behavior
- X Inconsistent Behavior
- ▢ Frequently inattentive
- ▢ Disruptive Behavior

**CLASS ATTENDANCE**

- X Excellent Attendance
- ▢ Satisfactory Attendance
- ▢ Absences interfere with progress
- ▢ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▢ Lateness interferes with progress

**RECOMMENDATIONS:**

- Respond to teacher feedback
- Turn in Google Classroom assignments on time
- Work on a CodeHS course next quarter

**GRADE: NA**

**COMMENTS:**
Emily, as you admitted voluntarily in class, you did very little work this quarter. As usual, your attendance in virtual class was excellent and you took part in class discussion. I gave you a couple of options to earn credit on your sprite work (giving me your password or including screenshots of your work in progress) but you chose not to do either of them. You ended the quarter on a positive note by giving a nice presentation of your best Sprite work during the year. I commend you for admitting that you did not have the best quarter and coming up with a good game plan for next quarter: working on a CodeHS course.

D-29

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick & Melissa**
**FROM: Mitchell Martinez**

**2nd Quarter, January 2021**

**REGARDING OUR WORK IN: Studio Arts 260**

**OVERVIEW:** We continued, in the second quarter, to explore through guided, independent technical practice. Students were encouraged to use 2D and 3D digital manipulation tools, paint, draw, sculpt and use textiles as before. Projects, lectures and class discussion continued from last quarters topic of Aerial Perspective and focused on the use of Linear Perspective in creating the illusion of depth in order to explore the space within a work of art. Additionally we explored the use of found objects in Conceptual Art, as students were asked to create a conceptual artwork of their own.

**ACADEMIC PROGRESS**

- ▫ Superior Achievement
- ▫ Excellent Progress
- x Good Progress
- ▫ Satisfactory Progress
- ▫ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▫ Outstanding Participation
- x Good Participation
- ▫ Adequate Participation
- ▫ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▫ Highly motivated
- x Adequate motivation and effort
- ▫ More effort is needed

**CLASS PROJECTS/TESTS**

- ▫ Excellent class projects/tests
- ▫ Satisfactory class projects/tests
- x Uneven class projects/tests
- ▫ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▫ Assignments are complete
- x Assignments are late
- ▫ Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- x Relating and working well with others
- ▫ Improvement shown in work with others
- ▫ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- x Cooperative Behavior
- ▫ Inconsistent Behavior
- ▫ Frequently inattentive
- ▫ Disruptive Behavior

**CLASS ATTENDANCE**

- x Excellent Attendance
- ▫ Satisfactory Attendance
- ▫ Absences interfere with progress
- ▫ Too many absences to earn credit

**CLASS PROMPTNESS**

- x Usually on time
- ▫ Lateness interferes with progress

**RECOMMENDATIONS:**
**Complete assignments by the deadlines and be sure to consider the work you regularly do as appropriate for sketch assignments.**

**GRADE: B**

**COMMENTS:**
Emily, you participated very well in class discussion, your work demonstrates a strong creative flair, and your character designs are amazing. The only thing that is affecting your grade here is late assignments and missing test work. While your work is extraordinarily strong, I would like to see you concentrate on connecting it to the given assignment and to make sure to turn your work in on time. You have the skill and the ability to earn A's in this class as you explore your character design work.

D-30

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO:** Emily Apple
**ADVISOR:** Nick
**FROM:** Daniel Aulbach-Sidibe

**2nd Quarter, January 2021**

**REGARDING OUR WORK IN:** Mystical Mathematics 006

**OVERVIEW:** In this second quarter of the 2020-2021 school year, we began our class by looking at traversable networks, graph theory, Euler's Spirals, and two-dimensional map projections of three-dimensional solids. We finished the quarter by exploring the Five Known Platonic Solids and delved into some real applications of imaginary and complex numbers. Students are completing projects on the Platonic Solids for their midterm assessment. The grades in the class were determined by classwork (30%), Homework (20%), class participation (10%), and Formal Assessments (which consist of tests and quizzes) (40%).

**ACADEMIC PROGRESS**

- ▢ Superior Achievement
- ▢ Excellent Progress
- ▢ Good Progress
- ▢ Satisfactory Progress
- X Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▢ Outstanding Participation
- ▢ Good Participation
- ▢ Adequate Participation
- X Participation needs improvement

**MOTIVATION AND EFFORT**

- ▢ Highly motivated
- ▢ Adequate motivation and effort
- X More effort is needed

**CLASS PROJECTS/TESTS**

- ▢ Excellent class projects/tests
- ▢ Satisfactory class projects/tests
- ▢ Uneven class projects/tests
- X Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▢ Assignments are complete
- ▢ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▢ Improvement shown in work with others
- ▢ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▢ Inconsistent Behavior
- ▢ Frequently inattentive
- ▢ Disruptive Behavior

**CLASS ATTENDANCE**

- X Excellent Attendance
- ▢ Satisfactory Attendance
- ▢ Absences interfere with progress
- ▢ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▢ Lateness interferes with progress

**RECOMMENDATIONS:**

Ask more questions during class
Arrange for 1 on 1 session if you are unsure about something

**GRADE: NA**

**COMMENTS:**

Your participation was steadily decreased throughout the quarter and it is my hope that you do not allow disengagement to do a disservice to your ability to do well. During many of our classes, I was checking to see if you were not only showing up to class but were annotating and adding content to your classwork document, and I wasn't sure if you were engaging and following along with the class. You were unable to complete many of your assignments and this lowered your grade. You were unable to submit the midterm project and this did not allow you to pass this quarter. I would be willing to give you a two week extension. I would think you could do a great job on option #3 from the Geometer Midterm Project.

D-31

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick**
**FROM: Fletcher**

**2nd Quarter, January 2021**

**REGARDING OUR WORK IN: Human Sciences 4**

**OBJECTIVES AND CONTENT:**
Human Sciences is a course designed to introduce students to concepts of thought and sciences that currently only arise from or mostly only apply to humans such as philosophy, psychology, and sociology. This course is currently graded heavily on classroom participation due to the abstract and discussion-based nature of the content. Quarter two moved from ethics into metaphysics and finished off in existentialism. The students capped their philosophy semester with a multistep project that either saw exploring their own moral philosophy and philosophical answers to some of the biggest questions in human history. Students completed this project through videos, podcasts, interviews, or traditional essays that showed great depth and creativity.

**ACADEMIC PROGRESS**

- ▢ Superior Achievement
- ▢ Excellent Progress
- X Good Progress
- ▢ Satisfactory Progress
- ▢ Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▢ Outstanding Participation
- ▢ Good Participation
- X Adequate Participation
- ▢ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▢ Highly motivated
- X Adequate motivation and effort
- ▢ More effort is needed

**CLASS PROJECTS/TESTS**

- ▢ Excellent class projects/tests
- X Satisfactory class projects/tests
- ▢ Uneven class projects/tests
- ▢ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▢ Assignments are complete
- ▢ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▢ Improvement shown in work with others
- ▢ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▢ Inconsistent Behavior
- ▢ Frequently inattentive
- ▢ Disruptive Behavior

**CLASS ATTENDANCE**

- ▢ Excellent Attendance
- X Satisfactory Attendance
- ▢ Absences interfere with progress
- ▢ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▢ Lateness interferes with progress

**RECOMMENDATIONS:**

- More active engagement would be nice
- Let's see if we can delve deeper into the material

**GRADE: C**

**COMMENTS:**
Emily, you had a good quarter overall. You stayed on top of your work throughout the quarter and met all the expectations. For most of the quarter, I was pushing people through comments and discussions to dig deeper and press further into the topics. When you would chime in during discussions, it was always with a key insight or perspective. Your work, while all of it did meet my requirements, was never really pushed to the next level of insight you would sometimes show in discussion. This quarter, maybe we can explore more deeply.

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick & Melissa**
**FROM: Cindy Ricot**

**2nd Quarter, January 2021**

**REGARDING OUR WORK IN: Diversity in Literature 005**

**OVERVIEW:** In Diversity in Literature this quarter, we have been exploring the literature of African Americans. We have explored the technique of comparing across genres by comparing various media sources to the poem "Still I Rise" by Maya Angelou. Through our examination of these pieces, we have discussed a number of issues such as fear of the other, racism, microaggressions, and much more. We have also engaged in numerous writing tasks in order to collect the necessary evidence to complete their midterm task of writing a five paragraph essay that would evaluate their ability to compare across genres. Our class engages in regular discussions to foster independent and critical thinking during which students are able to question each other and engage with the texts in a safe and highly rigorous manner. We also utilize breakout rooms as a manner to check-in one on one. Grading is based on all assignments, writing prompts, and participation.

**ACADEMIC PROGRESS**

- ▫ Superior Achievement
- X Excellent Progress
- ▫ Good Progress
- ▫ Satisfactory Progress
- ▫ Unsatisfactory Progress

**CLASS PARTICIPATION**

- X Outstanding Participation
- ▫ Good Participation
- ▫ Adequate Participation
- ▫ Participation needs improvement

**MOTIVATION AND EFFORT**

- ▫ Highly motivated
- X Adequate motivation and effort
- ▫ More effort is needed

**CLASS PROJECTS/TESTS**

- X Excellent class projects/tests
- ▫ Satisfactory class projects/tests
- ▫ Uneven class projects/tests
- ▫ Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▫ Assignments are complete
- ▫ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- X Relating and working well with others
- ▫ Improvement shown in work with others
- ▫ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▫ Inconsistent Behavior
- ▫ Frequently inattentive
- ▫ Disruptive Behavior

**CLASS ATTENDANCE**

- ▫ Excellent Attendance
- ▫ Satisfactory Attendance
- X Absences interfere with progress
- ▫ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▫ Lateness interferes with progress

**RECOMMENDATIONS:**

- Increase participation
- Increase attendance
- Implement feedback
- Ask questions when confused

**GRADE: B**

**COMMENTS:**
You struggled a bit this quarter. Although you definitely have the ability to complete quality work, you sometimes missed assignments or turned them in late. This quarter we worked on comparing across genres in our writing. Be sure to utilize this skill to make connections in discussions as well. You earned a 100 on your midterm planning document and a 167.5/180 on your final midterm essay. Be sure to review my feedback to continue to grow next quarter. Continue to push yourself and you will see tremendous growth as you continue your education.

D-33

**ROBERT LOUIS STEVENSON SCHOOL**
**EDUCATIONAL EVALUATION**

**TO: Emily Apple**
**ADVISOR: Nick and Melissa**
**FROM: Lauren Teresa**

**2nd Quarter, January 2021**

**REGARDING OUR WORK IN: Intro to Humanities 003**

**OVERVIEW:** In this course, we delve into world history through a variety of lenses in the form of both primary and secondary source materials. These materials include: literature, art, architecture, music, historical texts and treatises, and linguistics. We are keen on making connections between those who came before us and ourselves. The main goal of this course is to allow students to gain a "broad vision" of how things came to be as the history of the world unfolded. Assessment is mostly based on participation and engagement in class lectures and discussions, as well as the student's ability to demonstrate learning, which will be tailored to each student based on their individual needs. Assessment often includes writing samples and opportunities to display knowledge of learned material by creating work products that are representative of one of the lenses that we use to look at the world cultures we are studying. This quarter some of the civilizations that we traveled to were ancient Greece, ancient China, ancient India and ancient Rome.

**ACADEMIC PROGRESS**

- ▫ Superior Achievement
- ▫ Excellent Progress
- ▫ Good Progress
- ▫ Satisfactory Progress
- X Unsatisfactory Progress

**CLASS PARTICIPATION**

- ▫ Outstanding Participation
- ▫ Good Participation
- ▫ Adequate Participation
- X Participation needs improvement

**MOTIVATION AND EFFORT**

- ▫ Highly motivated
- ▫ Adequate motivation and effort
- X More effort is needed

**CLASS PROJECTS/TESTS**

- ▫ Excellent class projects/tests
- ▫ Satisfactory class projects/tests
- ▫ Uneven class projects/tests
- X Unsatisfactory class projects/tests

**ASSIGNMENTS**

- ▫ Assignments are complete
- ▫ Assignments are late
- X Assignments are missing

**INTERACTION WITH OTHER STUDENTS**

- ▫ Relating and working well with others
- X Improvement shown in work with others
- ▫ Relating and working with others needs attention

**BEHAVIOR TOWARD CLASS AND TEACHER**

- X Cooperative Behavior
- ▫ Inconsistent Behavior
- ▫ Frequently inattentive
- ▫ Disruptive Behavior

**CLASS ATTENDANCE**

- ▫ Excellent Attendance
- ▫ Satisfactory Attendance
- X Absences interfere with progress
- ▫ Too many absences to earn credit

**CLASS PROMPTNESS**

- X Usually on time
- ▫ Lateness interferes with progress

**RECOMMENDATIONS:**
**Complete and submit classwork assignments**
**Attend class regularly**

**GRADE: D**

**COMMENTS:**
Emily, you have the ability to do well in this class. The days that you attend class and participate show that you are interested in the topics we are covering. You did not hand in any classwork assignments this quarter and handing in a midterm was a great start; however, I would have liked to see you use your creativity even more. Next quarter, please use the times we are scheduled to work together for student prep as an opportunity to complete these assignments with me and submit them.

E-1

STEVENSON
ROBERT LOUIS STEVENSON SCHOOL
24 West 74th Street, New York, NY 10023, Tel: 212 787 6400, Fax: 212 873 1877

## ENROLLMENT CONTRACT 2021 SUMMER SESSION AND THE 2021-2022 SCHOOL YEAR

NAME OF STUDENT: Emily Apple

NAME OF PARENT: Gary Apple

**The Robert Louis Stevenson School (hereafter referred to as the School) is pleased to offer a place to your child for the 2021 Summer Session and the 2021-2022 school year. You may accept this placement by returning a fully signed copy of this Enrollment Contract, together with a deposit in the amount of $7,720 made payable to the Robert Louis Stevenson School following the schedule below. The place offered by the School will be kept available until June 15, 201.**

This Enrollment Contract sets forth the terms and conditions upon which the Robert Louis Stevenson School will hold a place for your child and provide educational services.

Tuition for the 2021 Summer Session and the 2021-2022 academic year set by the Board of Trustees is $84,920 (eighty-four thousand, nine hundred and twenty dollars), payable as follows:

| | |
|---|---|
| June 15, 2021 | = $ 7,720 |
| July 15, 2021 | = $13.500 |
| August 15, 2021 | = $13,500 |
| September 15, 2021 | = $13,500 |
| November 1, 2021 | = $13,500 |
| December 15, 2021 | = $13,500 |
| February 1, 2022 | = $ 9,700 |

Please note that Stevenson does not send reminder invoices. Families are responsible to track and follow the payment due dates on the contract.

In accepting this offer of admission, you agree to be responsible for and to pay the full tuition of $84,920 and to accept the following terms and conditions:

1. This Contract is for the Summer Session commencing on July 6, 2021 and the academic year commencing on September 2, 2021 (start date) and ending on or about June 15, 2022 (end date) without deductions for absence, withdrawal, dismissal or any other cause.

2. Payment in accordance with the established schedule is a condition for provision of educational services. The School reserves the right to terminate educational services including class attendance for non-payment upon two weeks' notice. Termination of services does not relieve Parent(s)/Guardian(s) of any obligations set forth herein, with the following exception: the Contract can be cancelled within two weeks of the start date of this Enrollment Contract if the student is placed by Parent(s)/Guardian(s) in a public school or state approved non-public school (NPS) class recommended by the local education agency (in New York City, the Department of Education) in accordance with an Individualized Education Program. Notice of such placement and cancellation must be provided by certified mail to the Head of School, within two weeks of the start date shown above, together with a copy of the Final Notice of Recommendation provided by the public school/NPS and evidence of enrollment in the recommended placement. Proof of attendance will be required. If the Contract is cancelled due to public school placement as described above the Parent(s)/Guardian(s) are responsible for tuition costs incurred prior to notice of Contract termination. Tuition charges

E-2

will be calculated on the basis of $7,720 per month of school, beginning July 1, 2021. Any portion of the month prior to notice of termination will result in a charge for the full month.

3. If payment is not made in accordance with the payment schedule, the amount of the unpaid outstanding payment shall incur late fees from the day after the applicable due date that was owed to the School. Late fees will be computed at the rate of 1.25% per month.

4. If you take steps to initiate review of your child's right to public support for the Robert Louis Stevenson placement, the School will provide information requested by the public school system or your attorney in connection with this review, but will not do so unless you have complied with all of your obligations pursuant to this Contract.

5. The Robert Louis Stevenson School has offered a place to your child on the expectation, based on the diagnostic and educational records you have provided, that you will continue his or her ongoing psychotherapeutic treatment, that the School will be able to meet his or her educational needs, and that your child will be able to benefit from enrollment. The School reserves the right to terminate this contract at any time, if, in the judgment of the School, it is not able, with existing staff and resources, to meet the needs of your child. In addition, the School reserves the right to terminate this contract if the School's behavior management interventions are not effective and, in the judgment of the School, your child's conduct disrupts the orderly operation of the School and warrants change of placement or expulsion.

6. Parents and other visitors to the School are expected to abide by the School's rules and policies, and such compliance by parents, guardians, or other persons closely associated with the student is a condition of the Student's continued enrollment. The School may suspend or terminate the enrollment of your child at any time, or may rescind this Enrollment Contract if (i) parent, guardian, or other person closely associated with the student disregards, does not abide by, or fails to meet School rules and expectations; (ii) a parent, guardian, or other individual closely associated with the Student fails to cooperate with the School or demonstrates an unwillingness or inability to positively contribute to the School community; or (iii) the School determines that your child's continued attendance at the School, or the involvement of a parent or guardian, is not, for any other reason, in the best interest of the Student or the School.

7. The School's offer of enrollment to your child is contingent on receipt of a current physical examination which includes current immunization information as well as current medical information concerning allergies, medications, and other health needs of your child, and, in addition, authorization for the School to contact your child's physician and all mental health professionals working with your child in the event of an emergency. If upon review of medical information, Robert Louis Stevenson deems special arrangements are necessary, you are expected to cooperate in the development and implementation of an individualized health management plan in consultation with the local Committee on Special Education and/or with your child's physician to minimize risks to your child and others.

8. By signing this Contract, you grant to the School the right to distribute, transmit, publish, copy, or otherwise use any image of the student and/or family members involved with the School's educational programs or functions for the School's educational purposes or in the School's advertising or promotional materials. If you do not wish to allow the permission as set forth above, you must notify the School in writing by certified mail addressed to the Head of School.

9. Withdrawal or absence of a student for any reason during the term of this Contract, does not relieve Parent(s)/Guardian(s) of any payment obligations under this Contract except as indicated in Paragraph 2 above.

10. This Enrollment Contract is for the full amount of the 2020 Summer Session and the 2020-2021 School Year only, and it does not guarantee placement in any other portion of the academic year, or academic year thereafter.

E-3

ADDITIONAL FEES AND COSTS

Tuition payments cover instructional costs. You may be asked to pay additional costs for class trips or other extracurricular events that are not directly related to the School curriculum. In addition, you will be responsible for costs incurred by the School to comply with Parental requests, including assessments recommended by the School as necessary for continuation for educational programming. Such costs may include, but are not limited to, copying costs, costs of postage or delivery, or travel.

MODIFICATION FOR ACTS BEYOND THE SCHOOL'S CONTROL

The School reserves the right, in its sole and exclusive discretion, to suspend its duties and obligations, under this Contract or otherwise, immediately without notice, during periods that the School is affected by force majeure events including, but not limited to, fire, acts of God, war, governmental action, epidemic, pandemic, or any other event beyond the School's control. If such an event occurs, the School duties and obligations under this Contract may be suspended or postponed until such time as the School, in its sole discretion, may safely reopen or resume normal operations. In such instance, the Tuition obligations under this Contract shall continue and the School shall not be liable for any such failure or delay in its performance. Parents understand that School schedules may be extended for a period of time equal to the time lost due to any delay so caused and/or classes may be conducted via distance-learning basis and/or weekend classes may be scheduled, at the School's discretion.

PARENT/GUARDIAN SIGNATURES

Parent(s)/Guardian(s) of the Student are individually and jointly responsible for the tuition payments, notwithstanding any agreements with respect to such obligations between the parties. The Contract shall not become effective until the School also signs and returns a copy to the undersigned.

ACCEPTED AND AGREED:

1) [signature] 7/21/21

Signature of Parent (Guardian) Date

Gary Apple

Print Name of Parent (Guardian)

ACCEPTED AND AGREED:

[signature] 7/29/21

Carl Pozzi Date

Chief Financial and Operating Officer

The Robert Louis Stevenson School

FILED: KINGS COUNTY CLERK 01/19/2023 02:22 PM
NYSCEF DOC. NO. 3

INDEX NO. 501944/2023
RECEIVED NYSCEF: 01/19/2023

E-4

Robert Louis Stevenson School
24 West 74 Street
New York NY 10023
212 787-6400
212 873-1872 FAX
website www.stevenson-school.org

**ATTENDANCE**
**2021-2022**

Student: Apple Emily
LAST NAME, FIRST
Address: 243 E 81st
New York, NY 10028
Date of Birth: 03.21.03 Phone No (917)723-8088

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | A | B | C |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| September | | S | S | W | W | H | H | H | / | / | W | W | / | / | / | H | / | W | W | / | / | / | / | / | W | W | / | / | / | / | | 15 | 15 | 0 |
| October | / | W | W | / | / | / | / | / | W | W | H | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | 20 | 20 | 0 |
| November | / | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | H | H | H | W | W | / | / | | 19 | 19 | 0 |
| December | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | H | H | H | H | H | W | W | H | H | H | H | H | 13 | 13 | 0 |
| January | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | H | / | / | / | / | W | W | / | / | / | / | / | W | W | / | 20 | 20 | 0 |
| February | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | H | H | H | H | H | W | W | / | | | | 15 | 15 | 0 |
| March | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | / | W | W | / | / | / | / | 23 | 23 | 0 |
| April | / | W | W | / | / | / | / | / | W | W | H | H | H | H | H | W | W | H | H | H | H | H | W | W | / | / | / | | | W | | 11 | | |
| May | W | | | | | | W | W | | | | | | W | W | | | | | | W | W | | | | | | W | W | H | | 21 | | |
| June | | | | W | W | | | | | | W | W | | | | | | | | | | | | | | | | | | | | 11 | | |

A= school days in month
B= attendance in month
C= absence in month

W = Weekend H = Holiday, Vacation A = Absent / = Present S = Inclement Weather Day

Prepared by *Ben Weeks*

Ben Weeks EXECUTIVE ASSISTANT
Name Title

E-5

STEVENSON
ROBERT LOUIS STEVENSON SCHOOL

24 West 74th Street
New York, NY 10023
212-787-6400

11/3/2021

## Educational Evaluation 2021/2022
## Quarter 1

Gary Apple
**Emily Apple**
243 E 81st
New York, NY 10028

Grade: 12
Advisor: Russell Kenner

**Advising** Grade **P** Teachers **Russell Kenner**, **Jacob Friedman**

| **Attendance** | Usually on time | Lateness/ Absences interfere with progress |
|---|---|---|
| Morning Check-In | X | |
| Mid-Morning Advising | X | |
| Afternoon Check-Out | X | |

| **Participation** | Exceeds Expectation | Meets Expectation | Needs improvement |
|---|---|---|---|
| Goal Setting | | | X |
| Group Discussion | | X | |
| Wednesday Sheets | | X | |

| **Social Skills** | Exceeds Expectation | Meets Expectation | Needs improvement |
|---|---|---|---|
| Interaction with other Students | | X | |
| Communication with Advisor | | X | |

| **Routines/Planning/Organization** | Demonstrates responsible use of Chromebook. | Needs reminders to use Chromebook responsibly. |
|---|---|---|
| Chromebook | | X |

| | Demonstrates responsible use of planbook. | Needs reminders to fill out planbook. |
|---|---|---|
| Planbook | X | |

| | Materials in binder are organized | Needs help organizing materials |
|---|---|---|
| Organization of Materials | X | |

Students meet with their advisors three times daily, both individually and in small groups. Morning check-ins are designed to help prepare students for the day and assess whether there are any issues that might impact their functioning that need to be addressed. Mid-morning advising time is structured to help students maintain organization, compose weekly goals, learn coping skills, and participate in group discussions. Each week, advisors meet individually with students to provide feedback about their academic and behavioral progress in each class. At check-out, advisors meet with students to review their planbooks and ensure that they have all materials necessary to complete homework. Additionally, advisors and students meet as needed to resolve any additional issues (eg., resolve conflicts with peers; request accommodations from teachers).

1. Get good Grades *Meets Expectation*
You consistently maintained grades above B in four of your classes; however, your grades in the other two were most often C. So, your overall average was solid, however, you should make it a priority to spend time on all your classes rather than those that you prefer.

2. Eat better/maintain healthier habits *Needs Improvement*
During mid-morning advising you generally had a collection of food to eat-usually cookies or chips of some kind. It is therefore difficult to believe that you made much progress in this area. Better diet and sleeping habits have an impact on many things, including overall mental health. If you limit your intake of 'junk food,' you may find more benefits than you initially expected.

**Creative Writing** Grade **B+** Teacher **Jake Appleman**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | X | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | X | | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | X | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | X | | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | X | | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

During the first quarter of Creative Writing, students inquired into the process of writing original content that best suited their skill sets while studying and replicating two different points of view in fiction writing (first person, first person peripheral) and reacting to philosophical material pertaining to writing. Students responded to prompts; analyzed quotes from famous authors and famous books; drafted mini screenplays; commented on writing advice from a published novelist; played writing games; crafted short stories; read articles about proper grammar usage; incorporated popular culture into narratives; and listed ideas that could inspire future writing. Students delivered one or two pieces per week. For their final project of the quarter, each student drafted a Wikipedia page for a character and then wrote a five-paragraph story about that character. Assessment was based on the written work, writing process, and classroom conduct.

Emily,

You and I both know that you're a writer. You craft original and innovative stories that showcase your developing voice and good sense of plot. You can, however, as shown during the first quarter, be resistant to completing all assignments and to working with your teacher to better your work. When I asked you about revising your final piece for the quarter, you declined. When I asked you to work

on something else to compensate for the lack of editing, you also declined. I have no doubt you're going to be a tremendous writer who grows by leaps and bounds with more practice and life experience. I would just like you, moving forward, to maximize your effort in class.

**Recommendations:**
--Keep working hard
--Get more done during class time
--Think about how you can revise your stories

**English- Senior Seminar** Grade **B** Teacher **Nick McKelvie**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | X | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | | X |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | X | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | X | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | | X | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | | X | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

In Senior Seminar this first quarter, we focused on personal writing, in particular on structure, transitions, word choices, reflection, and writing to a specific purpose and audience. Our main work was on the college essay, especially in revising and reworking their drafts based on my feedback. Students worked hard to produce a college essay that spoke to their experiences while effectively meeting the purpose of college admission. In addition, we read and analyzed example college essays to evaluate their effectiveness, and also studied several works of creative nonfiction, including stories by David Sedaris, Jamaica Kincaid, Amy Tan, and Alison Bechdel. Students wrote their own works of creative nonfiction and workshopped them with me and their classmates. Throughout this quarter, we focused on how writing can serve as a reflection upon and expression of our experiences and our understanding of ourselves. Students were graded on their participation, including asking questions and sharing ideas during discussion, coming prepared to class, and working productively in groups and individually. They were also graded on their writing, including short in-class responses, their college essay, and a short piece of creative nonfiction, and on completion of homework and classwork assignments. Next quarter, we will focus on using research to answer pressing questions in nuanced, thoughtful ways.

Emily, it's been fun getting to know you so far this year, and I've enjoyed reading your stories and seeing your creative illustrations. Your writing this quarter demonstrated strong storytelling skills, and you were able to reflect upon your experiences meaningfully and explore the impact of different events upon your life. In your personal essay, you used vivid description, characterization, dialogue, and suspense to build to a climax and a thoughtful resolution. You took my feedback seriously and added to your conclusion and addressed grammatical errors. You also demonstrated strong skills of persuasion in your creative nonfiction essay, where you made use of evidence and reasoning to support your point (as well as a good dose of humor and a gif!). In class, when you engage in our discussions you offer interesting insights and personal connections. When redirected, you sometimes put aside your drawings or videos to engage in classwork, especially when it's a more significant assignment. You are polite in expressing how you are feeling and whether you understand the directions. I would encourage you in this next quarter to try each activity or assignment in class to see what you think of it - it's that effort and flexibility that counts! I look forward to continuing to work with you, and to see what creations you dream up on your sketchpad next.

Recommendations:

- Begin class by putting aside your laptop and listening to instructions to engage with the activity of the day.
- Use student prep and study center to help you complete assignments outside of class.

---

**US History 2: Modern American** Grade **B+** Teacher **Jacob Friedman**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | X | | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | X | | | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | X | | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | X | | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | X | | |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | X | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

Welcome to US History 2! This year is broken down into units based on geography. Our first unit, which occupied most of the first quarter, was The West. Students discussed and answered questions on slides covering the relationship between US settlers, railroad companies, and Native Lakota and Dakota peoples. Students then read and analyzed several primary and secondary sources on these

relationships. Finally, students took part in a historical debate on whether land should be owned as private property. After the debate, we began our second unit, on the US and the Caribbean.

Emily, you had an impressive first quarter. Your success on the slides questions, your 93% grade on the quiz, and your extra credit on the kahoot make clear that you have a firm grasp of the topics we're covering. You didn't complete 2 out of the 3 texts in the source packet; you'll have many more chances for critical reading this year. Your participation, as in past years, continued to be excellent when called on, even if you sometimes seemed to be distracted during class. Finally, you did stellar work on the debate, and were a key part of your team's victory. I'm excited for quarter 2!

Recommendations:

- Continue to be a team leader on complex assignments.
- Volunteer answers more frequently during discussion.

---

**Navigating the World through** Grade **C+** Teacher **Heidi Olson**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | X | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | X | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | X | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | X | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | X | |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | | X | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | | X | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

Students began the year studying measurement. They covered linear measurement, dry and liquid measurements in both English and metric units. We did hands-on measuring and estimating distances measuring the blocks around school; estimates verified that 20

blocks (with streets) is about a mile. We looked at metrics in sports to get a real world feel for metrics in the 100 meter dash, swimming, and platform diving. In weather students learned to interpret weather maps/legends, visited the weather station, and compared Celsius and Fahrenheit temperatures. The class also reviewed analog time, and speed. The class reviewed data from NOAA (National Oceanic and Atmopheric Administration) seeing how metric measures and English measures are used by scientists.

Emily you arrived to class on time and ready to work most days. Generally, you were attentive at the beginning of class lessons. Most of the time you were able to respond to redirection in class and pay attention a few minutes longer. On the days you are engaged, you participate well in discussions. The work you do in class is accurate and neat. You mastered converting Celsius and Fahrenheit as well as analog clock review, and use of metric and English tools.And you were enthusiastic in the measuring and estimating the mile and on the trip to the weather center in the Central Park. Additionally, your liquid/dry measuring project was excellent - loved the cookies you made and shared.Often toward the end of the week you often run out of steam and did not participate or do work. At the end of the quarter you had several more days where you didn't engage or do work. About half the time you are able to complete work entirely in class. When worksheets are assigned as homework, they are not completed. That said, you generally get most of the work in eventually. Your pattern has been to catch up on many assignments at one time when I give a work period in class.

Recommendations:
Use student prep complete work,
work on a strategy to stay engaged in class where you make valuable comments

**Health & Wellness** Grade **C-** Teacher **Michelin Aboukasm**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | | X |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | | X |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | X | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | | X | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

Students are introduced to the dimensions and interconnectedness of Health and Wellness. Students review skills and behaviors that contribute to a healthy lifestyle and promote optimal wellness. In this quarter students were introduced to Nutrition and how certain foods and eating habits affect Total Health. Students explored MyPlate.org that offers resources and practices to enable healthier food choices. Further, the class was introduced to diseases that can be prevented through proper nutrition and exercise. Students further explored and differentiated positive and negative influences and factors that contribute to total health i.e., media, social media, environment, and peers. For the Q1 project, students were to explore a healthy relationship with food and their health literacy within the topic of nutrition. Students had the option of developing a Healthy Food Ad or Interview an individual within their household that cooks or provides the meals. Assessment was based on classwork, homework, participation, weekly assessments, and Quarter 1 Project.

Emily, you have completed your first quarter in Health and Wellness. When you are in class, your computer and earplugs serve as a distraction; the computer should be used as a means to complete the graphic organizers and take notes. I've had to utilize GoGuardian to redirect your attention a few times. Additionally, your performance on assignments and assessments were low scoring and not to your potential. Your responses were often rushed, suggesting that you did not check your work or use the lecture slides provided in Google Classroom to help you conclude your responses. Even though your attendance was consistent, you were distracted during class; this prevented your ability to use class time that was provided, to make-up outstanding assignments. Further, I did notice that you did not process all the revision feedback. Doing so would have elevated your grade and, will allow for corrections on any misconceptions you may have on the context. Moving forward, this should be one of your goals. Acknowledging and accepting feedback is essential to academic growth. Lastly, it would behoove you to utilize the planner and Google Classroom to assist with staying on-top of your assignments and due-dates. As this quarter ends, it would benefit you to realize that you have plenty of potential to elevate your performance as a student. Focus on motivation and discipline! You have my support.

**Recommendations:**

- Be receptive to feedback.
- Utilize Study Center for assistance with assignment and project completion.
- Continue to build on your studentship.
- Utilize Planner and Google Classroom to stay on top of assignments and due-dates.
- Utilize provided class time towards completing assignments
- Increase participation

**Physical Education** Grade **B-** Teacher **Nick Alexandrakos**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | X | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | | X |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | X | | |

E12

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | X | |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | | X | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | X | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

The first quarter focused on the importance of fitness, individual exercise activity needs, and how to safely exercise. Students assessed themselves and designed individual fitness programs to build muscular strength and increase cardio-vascular fitness. Students participated in numerous safe, developmentally appropriate physical activities and team sports, such as both indoor and outdoor soccer and handball. Class instruction was activity-based and designed to further develop students' interest in personal lifelong physical activity and fitness. Evaluations were based on participation, behavior, attendance,effort, and peer-interaction. An individual's level of fitness was not used as a grading criterion.

Emily, your commitment to obtaining the strongest grade possible in PE is evident, though in order to elevate your grade next quarter I recommend that you improve your participation and effort levels. Your excellent attendance grade and preparation record shows a strong commitment to your PE class. As we begin to look towards Q2 I recommend that we continue to work on ways to distance yourself from your computer during 3rd period. The gym is one of the few spaces where the computer is not needed. Here are your Q1Records Day high scores: 10 hand release push ups, 15 bar pull ups, 56 step ups, and 16 cm stretching. I look forward to seeing what you can accomplish in the second marking quarter.

Recommendations
-Continue to challenge yourself responsibly
-Elevate preparation grade
-Leave the computer with your Advisor prior to entering the gym.

STEVENSON
ROBERT LOUIS STEVENSON SCHOOL

24 West 74th Street
New York, NY 10023
212-787-6400

January 19, 2022

## Educational Evaluation 2021/2022
## Quarter 2

Gary Apple
**Emily Apple**
243 E 81st
New York, NY 10028

Grade: 12
Advisor: Russell Kenner

**Advising** Grade **P** Teachers **Russell Kenner** **Jacob Friedman**

| **Attendance** | Usually on time | Lateness/ Absences interfere with progress |
|---|---|---|
| Morning Check-In | X | |
| Mid-Morning Advising | X | |
| Afternoon Check-Out | X | |

| **Participation** | Exceeds Expectation | Meets Expectation | Needs improvement |
|---|---|---|---|
| Goal Setting | | | X |
| Group Discussion | | | X |
| Wednesday Sheets | | X | |

| **Social Skills** | Exceeds Expectation | Meets Expectation | Needs improvement |
|---|---|---|---|
| Interaction with other Students | | X | |
| Communication with Advisor | | X | |

| | Demonstrates responsible use of planbook. | Needs reminders to fill out planbook. |
|---|---|---|
| Planbook | X | |

| | Materials in binder are organized | Needs help organizing materials |
|---|---|---|
| Organization of Materials | | X |

Students meet with their advisors three times daily, both individually and in small groups. Morning check-ins are designed to help prepare students for the day and assess whether there are any issues that might impact their functioning that need to be addressed. Mid-morning advising time is structured to help students maintain organization, compose weekly goals, learn coping skills, and participate in group discussions. Each week, advisors meet individually with students to provide feedback about their academic and behavioral progress in each class. At check-out, advisors meet with students to review their planbooks and ensure that they have all materials necessary to complete homework. Additionally, advisors and students meet as needed to resolve any additional issues (eg., resolve conflicts with peers; request accommodations from teachers).

1. **Complete assignments and earn good grades** *Needs Improvement*
This quarter you passed all of your classes; however, it took a tremendous amount of work in the final week of the quarter to do so. Over the whole of the quarter you were often behind on work, most notably in Math class. In the future, spending an appropriate amount of time on assignments during the quarter will make the final week far more manageable. You always have written assignments in your plan book--you should refer to it in the evenings for consistency.

2. **Improve diet** *Needs Improvement*
This is something that many people overlook when considering ways to improve their overall health and wellbeing. It is excellent that you recognize it as an area in which you can improve. I know that you consistently have a well-rounded breakfast, which is certainly a start. However, during the day your eating habits generally revolve around snack food that can lead to dramatic shifts in energy instead

of prolonged energy that leads to increased productivity. Perhaps next quarter you can experiment with a recipe once a week at home for dinner. Leftovers are ideal lunches, too.

**Creative Writing** Grade **A-** Teacher **Jake Appleman**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | X | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | X | | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | X | | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | X | | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | X | | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

During the second quarter of Creative Writing, students inquired into the process of writing original content that best suited their skill sets while studying and replicating two different points of view in fiction writing (first person multiple vision and second person) and reacting to philosophical material pertaining to writing, most notably Rainer Rilke's Letters to a Young Poet and Lorrie Moore's short story "How to Become a Writer". For greater insight into the craft of writing, students analyzed the film Finding Forrester. Students responded to prompts; commented on writing advice given by a published novelist; played writing games; crafted short stories; incorporated popular culture into narratives; wrote poetry; used music as a springboard for freewriting; and detailed their lives in quarantine via a running diary. Students delivered one or two pieces per week. For their midterm, students were each assigned a specific writing prompt at random, drawing the prompt from a hat, and given 90 minutes to respond. Assessment was based on the written work, writing process, the midterm, and classroom conduct.

Emily,

Emily, when you had something you wanted to write during the second quarter of Creative Writing, you wrote well and at length. This reality was evident in your Second Person comment and in your First Person Multiple Vision story. Both pieces showcased a preternatural prolific flair that is incredibly impressive. At other times, however, you dismissed assignments and chose to remain off task. It is important in upcoming quarters that you strive to complete all assignments, not only to earn a top grade, but to set a standard that you can carry with you in your future endeavors. Your midterm showcased the best side of your studentship. You wrote a lengthy piece in which you fused your chosen style with one of your prompt options, taking more time than any other student in the class to

finish, a commendable effort and a job well done. Because of your midterm success your grade was raised significantly. Please keep up the positive trend in the next two quarters. You can doing this by doing what you did in the midterm: applying and fusing your personal style to assignments, so that you do not lose interest.

**Recommendations:**
Complete all assignments;
Keep on your developing path as a talented young writer

**English- Senior Seminar** Grade **C+** Teacher **Nick McKelvie**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | X | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | | X |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | | X | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | X | |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | | X | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | X | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

In Senior Seminar this second quarter, we moved on from personal writing to focus on the skill of research writing, and working toward a long-term goal in the form of a research paper. Students chose their own topics to research in depth, and through the course of several lessons, honed their skills of research, using such resources as databases of scholarly articles, the New York Public library, and general internet sources. We worked on acquiring and evaluating trustworthy sources, summarizing and analyzing their content, and putting these pieces together to plan for a piece of writing. We also took a trip to the New York Historical Society, where students attended a program on "Research in the Digital Age." Students then worked in class to plan, draft, and revise their research papers. To support this work, I broke the process down into a series of steps, with modeling, lessons, and graphic organizers along the way. We explored and analyzed example research papers, got into the details of MLA citations, and worked one-on-one to review and revise their writing. Students also chose a staff mentor who will work with them throughout the remainder of the year on their Senior Seminar projects. To conclude this quarter, students took their research and created a short presentation, which they used to teach their peers about their topic. All of this sets up the following quarter's focus on critical perspectives in literature.

Emily, you worked with me this quarter to conduct research and create a pamphlet advocating for ways people can support their local

animal shelter, which was a creative and personal way of engaging in our focus on research. Throughout the research process, you worked with me to find several reputable sources of information on your topic, and when provided with a graphic organizer, you answered questions analyzing the quality of the source, and you showed the ability to pull out some relevant facts and details from the sources. You advocated for yourself and said that you wanted to use multiple choice, rather than writing, and you were responsive when this accommodation was made for your sources. You were also open to approaching the research paper differently, and you agreed to my idea of creating a pamphlet. You worked with me to verbally outline your pamphlet, and you created a first draft by hand. When remote, I sent you pictures of this first draft, and you then typed up your pamphlet digitally using a framework I provided. You then added a bit more information, although you did not wish to add images or revise further based on my feedback. During our midterm exam period, you shared your work with your classmates, and you spoke with confidence and enthusiasm about your topic. They were impressed by your work on the pamphlet, and by your passion for your topic. Throughout the quarter, you were often reluctant to work during class, but when I broke the assignment down and gave you the opportunity for breaks in between tasks, you were usually responsive and made progress. As we go into the next quarter, let's continue to work productively together, and I would encourage you to keep advocating for yourself in terms of strategies that work well for you. Work as well to break down assignments into smaller tasks, so that you can tackle them more independently.

Recommendations:

- Start class by listening to instructions and trying whatever task is asked of you, rather than starting with a break.
- Be open to suggestions to add further creativity and personality to your assignment, such as potentially adding drawings, images, or charts to your animal shelter pamphlet, or adding further ideas to your writing.

**US History 2: Modern American** Grade **D+** Teacher **Jacob Friedman**

| | | | | | |
|---|---|---|---|---|---|
| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
| Academic Progress | | | | X | |
| | | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
| Class Participation | | | | X | |
| | | | Highly motivated | Adequate motivation and effort | More effort is needed |
| Motivation and Effort | | | | X | |
| | | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
| Class Projects/Tests | | | | X | |
| | | | Assignments are complete | Assignments are late | Assignments are missing |
| Assignments | | | X | | |
| | | | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
| Interaction with other Students | | | X | | |
| | | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
| Behavior Toward Class and Teacher | | X | | | |
| | | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
| Class Attendance | | X | | | |

E-77

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

This quarter, our geographic focus took us to the Caribbean, Europe, and the Northeast of the US itself. At the start of the quarter, students finished the packet on US-Caribbean relations, and took a quiz on that unit. Next, students answered slides questions on the US and Europe, and took part in a Socratic Seminar on the causes of the US entry into World War I. Finally, students answered slides questions on New York in the twentieth century, took a cumulative quiz, and wrote an in-depth paper on whiteness in the modern US. Students discussed their papers for the midterm.

Emily, you did some quality work this quarter, despite some struggles. You showed an understanding of US-Caribbean relations by earning a B+ on the packet, although you struggled on the quiz. You earned a C+ on the Europe questions, did not finish the Socratic Seminar, and earned a D+ on the cumulative quiz. Finally, you wrote a fascinating midterm on racial divisions, earning a C+ on the final draft.

Recommendations:

- Advocate for yourself by asking for help about any assignments you're missing or struggling with.
- Reflect on any content that particularly stuck out to you this quarter-- it will come in handy throughout the rest of the year.

---

**Navigating the World through** Grade **D+** Teacher **Heidi Olson**

Class focused on mapping and understanding and using physical tools (globes/maps) and electronic sources (websites/apps) to navigate. Students used and interpreted national park maps and city tourist maps. They practiced translating maps into giving directions to a visitor: i.e. go to the corner turn right (North) at the stop sign. They applied skills to foreign subways including the Moscow subway where matching patterns and colors is the key. Goal is to gain skills to navigate without Google. They compared "wayfinding" maps in international airports and judged which were most effective. Students built latitude and longitude knowledge and used geoposition apps such as "what3words" to pinpoint locations off of street grids - useful in Mongolia and Central Park. Students created a visitor guide using tourist maps of a city.

Grading is based on participation, class work, homework assignments, and quizzes.

Emily, you were able to participate well in discussions on climate change and latitude and longitude. You showed you understood the material in your work. On navigation, with support and direct guidance on the steps you were able to locate destinations in London, navigate the London tube, use A to Z, and the Moscow subway using clues from colors and word shapes. Your verbal driving directions were clear and easy to understand. When in class, you were able to participate at times. Often at the beginning of the week you did more in-class work; toward the end of the week you often said you did not want to work. When you did work in class, you demonstrated concepts appropriately. When able to complete work in class you did your best (60% of assignments); work assigned for homework/student prep was generally not turned in. You were, however, able to submit 8 late assignments the last week. For quarter you turned in 27 of 37 (73%) of the work. You scored well on questions section of the midterm; you did not "want to/ know how" do the trip planning part of the test which was a quarter of the points. Participation was 50% this quarter.

Recommendations:
Meet with me prior to class to schedule breaks before work is started.
Practice note taking skills; do notes on a page (drawings in the margins as time permits)

**Health & Wellness** Grade **C** Teacher **Michelin Aboukasm**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | X | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | | X |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | X | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | | X | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

Students are introduced to the dimensions and interconnectedness of Health and Wellness. In this quarter students continued studying Anatomy and Physiology, explored the Health Systems and shared biology, and distinguished the purpose and interconnected functioning. We examined diverse personal stories from around the world; how individual lives, passions and goals are powered by the health systems that define our biology as a species. Students further explored and differentiated positive and negative influences and factors. Students were assessed on their fundamental understanding of the health systems, their health literacy, and skills behind making healthy choices. Students had the option of completing an extensive Midterm exam or develop and present an informative lecture on a Communicable Disease related to Sexual Health. Quarter assessment was based on classwork, homework, participation, and Quarter 1 Project.

Emily, you have completed the second quarter in Health and Wellness. This quarter, you did your best at managing your computer and earplugs from being a distraction; your effort and struggle was obvious. There was a slight increase with your performance on assignments and assessments. However, your responses continued to be rushed, suggesting that you did not check your work or use the lecture slides provided in Google Classroom to help you conclude your responses. Your attendance was consistent, but the distraction of your computer prevented your ability to use class time that was provided, to make-up outstanding assignments. Further, I did notice that you did not process all the revision feedback. Doing so would have elevated your grade and, will allow for corrections on any misconceptions you may have on the context. Acknowledging and accepting feedback is essential to academic growth. Lastly, it would behoove you to utilize the planner and Google Classroom to assist with staying on-top of your assignments and due-dates. As this quarter ends, it would benefit you to realize that you have plenty of potential to elevate your performance as a student. You have my support.

Recommendations:

Be receptive to feedback.
Utilize Study Center for assistance with assignment and project completion. Continue to build on your studentship.
Utilize Planner and Google Classroom to stay on top of assignments and due-dates. Utilize provided class time towards completing assignments
Increase participation

**Physical Education** Grade **A-** Teacher **Nick Alexandrakos**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | X | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | X | | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | X | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | X | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | X | | |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | X | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

This quarter students continued to develop skills necessary to self-assess and to create individual fitness programs. In evaluating personal strengths and weaknesses, students are encouraged to continuously set goals and then devise and adhere to a plan that will help them develop in the physical areas necessary to be healthy, active adolescents. Students engaged in both individual and group weight training programs designed to build muscular strength and cardio-vascular endurance. Additional activities not only tested physical endurance and skill, but also helped to develop a healthy sense of competition, partnership, and teamwork. Personal fitness goals have been assigned along with a variety of weekly challenges with an emphasis on safety and becoming familiar with various fitness exercises.

Emily - during the second quarter you were often active doing laps around the block or using the stationary bike. In addition to being very kind and personable, you have been quite instrumental in decorating the walls of the gym. Your character and artistic vision is appreciated in the gym. Your midterm numbers were admirable: 11 hand release push-ups, 90 second plank completed with three breaks, 16 bar pull ups, 52 step ups, 10 crunches, 21 cm stretching, and you completed the 500m row in 3:26. For the third quarter, I look forward to helping you set up and maintain an exercise routine that builds muscular strength and cardio-vascular endurance.

Recommendations

E-20

-Continue to challenge yourself responsibly
-Maintain an excellent level of participation, cooperation and competition

STEVENSON
ROBERT LOUIS STEVENSON SCHOOL

24 West 74th Street
New York, NY 10023
212-787-6400

March 23, 2022

**Educational Evaluation 2021/2022**
**Quarter 3**

Gary Apple
**Emily Apple**
243 E 81st
New York, NY 10028

Grade: 12
Advisor: Russell Kenner

**Advising** Grade **P** Teachers **Russell Kenner**
**Jacob Friedman**

| **Attendance** | Usually on time | Lateness/ Absences interfere with progress |
|---|---|---|
| Morning Check-In | X | |
| Mid-Morning Advising | X | |
| Afternoon Check-Out | X | |

| **Participation** | Exceeds Expectation | Meets Expectation | Needs improvement |
|---|---|---|---|
| Goal Setting | | | X |
| Group Discussion | | | X |
| Wednesday Sheets | | | X |

| **Social Skills** | Exceeds Expectation | Meets Expectation | Needs improvement |
|---|---|---|---|
| Interaction with other Students | | | X |
| Communication with Advisor | | | X |

| **Routines/Planning/Organization** | Demonstrates responsible use of Chromebook. | Needs reminders to use Chromebook responsibly. |
|---|---|---|
| Chromebook | | X |

| | Demonstrates responsible use of planbook. | Needs reminders to fill out planbook. |
|---|---|---|
| Planbook | X | |

| | Materials in binder are organized | Needs help organizing materials |
|---|---|---|
| Organization of Materials | | X |

Students meet with their advisors three times daily, both individually and in small groups. Morning check-ins are designed to help prepare students for the day and assess whether there are any issues that might impact their functioning that need to be addressed. Mid-morning advising time is structured to help students maintain organization, compose weekly goals, learn coping skills, and participate in group discussions. Each week, advisors meet individually with students to provide feedback about their academic and behavioral progress in each class. At check-out, advisors meet with students to review their planbooks and ensure that they have all materials necessary to complete homework. Additionally, advisors and students meet as needed to resolve any additional issues (eg., resolve conflicts with peers; request accommodations from teachers).

1. **Complete assignments and earn good grades** *Needs Improvement*
This quarter you passed all of your classes; however, you earned D grades in several classes due to many incomplete assignments and inconsistent habits of work when in class. In the future, spending an appropriate amount of time on assignments during the quarter will

make the end of the quarter more manageable and make discussions with teacher/dad much less stressful. You always have written assignments in your plan book--you should refer to it in the evenings for consistency.

2. **Improve diet** *Needs Improvement*
This is something that many people overlook when considering ways to improve their overall health and wellbeing. It is excellent that you recognize it as an area in which you can improve. I know that you consistently have a well-rounded breakfast, which is certainly a start. You made a point of saying that you wanted to become a better cook, yet when asked about progress you didn't want to discuss it. I strongly encourage you to spend time with others while they cook as a way to learn without having to deal directly with the fire until you feel more comfortable.

---

**Creative Writing** Grade **A** Teacher **Jake Appleman**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | X | | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | X | | | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | X | | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | X | | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | X | | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

During the third quarter of Creative Writing students inquired into the process of writing original content that best suited their skill sets while focusing on writing from the third person point of view. Students practiced the third person by writing mini stories that showed understanding of four different perspectives (third person singular, third person omniscient, third person objective, and third person multiple vision). Students also assessed hypothetical situations written by the author Chuck Klosterman before crafting their own hypothetical situations. As a culminating assignment for the quarter, students wrote and revised a five-page story written in the third person. Assessment was based on the written work (mini assignments, hypothetical situations, final story), oral participation (hypothetical situations), writing process, and classroom conduct.

Emily,

You reached new heights in Creative Writing in quarter three, highlighted by your Character Development assignment in which you

FILED: KINGS COUNTY CLERK 01/19/2023 02:22 PM
NYSCEF DOC. NO. 3
Case 1:23-cv-01303-BMC Document 1-2 Filed 02/17/23 Page 105 of 220 PageID #: 110
INDEX NO. 501944/2023
RECEIVED NYSCEF: 01/19/2023

developed four characters instead of one. Your mini stories for the types of third person narration often went well beyond the required length, showcasing your preternatural zeal for writing. You were off task from time to time, especially early in the quarter when we discussed hypothetical scenarios, but you worked diligently to turn things around. For your final story of the quarter you built on your Character Development with a voluminous narrative that showcased your affinity for plot and dialogue. Keep up the hard work in quarter four.

Recommendations:
--Incorporate feedback into revisions more frequently in the future
--Keep up the great work

**English- Senior Seminar** Grade **B** Teacher **Nick McKelvie**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | X | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | X | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | X | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | | X | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | X | | |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | | X | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | X | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

In Senior Seminar this third quarter, we focused on learning about different critical perspectives in literature. We began by exploring the fundamentals of analyzing art and media through discussing some short films and thought-provoking works of art. Students then learned about the main critical perspectives in literature, and they also learned about the Harlem Renaissance, which set the stage for our reading of the book "Passing". For the remainder of the quarter, we read and discussed Nella Larsen's "Passing", exploring issues of race and racism, class, and gender dynamics. Students showed their understanding of the book through class discussion, short written analyses, and several quizzes. To conclude, students have worked on writing an essay on "Passing" using a critical perspective of their choice, expressing both their understanding of the book and their skill in questioning and making inferences from a particular critical lens. Going forward, we will work to revise and edit these pieces of writing, and also begin working on the Senior Readiness project, which will serve as their capstone project for the year.

Emily, you've done a nice job of working with me this quarter to find ways for you to express your understanding and to exercise your

creativity. At the beginning of the quarter, you were very open to practicing some initial critical analysis skills when we explored some different pieces of art and media, and you even suggested a couple of short animated films for us to watch, which we then discussed in terms of their technical elements and themes. You were less open to learning about the main literary criticism perspectives, and chose not to practice and develop your note-taking skills. When we read Passing, we largely did so out loud in class, and then discussed as we went. While you sometimes listened, you were often distracted and did not participate in discussion, and your performance on the quiz on Part 1 of the book showed a lot of gaps in your understanding of the text. Because of this, we took a different approach for the rest of the book, and you took a short quiz after each chapter, using the book as a reference. This showed your strong reading skills and your ability to go back to the text to find details and evidence - you always got all the multiple choice questions correct using this method! When I included some short, open-response questions, however, you did not answer them, even though your performance suggested you could have done so. Nonetheless, by the end of the book, you showed a strong understanding of the plot, characters, and themes, and our study of the film adaptation also deepened your perspective. To conclude, we worked together to brainstorm a creative alternative to the critical response essay, and you worked to brainstorm a story of your own about a character "passing" for something they are not. You even created illustrations of this character, and you have started drafting the story, and it shows interesting thematic connections to Passing. Keep working with me to finish this story, and I look forward to seeing where you go with it!

Recommendations:

- Try out more open-response questions and tasks, because your work on multiple-choice questions shows your understanding!
- Keep being open to creative alternatives to assignments, and in the future, feel free to even suggest these alternatives yourself.

**US History 2: Modern American** Grade **C+** Teacher **Jacob Friedman**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | X | | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | X | |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | X | |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | X | | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | X | | |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | X | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

At the beginning of the quarter, students discussed slides and read sources on capitalism and communism, and then took part in a debate on whether the US should pursue a capitalist or communist direction. Next, students answered questions on slides relating to California and completed a packet on Japanese internment and McCarthyism. Finally, students answered questions on slides relating to East Asia and participated in a Socratic Seminar on the lessons that students should take from the Vietnam War. The main components of the course grade this quarter were the capitalism vs. communism debate, the internment and McCarthyism packet, the Socratic Seminar preparation, and the slides questions throughout the quarter.

Emily, you had another satisfactory quarter. You earned 88% on your section of the capitalism vs. communism debate, although the other side ultimately prevailed. You didn't submit the the California slides and earned an NA on the internment and McCarthyism packet. Finally, you earned 100% on the East Asia questions and 89% on the Socratic Seminar prep, and the contributions you made to the seminar itself were excellent. This quarter, your contributions to class discussion were thought-provoking and insightful, and you did especially well once you and your team arrived at the plan to either be on topic or be in the CC. I'm excited for Quarter 4!

Recommendations:
-Continue making thought-provoking contributions to class discussion.
-Complete all class work.

**Navigating the World through** Grade **D-** Teacher **Heidi Olson**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | | X |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | | X |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | | | X |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | | X | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | | X | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

The quarter focused on personal finance. Students created personal monthly expense budgets. We learned about cash alternatives such as Venmo, Paypal, Debit cards and ATMs/fees. Students learned that interest is the cost of using someone else's money. We dug deep into credit cards and the importance of managing fees, interest rate and on-time payments. Students compared credit card features to determine the best one for young people. They also learned that rolling a debt balance to a new card can cut total interest payments. Credit ratings scores can be built and maintained with consistent financial habits. The class mastered comparing fixed and variable mortgages with both 15 and 30 year terms. The culminating project was to find a job, salary, apartment, transportation within budget.

Emily, on the days you were engaged you grasped concepts such as interest charges and how they relate to credit cards and mortgages. You were able to understand that a borrower pays significantly more in interest on a 30 year mortgage because you hold the lender's money longer. You participated some in the discussion on credit card features. With breaks you were sometimes able to stay engaged. Often you elected to draw instead of do work. You completed almost half of the assignments this term. That said, you did not submit all the parts required for you to do the quarter project Job/Home/Transport.

I regularly write assignments in your planner; you continue to not complete this homework. This is a prime area for improvement.

Recommendation: Use full class time to complete assignments and turn them in. If an assignment is written in the planner - do it in student prep or study center that day.

---

**Health & Wellness** Grade **C-** Teacher **Michelin Aboukasm**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | | X |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | | | X |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | | X | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | X | | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

In Q3 Health and Wellness students explored the anatomy and physiology of The Reproductive System, Sexual Health and Sexuality. Students learned the functions of the reproductive parts, the process of fertilization, birth control methods, STI/STDs, consent, and the

biological and social constructs of Sexuality. Assessment was based on classwork, homework, participation, and the quarter project.

Emily, you have completed the third quarter in Health and Wellness. This quarter saw a slight increase with doing more assignments; however, your responses continued to be rushed, and many of the assignments were not complete. Time management is essential; I've attempted to work with you at having some form of balance with being productive in class and you watching your videos or work on your stories. Several of these attempts were not managed accordingly and you would lose class time to complete assignments or make necessary revisions in order to improve your grade. Your attendance was excellent, but the constant distraction of your computer prevented your ability to thoroughly learn the material. Your Gender Expression Collage demonstrated an understanding of the evolution of said topic; your photos and descriptions displayed the gradual change of cultural norms. Lastly, it would behoove you to review the planner and Google Classroom to assist with staying on-top of your assignments and due-dates. As this quarter ends, and the last one begins, it would benefit you to realize that you have plenty of potential to elevate your performance as a student. You have my support.

Recommendations:

- Utilize Study Center
- Increase Participation
- Continue to build on your studentship.
- Utilize Planner and Google Classroom to stay on top of assignments and due-dates.

**Physical Education** Grade **B** Teacher **Nick Alexandrakos**

| | Superior Achievement | Excellent Progress | Good Progress | Satisfactory Progress | Unsatisfactory Progress |
|---|---|---|---|---|---|
| Academic Progress | | | | X | |

| | Outstanding Participation | Good Participation | Adequate Participation | Participation needs improvement |
|---|---|---|---|---|
| Class Participation | | | | X |

| | Highly motivated | Adequate motivation and effort | More effort is needed |
|---|---|---|---|
| Motivation and Effort | | | X |

| | Excellent class projects/tests | Satisfactory class projects/tests | Uneven class projects/tests | Unsatisfactory class projects/tests |
|---|---|---|---|---|
| Class Projects/Tests | | | X | |

| | Assignments are complete | Assignments are late | Assignments are missing |
|---|---|---|---|
| Assignments | | | X |

| | Relating and working well with others | Improvement shown in work with others | Relating and working with others needs attention |
|---|---|---|---|
| Interaction with other Students | X | | |

| | Cooperative Behavior | Inconsistent Behavior | Frequently inattentive | Disruptive Behavior |
|---|---|---|---|---|
| Behavior Toward Class and Teacher | | X | | |

| | Excellent Attendance | Satisfactory Attendance | Absences interfere with progress | Too many absences to earn credit |
|---|---|---|---|---|
| Class Attendance | | X | | |

| | Usually on time | Lateness interferes with progress |
|---|---|---|
| Class Promptness | X | |

This quarter focused on why fitness is important, what an individual's exercise and activity needs are, and how to exercise safely. Students continued to self-assess and redesign their individual fitness programs. While participating in both individual and group weight training programs, students built muscular strength and increased their cardio-vascular fitness levels. These efforts were complemented with various activities that tested their physical endurance and skill. This was intended to support students in developing a strong sense of competition, partnership and teamwork. A variety of weekly challenges were assigned with an emphasis on safely becoming familiar with various fitness exercises. Class instruction was activity-based and designed to further develop students' interest in personal lifelong physical activity and fitness. Evaluations were based on participation, effort, peer-interaction and sportsmanship. An individual's level of fitness was not used as grading criteria for this course.

Emily, your commitment to obtaining the strongest grade possible in PE is evident. Often events prior to 3rd period provided a significant distraction for you during class. I enjoyed our conversations and as we prepare for Q4, lets rely on your Advisor and the counseling center to help improve your PE experience. You are a valued member of PE302 so I look forward to your increased participation as we enter the final quarter. You were actively engaged during Record Day and quite often you could not complete the full range of Record Day exercises. In Q4 lets focus on increasing efficiency and productivity during class. As for Records Day, here are your Q3 personal records:
10 hand release push ups
13 bar pull ups
plank: 2 breaks
3:07 500m row
For the final quarter I would like to see you begin every class with seven minutes of cardio exercises. By beginning to train as soon as we return to school you will surely be prepared for the mile run in June. I look forward to helping you challenge yourself responsibly in Q4.

Recommendations:
-Maintain an excellent level of participation, cooperation and competition.
-Continue to speak with the CC and your Advisor so we can improve your PE experience

F-1

## TUITION PAYMENTS

The tuition for Robert Louis Stevenson has been paid for Emily's Apple's placement 2020-2021, summer school (recommended as a necessity by the school) and the 2021-2022 school years.

Gary Apple

F-2

CHASE for BUSINESS

$15,000.00
Total

Jun 12, 2020
Post date

252
Check #

GARY L. APPLE
243 E 81ST ST., APT. 7A
NEW YORK, NY 10028-2644

1-2/210

252

DATE 6/10/20

PAY TO THE ORDER OF Robert Louis Stevenson School $ 15,000

Fifteen Thousand + 00/00 DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO Emily Apple - Deposit - Apr + Jun, Summer

⑆021000021⑆ 385733735⑈0252



©2022 JPMorgan Chase & Co.

F-3

# CHASE for BUSINESS

$15,000.00
Total

Jun 12, 2020
Post date

252
Check #


6/12/2020
ISN# 001063097203
Teller#

ENDORSE HERE
PAY TO THE ORDER OF HSBC
FOR DEPOSIT ONLY
ROBERT LOUIS STEVENSON SCHOOL
63100365
CHECK HERE AFTER REMOTE DEPOSIT
DATE
DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
* RESERVED FOR FINANCIAL INSTITUTION USE *

The security features listed below, as well as those not listed, exceed industry guidelines.
Security features: Results of document alteration:
Small type in line appears as dotted line when photocopied
Stains or spots may appear with chemical alteration
Absence of "Original Document" verbiage on back of check
FEDERAL RESERVE BOARD


©2022 JPMorgan Chase & Co.

# CHASE for BUSINESS

$40,000.00
Total

Sep 23, 2020
Post date

203
Check #



GARY L. APPLE
243 E 81ST ST., APT. 7A
NEW YORK, NY 10028-2644

1-2/210

203

DATE Sep 22 20

PAY TO THE ORDER OF Robert Louis Stevenson School $ 40,000

Forty-Thousand and 00/00 DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

4/20 - 10/20

MEMO For Emily Apple

⑆021000021⑆ 385733735⑈0203

7-5

CHASE for BUSINESS

| | | |
|---|---|---|
| $40,000.00 | Sep 23, 2020 | 203 |
| Total | Post date | Check # |



F-6

# CHASE for BUSINESS

$29,650.00
Total

Jun 15, 2021
Post date

1440
Check #

GARY APPLE

1-2/210

1440

DATE 6/8/21

PAY TO THE ORDER OF Rob't Louis Stevenson Schoo' $ 29,650 00/00

Twenty Nine Thousand Six Hunded Fifty DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO Emily Apple 2020-2021 Tuition

⑆021000021⑆ 381418870⑈1440

CHASE for BUSINESS

F-7

$29,650.00
Total

Jun 15, 2021
Post date

1440
Check #


ENDORSE HERE
PAY TO THE ORDER OF HSBC
FOR DEPOSIT ONLY
ROBERT LOUIS STEVENSON SCHOOL
CHECK HERE IF MOBILE OR REMOTE DEPOSIT
DATE
DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE *
6/15/2021
ISN# 005801034114
Teller#
The security features listed below, as well as those not listed, exceed industry guidelines.
Security Features: Results of document alteration:
MicroPrint Line • Small type in line appears as dotted line when photocopied
Chemically Sensitive Paper • Stains or spots may appear with chemical alteration
Security Screen • Absence of "Original Document" verbiage on back of check
* FEDERAL RESERVE BOARD OF GOVERNORS REG. CC

CHASE for BUSINESS

F-8

$7,720.00
Total

Jun 15, 2021
Post date

1441
Check #


1-2/210
1441
GARY APPLE
DATE 6/8/21
PAY TO THE ORDER OF Robert Lewis Stevenson School $ 7720 00/00
Seven Thousand Seven Hundred Twenty 00/00 DOLLARS
CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com
MEMO Emily Apple - Summer School
⑆021000021⑆ 381148870⑈ 1441

# CHASE for BUSINESS

F-9

$7,720.00
Total

Jun 15, 2021
Post date

1441
Check #


6/15/2021
ISN# 005801034115
Teller#

ENDORSE HERE
PAY TO THE ORDER OF HSBC
FOR DEPOSIT ONLY
ROBERT LOUIS STEVENSON SCHOOL
63100305
CHECK HERE AFTER MOBILE OR REMOTE DEPOSIT
DATE
DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE *

The security features listed below, as well as those not listed, exceed industry guidelines.
Security Features: Results of document alteration:
MicroPrint Line • Small type in line appears as dotted line when photocopied
Chemically Sensitive Paper • Stains or spots may appear with chemical alteration
Security Screen • Absence of "Original Document" verbiage on back of check
* FEDERAL RESERVE BOARD OF GOVERNORS REG. CC


©2022 JPMorgan Chase & Co.

# CHASE for BUSINESS

F-10

$27,000.00
Total

Feb 8, 2022
Post date

108
Check #


GARY L. APPLE
243 E 81ST ST., APT. 7A
NEW YORK, NY 10028-2644

1-2/210

108

DATE Feb 3 22

PAY TO THE ORDER OF Robert Louis Stevenson School $ 27,000

Twenty - Seven Thousand —— DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO Emily Apple Tuition

⑆021000021⑆ 385733735⑈0108

CHASE for BUSINESS

F-11

$27,000.00
Total

Feb 8, 2022
Post date

108
Check #


ROBERT LOUIS STEVENSON
SCHOOL
Account Number XXXXX0305
++For Mobile Deposit Only++
+++HSBC USA 021001088+++
PAY TO THE ORDER OF HSBC
FOR DEPOSIT ONLY
ROBERT LOUIS STEVENSON SCHOOL
631000305


©2022 JPMorgan Chase & Co.

F.12

# CHASE for BUSINESS

$23,000.00
Total

May 6, 2022
Post date

206
Check #


GARY L. APPLE
243 E 81ST ST., APT. 7A
NEW YORK, NY 10028-2644

1-2/210

206

DATE 5/1/22

PAY TO THE ORDER OF Robert Louis Stevenson School $ 23,000—

Twenty-Three Thousand + 00/00 — DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO Emily Apple Bal. of 2021-2022 Tuition

⑆021000021⑆ 385733735⑈0206

CHASE for BUSINESS

F-13

| $23,000.00 | May 6, 2022 | 206 |
|---|---|---|
| Total | Post date | Check # |




Morgan Chase Bank, N.A. Member FDIC ©2022 JPMorgan Chase & Co. Equal Opportunity Lender

Printed on: 3/19/2021

Department of Education

## SCHOOL LOCATION LETTER

**Date:** 03/19/2021

Dear Parent or Guardian of Emily Apple

**Date of Birth:** 03/21/2003 **Local ID:** 214371148

The services recommended on the Individualized Education Program developed at the IEP meeting held on 03/16/2021 will be provided at:

| | |
|---|---|
| School: | 02M655:Life Sciences Secondary School |
| Address: | 320 EAST 96 STREET MANHATTAN, NY 10128 |
| Telephone Number: | 212-348-1694 |

Please let us know that Emily Apple will be attending this school by contacting:

Name:Estelle Osofsky at Phone:12123428300.

Address: 388 WEST 125 STREET MANHATTAN NY 10027

You may visit the recommended placement site. Please contact the above person for assistance in arranging this visit.

G-2

ADVERTISEMENT
Tell us about this school in a 2-minute survey
×

New York › New York › New York City Geographic District # 2 › Life Sciences Secondary School

# Life Sciences Secondary School

320 East 96th Street, New York, NY 10128
Contact info
Website
3/10 GreatSchools Rating
12 reviews
Public school
427 Students
Grades 9-12 & Ungraded
Life Sciences Secondary School

- ACADEMICS
- Student Progress
- College Readiness
- College Success
- Advanced Courses
- Test Scores
- EQUITY
- Equity Overview
- Race/Ethnicity
- Low-Income Students
- Students With Disabilities
- ENVIRONMENT
- School Improvement
- Student Demographics
- Teachers & Staff
- From the School
- Reviews
- Neighborhood

Review
Updates
Compare
Updates
Compare
Saved

## 3/10 GreatSchools Summary Rating

| | | |
|---|---|---|
| 2/10 | Test Scores | below |
| 3/10 | Student Progress | |
| 3/10 | College Readiness | below |
| 2/10 | Equity | below |

Last updated: D

ADVERTISEMENT

ACADEMICS

## Student Progress

3/10

Students at this school are making **less** academic progress given where they were last year, compared to similar students in the state.

**Low progress with low test scores** means... that students are starting at a low point and falling farther behind their peers.

Parent tip

One key way the best schools help all students learn is by giving them voice and choice.

ACADEMICS

## College Readiness

3/10

This school is **below** the state average in key measures of college and career readiness.

(Remember: **high graduation rates don't mean much** if students are graduating without the coursework and test scores they need to suc

| | | |
|---|---|---|
| 4-year high school graduation rate | 79% | 83% |
| AP course participation | 22% | 21% |
| Percentage of students enrolled in Dual Enrollment classes grades 9-12 | <1% | 12% |

Show more

Parent Tip

The best high schools offer advanced courses to all students, not a select few.

ACADEMICS

## College Success

How do high schools help students succeed in college? Learn about the best practices of College Success Award winning schools.

| | | |
|---|---|---|
| Graduates pursuing other college programs | <1% | 1% |

G-4

| | | |
|---|---|---|
| Graduates pursuing 4-year college | <1% | 50% |
| Graduates pursuing 2-year college | <1% | 28% |

Parent Tip

Students who are unprepared for college-level work may find themselves in costly remedial classes and are more likely to drop out of college. Successful high schools help kids find their p and succeed after graduation.

ACADEMICS

## Advanced Courses

Rigorous courses can help students prepare for and get into college, including coursework in STEM subjects. Find out more.

| | | |
|---|---|---|
| Algebra 1 participation rate | <1% | 14% |
| AP math course participation | 4% | 4% |
| AP science course participation | 6% | 6% |
| Other AP course participation | 21% | 19% |

Parent Tip

Many successful high school students end up in remedial math courses in college. Is your student prepared for college-level math? Ask this school how they ensure that students are well pr

Notice something missing or confusing?

ACADEMICS

## Test Scores

2/10

Test scores at this school fall far below the state average. This suggests that students at this school are likely not performing at grade level.

| | | |
|---|---|---|
| Algebra I | 34% | 71% |
| Global History Transition | 35% | 62% |
| English | 76% | 84% |
| US History and Government | 49% | 77% |
| Living Environment | 50% | 73% |
| Global History & Geography II | 53% | 79% |
| Geometry | 21% | 70% |
| Earth Science | 16% | 69% |

Algebra II 46% 83%

Parent Tip

Test scores are important to look at because they indicate where students are performing compared to grade-level standards. Ask the school what it's doing to help students who are behind. Understand what on-track learning looks like, and explore higher-performing schools in your area to find the best opportunities for your child to succeed.

## Articles for you

7 min read

What you should consider when choosing a high school

5 min read

9 probing questions for a high school tour

4 min read

You should care (a lot) about a school's curriculum



ADVERTISEMENT

EQUITY

## Equity Overview

2/10 Underserved students at this school may be falling far behind other students in the state, and this school may have large achievement gaps.

**College Readiness**

| | |
|---|---|
| Low-income and underserved students | 23% |
| All other students | 78% |

**Test Scores**

| | |
|---|---|
| Low-income and underserved students | 14% |
| All other students | 24% |

Parent Tip

Does this school offer opportunity for all its students, or leave some behind? Successful schools understand how to close the achievement gap.

G6

EQUITY

## Race/Ethnicity

These 5 tips to start a conversation at your school about helping all students succeed.

| Student progress | College readiness | Advanced coursework | Test scores | Discipline & attenda |
|---|---|---|---|---|

These ratings reflect how much students at this school improved from one year to the next compared to similar students at other schools in the state. I helpful way to measure how well a school is helping kids learn and advance.

| | |
|---|---|
| All students | 3/10 |
| Hispanic (62% of students) | 3/10 |
| Black (25% of students) | 3/10 |

EQUITY

## Low-Income Students

How a school's approach to at-risk students affects your child.

| Student progress | College readiness | Test scores |
|---|---|---|

These ratings measure how much students from low-income households improved academically from one year to the next, compared to similar stude other schools in the state.

| | |
|---|---|
| All students | 3/10 |
| Low-income (79% of students) | 2/10 |

Notice something missing or confusing?

EQUITY

## Students With Disabilities

| Discipline & attendance | Test scores |
|---|---|

% suspended

% chronically absent

This shows the suspension rates for students with disabilities at this school compared to the state average. High suspension rates mean less time for t and learning.

G-7

| | | |
|---|---|---|
| All students | 2% | ▲ 3% |
| Students with disabilities | 2% | ▲ 6% |

Parent tip

Learn about your child's rights when it comes to school discipline.

## Weigh in

Help others and rate this school on how well it supports students with **learning differences**

Submit your own review

Notice something missing or confusing?

### School Board Finder

Learn more about how to get involved
Powered by XQ

### Homes Nearby

Homes for rent & sale near this school
from Movoto by OJO

ENVIRONMENT

## School Improvement

Schools that score well in the following areas are more likely to improve.

School-wide survey of teachers, students, & parents.

96% agree

**Strong Leaders**

Does the school have strong leadership and a clear vision?

96% agree

**Collaborative Teachers**

Do teachers work together to improve instruction?

91% agree

**Ambitious Instruction**

Are lessons well designed, challenging, and relevant?

91% agree

**Engaged Families**

G-8

Does the school involve families to improve the school?




**Safety & Culture**

Do students feel safe, nurtured, and challenged?




**Trust**

Are relationships at this school based on trust and respect?

ENVIRONMENT

## Student Demographics

Schools that create a positive culture help all students thrive. See how.

| | |
|---|---|
| Hispanic | 62% |
| Black | 25% |
| Asian or Pacific Islander | 7% |
| White | 4% |
| Two or more races | 1% |
| Native American | <1% |
| Native Hawaiian or Other Pacific Islander | <1% |
| Unspecified | 1% |




Students learning English




Students from low-income families




Gender
Female
Male

ENVIRONMENT

## Teachers & Staff

What makes a great teacher? The truth may surprise you.

Students per teacher Stat

Students per counselor State

% of teachers with 3 or more years experience Stat

Show more

Parent Tip

What's the most important thing to look for in the staff at a school?

ENVIRONMENT

## From the School

| Overview | Calendar |
|---|---|

**Do you work at this school?**

Claim this school to update information and let us know what makes your school special.

Claim this school

ADVERTISEMENT

3.4

12 Reviews

5 stars

4 stars

3 stars

2 stars

1 star

Write a Review

Current student
May 08, 2019
Ls3 is although a small high school but it comes with great opportunities. The school offers AP classes on top of the traditional course subjects such as AP Bio and AP Statistics. The great... More

4.0 ●●●●● Homework
5.0 ●●●●● Teachers
4.0 ●●●●● Character
4.0 ●●●●● Leadership
4.0 ●●●●● Learning Differences
4.0 ●●●●● Bullying

Helpful (0)

---

Current student
April 18, 2019
Ls3 is a school where you will find a variety of cultures. The school consists of friendly faces that are pretty welcoming for high school students. You will make friends with very int students... More

5.0 ●●●●● Homework
5.0 ●●●●● Teachers
5.0 ●●●●● Character
4.0 ●●●●● Leadership
4.0 ●●●●● Learning Differences
3.0 ●●●●● Bullying

Helpful (0)

---

Other (school staff, family member, recent alum, etc)
March 10, 2015
Trash school, the guidance counselor is horrible, her only concern is to paint the students in bad colors and make every little thing look like a major disruptive event, teachers are lazy keep... More

Helpful (0)

---

Other (school staff, family member, recent alum, etc)
July 08, 2014
This school is great. There are a handful of kids who need to get kicked out, but other than the that the school is fine. There are many clubs you can join, teachers give you one-on-or The... More

Helpful (0)

---

See All Reviews

## Neighborhood

320 East 96th Street New York, NY 10128
School leader: Ms Kimberly Swanson

(212) 348-1694
(212) 348-4293
School leader email
Facebook page
Website

School attendance zone

Nearby homes

G-11

Nearest high-performing

Nearby schools

8/10 [Success Academy Charter School-Harlem 3]
Public charter | K-10 & Ungraded | New York, NY
0.23 miles
Homes for sale

8/10 [Central Park East High School]
Public district | 9-12 | New York, NY
0.74 miles
Homes for sale



Membe

ADVERTISEMENT

H.-1

# FINDINGS OF FACTS & DECISION

| | |
|---|---|
| Case Number: | 178252 |
| NYS Identifier Number | N/A |
| Student's Name: | ["Confidential"] |
| Date of Birth: | March 21, 2003 |
| District: | 03 |
| Hearing Requested By: | Parent |
| Dates(s) of Hearing: | 12/21/18 |
| Actual Record Close Date: | 04/19/19 |
| Hearing Officer: | Edgar De Leon |

H-2

Case No. 178252

## NAMES AND TITLES OF PERSONS WHO APPEARED

| Name | Title | For | Date |
|---|---|---|---|
| Nessan O'Sullivan | DOE Representative | DOE | 12/21/18 |
| Ann Metroka | Special Ed. Teacher | DOE | 12/21/18 |
| Betsy Combier | Advocate | PARENT | 12/21/18 |
| Gary Apple | Father | PARENT | 12/21/18 |
| Lana Farina | Clinical Director | PARENT | 12/21/18 |

Case No. 178252

On October 3, 2018, I was appointed as the Impartial Hearing Officer ("IHO") to conduct a hearing pursuant to the Individual with Disabilities in Education Act ("IDEA"), 20 United States Code, Section 1415(f)(1) and Part 200 of the Regulations of the Commissioner of Education, concerning a dispute between the Parent of a (16) year old student attending a private school and the New York City Department of Education ("DOE") - District: 03, regarding the student's special education program. I was appointed after the recusal of at least one other IHO. After adjournments were granted on consent of the parties or for cause, the impartial hearing was held on December 21, 2018 A list of the witnesses who appeared and the documents taken into evidence is annexed to this decision.

## BACKGROUND

The Parent in this case alleges that the student was denied a "free and a appropriate public education" ("FAPE") for the 2018-2019 extended school year. At the impartial hearing, the Parent seeks the following relief: Tuition reimbursement and/or direct payment for the student's July 2018 Summer Session at the private school ($6,950) and tuition reimbursement and/or direct payment for the student's 2018-2019 academic year at the private school ($69,500), totaling: $76,450.

## THE DOE'S CASE

The DOE concedes that an IEP and an offer of FAPE was not made for the 2018-2019 school year. (T-20) However, the DOE argues that the Parent failed to cooperate with the agency and frustrated its efforts to provide FAPE for the "10-month" student. (T-21)

The DOE called (1) witness to testify on its behalf and submitted (8) documents in evidence. In sum, substance and relevant part, the testimony on behalf of the DOE is as follows:

The DOE's only witness works at the CSE 10 as an assigned teacher. (T-32-3) She testified that the original IEP meeting date was in March of 2018. (T-34) She does not know who sent the assessment letter to the Parent but it did not come out of her unit. (T-34 & D-2) She called the private school to obtain progress reports and called the Parent to schedule the March 5th meeting at 1:15 pm. (T-38) The student's mother asked her for the meeting to be re-scheduled for mid-April on a Friday. (T-39) At that point, the Parent did not have an advocate. (T-40) She only became aware that the Parent had an advocate on April 13th, the same day the meeting was scheduled to occur. (T-41) Subsequently, she spoke with the advocate and understood that the Parent no longer wanted the services, which the student's father also stated. (T-42) After that, the advocate changed her position and asked for an IEP in late May and from that point, the DOE had (60) days to produce the document. (T-46)

During cross examination, the witness testified that the student's mother stated she had a private evaluation done on March 5th that she would share with the DOE. (T-48-9) The day before the April meeting, the student's father contacted her and told her that the student was attending a private school and did not see the need for a CSE meeting. (T-56) The father subsequently sent the same message in an email that he copied the advocate on. (T-57-8) The father did not tell her that he had gotten a private evaluation. (Id.) However, she eventually received the private evaluation that came with a request for a meeting which she did nothing about because it was addressed to

H-5

the Chairperson who would handle it. (T-59) She did not contact the advocate because they work directly with the Parents, unless the Parent indicates that she is to call the advocate and she received no indication from the Parent that she would be working with the advocate. (T-60) She received the Parent's email on April 18th. (T-62) The next email she received from the advocate was on the 18th later in the day, in which the advocate stated that they would not be using the DOE special education services and did not understand why they must attend an IEP meeting. (T-63)

The witness further testified that she learned of the student's mother's brain aneurysm in April. (T-67) There is an entry from "Maurice Collins" on July 17, 2018 that indicates the student's mother wants an IEP and is following up, but she does not know what happened after that entry was made. (T-79-80)

There was no substantive testimony developed during the witness' re-direct examination and there was no re-cross examination of the witness. (T-82-4)

THE PARENT'S CASE

The Parent argues that the student was failing in public school and was pulling her hair and showing other anxious disorders. (T-22-3) The Parent concedes that the DOE sent notice of an IEP meeting to the student's mother but did not notify the student's father and her advocate, of whom the agency was aware. (T-28-9)

The Parent called (2) witness and submitted (5) documents in evidence. In sum, substance and relevant part, the testimony on behalf of the Parent is as follows:

The Parent's first witness has a PhD in psychology who is licensed in New York State and is the Clinical Director of the private school. (T-87-8) She testified that she met the student in November of 2017 during the admissions process. (T-90-1) They

reviewed the student's psychoeducational or neuropsychological evaluation and an updated letter from her psychiatrist. (T-91) The student's grades for the 1st quarter of the 9th grade in the 2017-2018 school year shows (6) classes, (5) of which she received an "F" failing grade and in(1) she received a "C." (T-92-3 & P-D) The student's evaluation indicated that the student had "trichotillomania" where she would pull out and ingest her hair and has ADHD, with difficulties in executive functioning and tremendous social difficulties. (Id.) The student also had a history of being bullied and was perceived as oppositional and defiant. (Id.)

The witness testified that the student was previously in an ICT class. (T-98) In her opinion, a 12:1 class would still be too large for the student. (T-101) At the private school, the student is in a class with (5) to (10) students with (1) teacher. (T-102-3) The private school teachers are also advisors taught in ways to engage complex students. (T-103-4) The private school uses "dialectic behavior treatment" ("DBT") which is an evidence-based treatment that is geared towards students with complex issues. (T-108) The private school does not accept students with considerable behavior problems because they are a school for internalizing issues like anxiety, depression and ADHD. (T-110) There are (75) students at the private school and all have special needs. (Id.) The student has perfect attendance at the private school. (T-111)

The witness further testified that the student is making progress with making eye contact and is feeling more comfortable at the private school. (T-112) The student's grades have not been consistent and she continues to require step-by-step instruction to transition. (T-113-6) The private school is a small, specialized, therapeutic college-

prep program that offers on-demand clinical support. (T-118) The private school's learning specialist can either "push-in" or "pull out" and provides on-going support to every teacher. (T-118-9) The student spends one full period every day with the learning specialist. (Id.)

On cross examination, the witness testified that the student is taking a photography class because she requested it. (T-123-4) The work with the learning specialist in the learning center does include a lot of focus on math, but she's available to work on any subject needed with the student. (T-125)

There was no substantive testimony developed during the witness' re-direct examination and there was no re-cross examination of the witness. (T-128-31)

The second and final witness for the Parent is the student's father. (T-132) He testified that he is divorced from the student's mother for about 12 years. (T-133) At the public school the student was failing everything. (T-135-6) Since the divorce their children were pretty evenly split between him and the student's mother but since the aneurysm, they are with him (100) percent of the time. (T-140) The mother' aneurysm occurred March of this year. (Id.) He does not know if the DOE had him listed as a contact person and did not have to interact with the DOE much at all, as they were having a private evaluation, and had retained an advocate. (Id.) In the past he had been contacted by the DOE and he did not tell the agency about the student's mother's aneurysm. (T-141)

During cross examination, the witness testified that he did not recall sending an email on April 13th that said "Please cancel tomorrow's IEP meeting. Since [student's

name] is in private school that is directly addressing her needs, the evaluation does not seem necessary at this moment." (T-154-5 & D-8)

There was no substantive testimony developed during the witness' re-direct examination and there was no re-cross examination of the witness. (T-155-6)

FINDINGS OF FACTS & DECISION

IDEA ensures that students with disabilities are afforded a free and appropriate public education ("FAPE"). (20 U.S.C. § 1400 & Schaffer v. Weast, 126 S.Ct. 528 [2005]) A FAPE includes special education and related services designed to meet the student's unique needs, provided in conformity with a comprehensive written IEP. (20 U.S.C. 1401(8) & 141(d) and 34 C.F.R. § 300.13) The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief. (Schaffer, 126 S.Ct. 528, 537)

The DOE may be required to reimburse Parents for their expenditures for private educational services obtained for a student, if the services offered by the DOE were inadequate or inappropriate, the services selected by the Parents are appropriate and equitable considerations support the parent's claim. (Sch. Comm. Of Burlington v. Dept. of Educ., 471 U.S. 359 (1985), Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993), Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2nd Cir. 2005])

The first step is to determine whether the DOE offered to provide the student a FAPE. (Mrs. C. v. Voluntown, 226 F.3d 60, 66 [2nd Cir. 2000]) A FAPE is offered to a student when (a) the DOE complies with procedural requirements set forth in IDEA and (b) the IEP developed by the CSE through the procedures set forth in IDEA, is reasonably calculated to enable the student to receive educational benefits. (Bd. Of

H-9

Educ. V. Rowley, 458 U.S. 176, 206-7 [1982]) The student's recommended program must also be provided in the least restrictive environment ("LRE"). (20 U.S.C. § 1412(a)(5)(A), 34 C.F.R. § 300.550(b), 8 NYCRR §200.6(a)[1])

The Parent bears the burden of showing that the private school placement selected is appropriate. (SRO Nos.: 95-57, 94-29 & 93-34) The Parents must show that the private school placement offers an educational program that meets the student's special education needs. (Burlington, 471 U.S. at 370 & SRO No. 94-20) The private school need not be approved by the state educational agency to provide instruction to children with disabilities. (Florence County School District Four et. al. v. Carter, 510 U.S. 7 [1993]). It is also not required that the private school employ certified special education teachers or have its own IEP for the student. (SRO No. 94-20)

Finally, the IHO must consider whether equitable considerations favor the Parents' request for tuition reimbursement. State Review Officer ("SRO") Decision 06-004 holds:

> Equitable considerations are relevant to fashioning relief under the IDEA (Burlington, 471 U.S. at 374; M. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 68 [2d Cir. 2000]; see Carter, 510 U.S. at 16 ["Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required"]). Such considerations "include the parties' compliance or noncompliance with state and federal regulations pending review, the reasonableness of the parties' positions, and like matters" (Wolfe v. Taconic Hills Cent. Sch. Dist., 167 F. Supp. 2d 530, 533 [N.D.N.Y. 2001], citing Town of Burlington v. Dep't of Educ., 736 F.2d at 773, 801-02 [1st Cir. 1984], aff'd, 471 U.S. 359 [1985]). With respect to equitable considerations, a parent may be denied tuition reimbursement upon a finding of a failure to cooperate with the CSE in the development of an IEP or if the parent's conduct precluded the CSE's ability to develop an appropriate IEP (Warren G. v. Cumberland Co. Sch. Dist., 190 F.3d 80, 86 [3rd Cir. 1999]; see Application of the Bd. of Educ., Appeal No. 04-102; Application of the Bd. of Educ., Appeal No. 04-026). In the absence of evidence demonstrating that petitioners failed to cooperate in the development of the IEP or otherwise engaged in conduct that precluded the development of an appropriate IEP, or failed to give proper notice,

H-10

equitable considerations generally support a claim of tuition reimbursement. (Application of a Child with a Disability, Appeal No. 04-049).

In Burlington, the Court found that Congress intended retroactive reimbursement to Parents by school officials as an available remedy in a proper case under the IDEA. (Burlington, 471 U.S. at 370-71, Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 111 [2d Cir. 2007] and Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186 at 192 [2d Cir. 2005]) "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it offered the student a FAPE. (Burlington, 471 U.S. at 370-71, 20 U.S.C. § 1412[a][10][C][ii] and 34 C.F.R. § 300.148)

Here, the DOE concedes that an IEP and an offer of FAPE was not made for the 2018-2019 school year. (T-20) Regardless of the Parent's initial refusal to participate in an IEP meeting, the DOE witness conceded that the advocate changed her position and asked for an IEP in late May of 2018 and from that point, the DOE had (60) days to produce the document. (T-46) That gave the agency plenty of time to produce an IEP for the student before the start of the 2018-2019 school year. The agency failed to do so. The DOE teacher testified that she did not contact the advocate because they work directly with the Parents, unless the Parent indicates that she is to call the advocate and she received no indication from the Parent that she would be working with the advocate. (T-60) It is evident that the Parent and advocate equivocated in their rejection and then request for an IEP meeting, but that does not excuse the agency's failure to honor and pursue the advocates' subsequent request for an IEP meeting. (Supra) Accordingly, I

find that the DOE did deny the student a FAPE and that equitable considerations do not bar an award of tuition reimbursement to the Parent.

A private school placement must be "proper under the Act." (See Carter, 510 U.S. at 12, 15 and Burlington, 471 U.S. at 370), i.e., the private school offered an educational program which met the student's special education needs. (See Gagliardo, 489 F.3d at 112, 115; Walczak, 142 F.3d at 129 and Matrejek, 471 F. Supp. 2d at 419) A parent's failure to select a program approved by the State in favor of an unapproved option is not itself a bar to reimbursement. (See Carter, 510 U.S. at 14) The private school need not employ certified special education teachers or have its own IEP for the student. (See Carter, 510 U.S. 7; SRO No. 08-085; 08-025; 08-016; 07-097; 07-038; 02-014 and 01-105) Parents also need not show that the placement provides every special service necessary to maximize the student's potential. (See Frank G., 459 F.3d at 364-65) When determining whether the parents' unilateral placement is appropriate, "[u]ltimately, the issue turns on" whether that placement is "reasonably calculated to enable the child to receive educational benefits." (See Frank G., 459 F.3d at 364; see Gagliardo, 489 F.3d at 115 [citing Berger v. Medina City Sch. Dist., 348 F.3d 513, 522 [6th Cir. 2003] [stating "evidence of academic progress at a private school does not itself establish that the private placement offers adequate and appropriate education under the IDEA"]])

The witness the psychologist who testified for the Parent said that the student was previously in an ICT class but at the private school, the student is in a class with (5) to (10) students with (1) teacher. (T-98 & 102-3) The private school teachers are advisors taught in ways to engage complex students and uses “dialectic behavior

treatment" ("DBT") which is an evidence-based treatment that is geared towards students with complex issues. (T-103-4 & 108) There are (75) students at the private school, all with special needs and the student has perfect attendance. (T-111) The student is making progress at the private school with making eye contact and is feeling more comfortable at the private school although her grades have not been consistent and she continues to require step-by-step instruction to transition. (T-112-6) Nevertheless, the private school is a small, specialized, therapeutic college-prep program that offers on-demand clinical support and its learning specialist can either "push-in" or "pull out" and provides on-going support to every teacher. (T-118-9) The student spends one full period every day with the learning specialist. (Id.) In my opinion, the private school is "reasonably calculated to enable the child to receive educational benefits." (See Frank G., Gagliardo & Berger, supra)

For all of the reasons stated herein, I find that the Burlington/Carter test is satisfied in favor of the Parent and that they have met their burden under Schaffer to prevail in their request for tuition reimbursement.

**NOW therefore**, it is hereby

**ORDERED** that upon reasonably satisfactory proof of services having been rendered, the DOE shall either reimburse the Parent or directly pay the cost of the student's tuition at the private school for the 2018-2019 school year as follows: July 2018 Summer Session at the private school ($6,950) and tuition reimbursement and/or direct payment for the student's 2018-2019 academic year at the private school ($69,500), totaling: $76,450; and it is further

H-13

**ORDERED** that the CSE shall forthwith reconvene to produce a new IEP for the student that considers all of the student's available evaluations and any related services that he should receive for the 2019-2020 school year.

DATED: April 30, 2018
New York, New York

Edgar De Leon mw
Edgar De Leon - I.H.O.

**PLEASE TAKE NOTICE**

**The parent and/or the New York City Department of Education has a right to obtain a review of this decision by a State Review Officer of the New York State Education Department under Part 200.5(k) of the Regulations of the Commissioner of Education, Section 4404 of the Education Law, and the Individuals with Disabilities Education Act. Directions and forms can be found on the Office of State Review website: http://www.sro.nysed.gov/RevisedRegulationsOverview.html**

H-14

Case No. 178252

DOCUMENTATION ENTERED INTO RECORD

| Number/Letter | Title | Dated | For | # of Pages |
|---|---|---|---|---|
| 01 | DPC | 10/01/18 | DOE | 04 |
| 02 | 10-Day Notice | 11/21/17 | DOE | 01 |
| 03 | Assessment Planning | 01/19/18 | DOE | 01 |
| 04 | Meeting Notice | 02/02/18 | DOE | 03 |
| 05 | Meeting Notice | 03/06/18 | DOE | 03 |
| 06 | Assessment Planning | 04/03/18 | DOE | 01 |
| 07 | Case Closing Form | 04/19/18 | DOE | 02 |
| 08 | SESIS Event Log | 12/14/18 | DOE | 05 |
| | | | | |
| A | *Withdrawn / Not Received* | N/A | PARENT | N/A |
| B | School Contract | 11/2018 | PARENT | 07 |
| C | 1st Qtr. Assessment | 11/2018 | PARENT | 06 |
| D-E | *Withdrawn / Not Received* | N/A | PARENT | N/A |
| F | Lenox Hill Hospital | 11/03/17 | PARENT | 02 |
| G | Lenox Hill Hospital | 11/01/17 | PARENT | 02 |
| H | Psychoeducational Evaluation | 05/10/18 | PARENT | 19 |
| I-K | *Withdrawn / Not Received* | N/A | PARENT | N/A |
| | | | | |
| N/A | N/A | N/A | IHO | N/A |

# EXHIBIT "C"

FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Student Name: | Emily Apple<br>("Student") |
| Parent Name: | Gary Apple<br>("Parent") |
| Case Number: | 220018 |
| Birthdate: | 3-21-03 |
| District: | 03 |
| Hearing Requested By: | Family |
| Date of Request: | 10-21-21 |
| Date(s) of Hearing: | 7-7-22; 7-20-22 |
| Actual Record Closed Date: | 7-25-22 |
| Date of Decision: | 7-26-22 |
| Hearing Officer: | Steven P. Forbes |
| Appearing for the Parent: | Betsy Combier<br>Parent Advocate |
| Appearing for the District: | Nessan O'Sullivan<br>District Representative |

STATE EDUCATION DEPARTMENT OF NEW YORK

____________________________________________X

In the Matter of a Complaint Pursuant to Part 200 of the Regulations of the Commissioner of Education Regarding,

Case No.: 220018

STUDENT[1], a minor, by and through his/her Parent(s),

Petitioners

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Respondent.

____________________________________________X

FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION

## INTRODUCTION AND PROCEDURAL BACKGROUND

This matter came before the hearing officer by way of a due process complaint filed by the Parent on October 21, 2021. No written response was provided by the Respondent, the New York City Department of Education (hereinafter "DOE", "District" or "Respondent"). A hearing was held in this matter on July 7, 2022, and July 20, 2022. It was a closed hearing and the Petitioners were represented by Betsy Comber, Parent Advocate. Respondent was represented by Nessan O'Sullivan, District Representative. The record was closed on July 25, 2022.

In the due process complaint, the Parent requested tuition reimbursement for a unilateral placement at The Robert Louis Stevenson School ("RLS") covering the 2020-2021 and 2021-2022 school years.

[1] Personally, identifiable information is attached as a cover sheet to this decision and must be removed prior to public distribution.

JURISDICTION

The due process hearing was held, and a decision in this matter is being rendered pursuant to the Individuals with Disabilities Education Act (hereinafter "IDEA"), 20 U.S.C. § 1400 *et seq.*, and the New York State Education LAW, Educ. LAW Art. 89 § 4404 *et seq.*, and its implementing regulations, 8 N.Y.C.R.R. § Part 200.

BACKGROUND

Student is a nineteen-year-old child mandated for a 12-month school year who is classified as a student with a Learning Disability. The circumstances which gave rise to the current due process complaint involved the alleged failure of the CSE to review the Student's current IEP, the CSE's failure to request any updated evaluations for the Student and the CSE's failure to recommend an appropriate program for the Student for the 2020-2021 and 2021-2022 school years.

ISSUES

1) Whether Student was denied a FAPE for the 2020-2021 and 2021-2022 school years by the failure of the CSE to request updated evaluations for the Student, by failing to develop an appropriate IEP for the Student for the 2020-2021 and 2021-2022 school years and/or by failing to recommend or provide Student an appropriate placement.
2) Whether the Parent's unilateral placement(s) of the Student for the 2020-2021 and 2021-2022 school years was appropriate to the Student's needs.
3) Whether the equities favor reimbursement.

Parent requests relief in the form of an order directing the District to fund the tuition at RLS for the 2020-2021 and 2021-2022 school years.

EVIDENCE SUBMITTED AT HEARINGS

A. DISTRICT'S CASE

The District introduced no exhibits.

B. PARENT'S CASE

The Parent introduced eight (8) exhibits into evidence which included the following:

P-A: DPC

P-B: Summer School Record - 2020

P-C: Summer School Record - 2021

P-D: School Records – 20-21

P-E: School Records – 21-22

P-F: Parent Payments

P-G: School Location Letter

P-H: FOFD

WITNESSES

The District presented no witnesses.

The Parent presented two witnesses, Lara Farina, Psy.D., Clinical Director of RLS and the Parent. The District did was given an opportunity to cross-examine the witnesses.

FINDINGS OF FACT

After considering all of the evidence, as well as arguments of both sides, this Hearing Officers Findings of Fact are as follows:

1) The Student was an seventeen-year-old child entering the 2020-2021 school year.[2]
2) On July 7, 2022, the District failed to appear at the hearing of this matter and, as a result, failed to present a Prong I case. At no point either before or after that appearance, did the District attempt to contact the IHO to indicate that they were seeking an adjournment or that they intended to present a Prong I case. Having failed to do so, I am constrained to find that the District has conceded that it did not conduct an appropriate review, that it failed to conduct relevant evaluations, failed to develop an appropriate IEP, and/or did not offer the Student an appropriate placement for the 2020-2021 and 2021-2022 school years. As a result, there is no question that the Student was denied a FAPE for the 2020-2021 and 2021-2022 school years.
3) During the 2020-2021 and 2021-2022 academic school years, Student attended RLS.[3]
4) For the 2020-2021 and 2021-2022 school years, the Parent submitted copies of the Student's progress reports.[4] Those progress reports set forth in extensive detail the Student's progress, both academically and otherwise, and reflected that the

[2] P-A.
[3] P-B; P-C; P-D; P-E
[4] Id.

Student did well at RLS.[5] In addition, the testimony of the school representative and the Parent also reflected that the Student made progress at RLS.[6] The Parent, who also testified at the hearing, was effusive in his praise for RLS and felt that the Student made extraordinary progress at RLS during both school years.[7]

5) The Parent also submitted documentation which amply demonstrated that RLS was an appropriate placement for the Student.[8] In addition, the testimony of the school representative set forth the various ways in which RLS had created a program which was specifically tailored to address the Student's unique needs.[9] As a result, there was no evidence presented, or argument offered, that RLS was anything other than an appropriate school for the Student.

6) For the 2020-2021 school year, the Parent provided documentation that verified that the Parent was contractually obligated to pay the tuition at RLS which totaled eighty-one thousand nine hundred fifty ($81,950.00).[10]

7) For the 2021-2022 school year, the Parent provided documentation that verified that the Parent was contractually obligated to pay the tuition at RLS with totaled eighty-four thousand nine hundred twenty dollars ($84,920.00).[11]

---

[5] Id.
[6] T., pages 56-70.
[7] T., pages 70-75.
[8] P-B; P-C; P-D; P-E.
[9] T., pages 56-70.
[10] P-D.
[11] P-E.

8) RLS was an appropriate placement for Student for the 2020-2021 and 2021-2022 school years. The small class sizes allowed the Student to get more individualized attention and support from her teachers.[12] In addition, all of the Student's related services were received at RLS.[13] In addition, Student had access to numerous individual and small group sessions where she received additional support from teachers within the school.[14]

## CONCLUSIONS OF LAW AND DISCUSSION

### Denial of FAPE

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." *Bd. Of Educ. V. Rowley*, 458 U.S. 176, 179-91 (1982). Implicit in the congressional purpose of providing access to a free and appropriate public education (hereinafter "FAPE") is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicap child. (*Id.)*

Pursuant to 20 U.S.C. §1401(9) and 34 C.F.R. §300.17 FAPE is defined as follows:

> Special Education and related services that are provided at public expense under public supervision and direction and without charge; meet the standards of the SEA… include an appropriate preschool, elementary school, or secondary school education in the State involved; and are provided in conformity with the individualized education program (IEP).

[12] T., pages 56-70.
[13] Id.
[14] Id.

In deciding whether the Respondent provided a student with a FAPE, the inquiry is typically: (1) whether the Respondent complied with the procedures set forth in IDEA; and (2) whether the student's IEP is reasonably calculated to enable the student to receive educational benefit *(Rowley, supra.)*. Under the second prong, a school district need not maximize the potential of child but must open the door of public education in a meaningful way, and the IEP must provide the opportunity for more than only a "trivial advancement" *P. v. Newington Bd. Of Educ.*, 546 F.3d. 111 (2nd Cir. 2008).

The IEP is "the centerpiece of the statute's education delivery system for disabled children" *Honig v. Doe*, 484 U.S. 305, 311 (1988). An appropriate educational program begins with an IEP that accurately reflects the results of evaluations to identify the student's needs, establishes annual goals related to those needs, and provides appropriate specialized instruction and related services. See 34 C.F.R. §300.320 (a). For an IEP to be "reasonably calculated to enable the child to receive educational benefits," it must be "likely to produce progress, not regression" *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 130 (2d Cir. 1998).

Additionally, each public agency must ensure that, as soon as possible following the development of an IEP, special education and related services are made available to the child in accordance with the child's IEP. In order to implement the IEP, a team that includes the child's parents determines where the child should be placed based on the child's IEP. Thus, the placement should not dictate the IEP but rather the IEP determines whether a placement is appropriate. *Rourke v. District of Columbia*, 460 F.Supp.2d 32, 44 (D.D.C. 2006).

The DOE must ensure that the IEP team reviews a student's IEP periodically, but not less than annually, to determine whether the annual goals for the child are being achieved. Moreover, the DOE must ensure that the IEP team revises the IEP, as appropriate, to address any lack of expected progress toward the annual goals; and the results of any reevaluation or information about the child provided to, or by, the parents. Additionally, if the parent obtains an independent educational evaluation ("IEE") at public expense, or shares with the public agency an evaluation obtained at private expense, the school district must consider the results of the evaluation, if it meets agency criteria, in any decision made with respect to the provision of FAPE to the child. The IDEA mandates that an IEP be based on the results of the most recent evaluation of a student.

In determining the appropriate placement for a child, preference is given to the least restrictive environment and the appropriate schools nearest the child's home (Id.). The IDEA requires that unless the IEP of a child with a disability requires some other arrangement, the child is to be educated in the school that he or she would attend if the student was otherwise not disabled. In selecting the least restrictive environment, consideration is given to any potential harmful effect on the child or on the quality of the services that he or she needs. A child with a disability is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general education curriculum. See 34 C.F.R. § 300.116.

When developing the IEP, the District will have evaluations of the child, as a procedural safeguard the parents are entitled, as a matter of Law, an independent education evaluation (IEE) at public expense. 34 CFR § 300.502

Where a school system fails to provide special education or related services to a student with a disability, the student is entitled to compensatory education, "i.e., replacement of educational services the child should have received in the first place." *Reid v. District of Columbia*, 401 F.3d 516 (D.C. Cir. 2005). An award of compensatory education "should aim to place the disabled children in the same position they would have occupied but for the school district's violations of IDEA" (Id.). Compensatory education is a remedy for "past deficiencies" therefore a finding as to whether a student was "denied a FAPE in the relevant time period is a necessary prerequisite to a compensatory education award." *Peak v. District of Columbia*, 526 F. Supp. 2d 32 (D.C. Cir. 2007).

Pursuant to New York Education LAW § 4401(c)(1) the DOE shall have the burden of proof, the burden of persuasion, and the burden of production in impartial hearings except for instances where the parent is seeking tuition reimbursement for a unilateral parental placement and in those cases the parent shall have the burden of persuasion and the burden of production as to the appropriateness of the placement. The burden of proof in matters such as this shall only be met upon a fair preponderance of the evidence. The preponderance of the evidence standard requires that the trier of fact to find that the existence of a fact is more probable than its nonexistence. *Concrete Pipe & Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 622 (1993).

Unlike other standards of proof, the preponderance-of-evidence standard allows both parties to share the risk of error in a roughly equal fashion, except that when the evidence is evenly balanced, the party with the burden of persuasion must lose. *Director, Office of Worker's Compensation Programs v. Greenwich Collieries*, 512 U.S. 267, 281 (1994).

In the instant matter, the Respondent presented no evidence whatsoever that indicated that it had provided Student with a FAPE for the 2020-2021 and 2021-2022 school years. Moreover, the evidence is quite clear that Respondent failed to make a recommendation for an appropriate program for Student for either the 2020-2021 or 2021-2022 school year. As a result, there can be little question that the Student was denied a FAPE for the 2020-2021 and 2021-2022 school years.

Moreover, in assessing the propriety of the family's effort to rectify the district's failing, the decision-maker must take into account the limited range of options available to the family, the degree to which they possessed technical/professional educational expertise, the urgency of the placement timetable, and their natural desire to maximize the student's potential. The family is under no obligation to seek out a program that skirts just barely above the *Endrew* minimum, and the district that comes to the table with unclean hands is not in a strong position to argue that, notwithstanding its own derogation of duty, the family should be barred from seeking to remedy the deprivation of FAPE because the program they initiated was *too* good. One of the fundamental tenets of equity jurisdiction is that 'he that hath committed iniquity shall not have equity.'

Reimbursement for Unilateral Placement

A court or a hearing officer may order a district to reimburse the parents of a student with a disability for the student's unilateral private placement if the district failed to make a FAPE available in a timely manner and the unilateral private placement is appropriate, 34 CFR 300, 148 (c); *Florence County Sch. Dist. Four v. Carter*, 20 IDELR 532 (US 1993). Parents seeking tuition reimbursement as a remedy cannot simply speculate that the assigned school will fail to provide one or more services the student needs to receive FAPE; they must show that the school is not capable of implementing the student's IEP, *M.O. and G.O. v. New York City Department of Education*, 65 IDELR 283 (2nd Cir. 2015); *Y.F. v. New York City Dep't of Educ.*, 68 IDELR 92 (2d Cir. 2016, unpublished).

It is true that a unilateral private placement does not need to meet state standards for public education programs to be "appropriate" for reimbursement services, 34 CFR 200.148 (c). However, a unilateral private placement is appropriate for reimbursement purposes if it offers instruction that is specially designed to meet the student's unique needs as well as the support services the student requires to benefit from that instruction, *M.N. v. State of Hawaii, Dep't of Educ.*, 60 IELR 181 (9th ir. 2013, unpublished); *Ward v. Board of Education of the Enlarged City Sch. Dist. Of Middletown, NY* , 63 IDELR 121 (2d Cir. 2014, unpublished).

In the instant matter, the District did not challenge the appropriateness of the unilateral placement. Moreover, there was a clear demonstration that the unilateral placement chosen by the Parent was appropriate. Specifically, the evidence demonstrated that RLS engaged Student in classes, programs and related services which were specifically

tailored to address Student's needs and challenges. Student was provided with numerous accommodations and afforded the opportunity to engage in both individual and small group instruction, and related services providers that collaborated with her classroom teacher. Over the course of the 2020-2021 and 2021-2022 school years, Student demonstrated consistent progress across a broad array of subjects and areas of disability and continued to show marked personal growth.

It is for this reason that I find that the District is directed to fund the cost of the Student's 2020-2021 and 2021-2022 placement at RLS in the amount of $166,870.00.

Equities

Pursuant to 20 U.S.C.A. § 1412(a)(10)(C)(iii), the cost of reimbursement described in clause (ii) may be reduced or denied if:

> **(I)(aa)** at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
>
> **(bb)** 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa);
>
> **(II)** if, prior to the parents' removal of the child from the public school, the public agency informed the parents, through the notice requirements described in section 1415(b)(3) of this title, of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for such evaluation; or
>
> **(III)** upon a judicial finding of unreasonableness with respect to actions taken by the parents.

A school district may not argue that the "equities are in its favor once it has failed to provide a FAPE or concedes that it has not. N.R. v. Department of Education of the City of New York, 2009 WL 874061 (S.D.N.Y. 2009). In any case, in the instant matter, the Respondent offered no evidence or argument on the subject of the equities. I therefore find that the District has conceded the that there are, in fact, no equitable considerations which would mitigate against full reimbursement. In addition, a review of the evidence in the record reveals that no such equitable considerations exist.

**ORDER**:

Based on the Findings of Fact and Conclusions of Law and all evidence before the IHO, it is hereby ORDERED that:

1. That the New York City Department of Education is directed to reimburse and/or fund the cost of the Student's 2020-2021 and 2021-2022 placement at RLS in the amount of $166,870.00;
2. As to the tuition reimbursement/funding, all payments shall be made directly to the non-public, unilateral placement(s) upon a showing by the Parent that tuition has not been paid out-of-pocket by the Parent. If the Parent can show that out-of-pocket payment to the placement(s) was made by the Parent, then the Parent shall be reimbursed by the District;
3. The district must immediately upon receipt, enter this order on a system that is used to keep track of such orders.

SO ORDERED:

Dated: July 26, 2022

_Steven P. Forbes_

Steven P. Forbes
Impartial Hearing Officer

# NOTICE OF RIGHT TO APPEAL

Within 40 days of the date of this decision, the parent and/or the Public-School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

STATE EDUCATION DEPARTMENT OF NEW YORK

---------------------------------------------------------------X

In the Matter of a Complaint Pursuant to Part 200 of the Regulations of the Commissioner of Education Regarding, STUDENT, a minor, by and through his/her Parent(s),

Petitioners

Case No.: 220018

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Respondent.

---------------------------------------------------------------X

CERTIFICATION OF RECORD

The record before me as the Hearing Officer in this matter of the following:

1. Administrative Due Process Complaint dated October 21, 2021.

2. Notice of Hearing and Appointment dated March 17, 2022.

3. Parent's Exhibits A-H totaling one hundred fifteen (115) pages.

4. The written transcript of the hearing totaling seventy-six (76) pages.

5. Findings of Fact and Decision dated July 26, 2022.

I, Steven P. Forbes, the Hearing Officer in this matter, do hereby certify that the attached record is accurate and encompasses the entire record in the above-entitled matter as of this date.

I further certify that the materials forwarded herewith are the original or a true copy of the original documents and/or other tangible items that constitute the record in this matter.

EXECUTED this 26th day of July, 2022.

*Steven P. Forbes*

STEVEN P. FORBES
Impartial Hearing Officer

**L.V. v. NYC Department of Education, 03 Civ. 9917 (SDNY)**

Parents of children with Individualized Education Programs who received or who may receive an order at the conclusion of an impartial hearing should read the attached notice about possible disclosure of information and documents about their children as part of a federal court litigation.

Translations in Spanish, Arabic, Bengali, Chinese, French, Haitian Creole, Korean, Russian, and Urdu are available on the DOE webpage at https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings

## Notice of Potential Disclosure of Student Education Records

**Please read this notice carefully**. This is a message about possible disclosure of documents or data that might contain information about your child, if your child has been classified as a student with a disability and has been or may be the subject of a final Impartial Hearing Order.

### I. Nature of the Lawsuit

This lawsuit challenged the failure of the Department of Education ("DOE") of the City of New York to timely implement orders issued by impartial hearing officers in connection with impartial hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. and N.Y. Education Law § 4401, *et seq.* In 2007, the parties entered into a Stipulation of Settlement (the "Stipulation") in which the DOE agreed to timely implement these orders.

In January 2021, the Court granted plaintiffs' motion for the appointment of a special master. On April 14, 2021, the Court entered an Order appointing David Irwin of Thru-Ed as the Special Master. On May 14, 2021, the Court entered an Order detailing the duties and authority of the Special Master which include, among other things, the authority to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders a. Pursuant to this Order, the Special Master may have access to education records of students, upon DOE's compliance with the Family Education Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. Part 99) ("FERPA").

## II. Data Ordered to Be Disclosed

In order for the Special Master to perform his duties, the Court has directed the DOE to provide the Special Master (and employees and consultants at Thru-Ed) with access to records containing confidential student record information, including, but not limited to, documents submitted in the impartial hearing process, impartial hearing orders, data about compliance, and students' special education documents, such as individualized education programs, evaluations, authorizations, invoices, etc. The Special Master is required to keep any student documents and information confidential. No student-specific information will be shared with plaintiffs' counsel unless the student's parent specifically consents. If there is any student-specific information in the Special Master's reports to the Court, that information would not be made public.

The Special Master will use this information only for his work to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders. The disclosure of this information does not affect any of your rights as a parent to seek special education services for your child.

## IV. Objections to Disclosure

If you agree to the disclosure of this information to the Special Master, you do not need to do anything more.

If you do not want your child's information shared with the Special Master, you must object to this disclosure by submitting an objection to DOE's attorney, addressed to:

Jeffrey S. Dantowitz
NYC Law Department
100 Church Street, Room 2-121
New York NY 10007

or via email at LVObjection@law.nyc.gov. Please reference the *LV v. DOE* lawsuit (Case No. 03-9917) when writing. An Objection Form accompanies this Notice, though no written objection will be rejected if it is not submitted on this form. If you object, no records containing you and your child's personally identifiable information or other FERPA-protected information will be provided to the Special Master, although nominal and incidental disclosure of your child's name may occur. **Any objections must be received by December 3, 2021 or for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order**.

**If you would like more information about this notice, please contact the attorneys for plaintiffs, Rebecca Shore, of Advocates for Children of New York, Inc. at 646-532-6078.**

**OBJECTION TO DISCLOSURE OF RECORDS**
**LV v. DOE, 03 Civ. 9917 (SDNY)**

If you agree to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, you do not need to complete this form.

If you object to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, please compete and return this form to:

Jeffrey S. Dantowitz
NYC Law Department
100 Church Street, Room 2-121
New York, NY 10007

or via email at LVObjection@law.nyc.gov

Child's name: ___________________________________

Name: ________________________________________

Address: _______________________________________

Impartial Hearing Order Case # (if known): ______________

Date of Order (if known): _________________________

If you object to the release of your confidential information, please check the line below:

______ I do not agree to have my confidential records disclosed to the Special Master in *L.V. v. DOE*.

_____________________ _____________________________
Date Please sign here

If you object to the release of information, your objection must be received by December 3, 2021 or, for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order.

***   *   *** If you do not notify the DOE of your objections to the documents being released, you child's information will be provided to the Special Master appointed in *LV v. DOE*, 99 Civ. 9917 (SDNY) and/or consultants and employees of Thru-Ed. The information will remain confidential and the disclosure of this information will not affect any of your rights to seek special education services for your child.

| |
|---|
| للاطلاع على هذا المستند باللغة العربية، قُم بزيارة الموقع الإلكتروني https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| YgÄs ÄÖx Ät ÄÄë ná^l á, https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings ná^þÉ |
| 若要以中文查看，請上網到 https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pour consulter ce texte en français, allez sur https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pou wè tèks sa a an kreyòl ayisyen, ale sou https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| 본 문서를 한국어로 보시려면 다음 웹사이트를 이용하십시오: https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Для просмотра документа на русском языке посетите https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Para ver este contenido en español, visite https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| اس کو اردو میں دیکھنے کے لیے https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings پر جائیں |

# EXHIBIT "D"

Gmail [redacted]

[redacted]

[redacted]

[redacted]

**From:** LV Notice <LVNotice@schools.nyc.gov>
**Date:** December 13, 2022 at 7:36:09 AM EST
**To:** jokewriter@gmail.com
**Subject: Non-Implementation Notice: LV v. New York City Department of Education**

NYC
Department of Education
Chancellor David C. Banks

12/13/2022

Arabic - العربية

Bangla - বাংলা

Chinese - 中文

French - Français

Haitian Creole - Kreyòl ayisyen

Korean - 한글

Russian - Русский

Spanish - Español

Urdu - اردو

Re: Non-Implementation Notice: LV v. New York City Department of Education

Case number: 178252

Order Date: 5/3/2019

Dear Parent:

As part of the Settlement in *LV, et al. v. New York City Dept. of Educ., et al.*, an Independent Auditor reviews the timeliness of the New York City Department of Education's ("DOE") implementation of impartial hearing orders.

The Independent Auditor has reviewed the DOE's implementation of the Order(s) issued in the case(s) referenced above. Based on its review, the Independent Auditor has determined that the DOE has failed to timely implement all or part of the Order(s) referenced above concerning your child.

If you choose to take legal action concerning the DOE's failure to timely implement your order, this Non-Implementation Notice is the only evidence you will need initially to demonstrate that the DOE failed to timely implement your Order. The DOE may try to prove that the Independent Auditor's determination that your order was not timely implemented was wrong or that the Order has been implemented since the issuance of the Independent Auditor's findings. If the DOE does challenge your claim, you may want to present more evidence of your own. If you choose to bring legal action concerning your Order, you have certain rights to expedited discovery from the DOE. These rights are set out in Paragraph 20 of the Stipulation and Agreement of Settlement (available at https://www.advocatesforchildren.org/sites/default/files/on_page/Stipulation_of_Settlement_122007.pdf?pt=1).

If you would like to discuss the DOE's failure to timely implement your Order please contact the lawyer or advocate who represented you at your hearing or Advocates for Children at 646-532-6078. If your Order was for payment for services or tuition, you are encouraged to first contact your vendor to determine if payment was made.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LV, RC, AD, NA, ADJ, YG, LO, AP, RLB, RD, and JYW, individually; and VSG, HR, CW, SS, MG, MS, ST, RZ, MC and JP, on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION; NEW YORK CITY BOARD OF EDUCATION; JOEL KLEIN, in his individual and official capacity as Chancellor of the New York City School District,

Defendants.

No. 03 Civ. 9917 (RJH)

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement (the "Stipulation"), dated as of December 11, 2007, is made and entered into pursuant to Rule 23 of the Federal Rules of Civil Procedure and contains the terms of a settlement, by and among Lead Plaintiffs LV, RC, ADJ, AP, RLB, RD, and JYW, VSG, HR, CW, SS, MG, MS, ST, RZ, MC, and JP,[1] on behalf of themselves and Members of the Class (as defined below, as are other capitalized terms herein, except as otherwise noted) and Defendants New York City Department of Education, New York City Board of Education, and Joel Klein (collectively, "Defendants," and with Lead Plaintiffs, the "Parties").

1 The Parties will ask the Court to remove Lead Plaintiffs AD, NA, YG, and LO as Lead Plaintiffs, but this request will have no impact on any claims they have as Class Members.

## RECITALS

WHEREAS:

A. On December 12, 2003, Lead Plaintiffs filed the above-captioned class action (the "Action") alleging violations of the due process clause of the 14th Amendment of the U.S. Constitution; the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1983; Section 504 of the Rehabilitation Act of 1972, 29 U.S.C. § 794; and New York State Education Law §§ 4401 *et seq.*, and the regulations promulgated thereunder.

B. On February 5, 2004, Lead Plaintiffs filed a motion to certify the Action as a class action.

C. On April 15, 2004, Lead Plaintiffs filed their Second Amended Complaint (the "Complaint"). The Complaint alleges that Defendants failed to comply with Orders from December 12, 2003 through the present.

D. The Complaint further alleges that Defendants' failure to comply with the Orders is a systemic problem as the Orders are not enforced and implemented in a timely, effective, and comprehensive manner and alleges that Defendants lacked effective policies and procedures and did not develop or maintain a system to effectuate the timely, efficient, and comprehensive enforcement of Orders.

E. On April 30, 2004, Defendants filed a partial motion to dismiss the Second Amended Complaint.

F. On October 25, 2004, Plaintiffs renewed their motion for class certification.

G. By Order dated January 7, 2005, the Court denied Defendants' motion to dismiss the Second Amended Complaint.

H. By Memorandum and Order dated September 15, 2005, the Court granted Plaintiffs' motion for class certification.

I. On May 22, 2007, Defendants filed their Answer to the Complaint, in which they denied any liability, wrongdoing, or violation concerning the allegations in the Complaint and asserted affirmative defenses to the claims in the Complaint.

J. The Parties have engaged in extensive discovery relating to the claims and defenses concerning the underlying events and transactions alleged in the Complaint. Plaintiffs obtained document discovery from Defendants and took depositions of key individuals at the DOE.

K. Lead Plaintiffs, by their counsel, have conducted discussions and arm's length negotiations with Defendants and their counsel with respect to a compromise and settlement of the Action with a view to settling the issues in dispute.

L. Based upon their investigation and pretrial discovery as set forth above, Lead Plaintiffs have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate and in the best interests of the Class, and have agreed to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering the substantial benefits that members of the Class will receive from settlement of the Action; the attendant risks and costs of litigation, including the expense and length of continued proceedings; the difficulties and delays inherent in such litigation; and the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

M. This Stipulation is intended by Lead Plaintiffs and the Defendants to fully, finally, and forever resolve, discharge, and settle the Settled Claims against all Released Parties, upon and subject to the terms and conditions hereof and subject to the approval of the Court.

NOW, THEREFORE, without any admission or concession by Lead Plaintiffs of any lack of merit of the Action whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in their defenses whatsoever by Defendants, it is hereby STIPULATED AND AGREED, by and among the Parties to this Stipulation, through their respective attorneys, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure, that all Settled Claims as against all Released Parties and all Settled Defendants' Claims shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions:

## I. DEFINITIONS

1. As used in this Stipulation and for purposes of the Settlement only, the following terms shall have the following meanings:

a. "2004 Summer Related Services Compensation Program" means Defendants' program in the summer of 2004 where students who had received Orders that required the provision of related services were given the opportunity to access related services.

b. "Action Item" means a specific identifiable action in an Order that, as determined by the Independent Auditor, requires implementation by the DOE. In determining the Actions Items in an Order, the Independent Auditor will take into account, but will not be bound by, DAITS or any successor computer system.

c. "Authorized Claimant" means a Class Member who submits a timely and valid Proof of Claim form to the Claims Administrator, as described more fully in Paragraphs 27-29.

d. "Benchmark Measurement Period" means any given period of time during which the Independent Auditor shall measure the percentage of Orders and Action Items that the DOE has Timely Implemented to determine whether the DOE has complied with a given benchmark, as set forth more specifically in Paragraph 4.

e. "Claims Administrator" means The Garden City Group, Inc.

f. "Class" means the Compensatory Relief Subclass and the Injunctive Relief Subclass.

g. "Class Members" means the set of members of the Class, excluding any members of the Compensatory Relief Subclass who have timely and properly opted out of the Class.

h. "Commencement Date" means December 12, 2003.

i. "Compensatory Educational Services" means educational services and all attendant costs and/or assistive technology for the benefit of the student who was the subject of the Order provided by approved providers or approved by the Independent Auditor as described in Paragraph 34.e. A preliminary list of approved providers is attached hereto as Exhibit A.

j. "Compensatory Relief Subclass" means the class of all persons who, on or after December 13, 2000 and on or before January 31, 2008, (1) have obtained a favorable Order by an Impartial Hearing Officer against the DOE or a

stipulation of settlement placed on the record at an impartial hearing with the DOE and (2) failed to obtain full and timely implementation of such Order or settlement.

k. "Corrective Action Plan" means a plan devised by Defendants to address their past failure to implement Orders fully and timely and to increase the full and timely implementation of Orders following implementation of the Corrective Action Plan.

l. "Defendants' Counsel" means the Corporation Counsel of the City of New York.

m. "DOE" means the New York City Department of Education, the New York City Board of Education, their past or present affiliates, successors and predecessors.

n. "Effective Date" means the date set by the Court in accordance with the approval process for this Stipulation, as described in Paragraph 38.

o. "Final" with respect to an order of the Court means an order as to which there is no pending appeal, stay, motion for reconsideration or motion to vacate or similar request for relief, and as to which the period of time for appeal has expired. For purposes hereof, if no appeal or motion for reconsideration, to vacate, or for similar relief is filed within forty-five (45) days after entry of the Order and Final Judgment in the District Court, the Order and Final Judgment shall be deemed to be Final.

p. "Impartial Hearing Officers" means individuals who conduct hearings pursuant to 20 U.S.C. § 1415(f)(1)(A), Section 504 of the Rehabilitation Act, and any successor statutes.

q. "Independent Auditor" means the individual or entity appointed by the Court pursuant to the procedures set forth in Paragraph 12.

r. "Injunctive Relief Subclass" means the class of all persons who, on or subsequent to the Commencement Date, (1) obtain or obtained a favorable Order by an Impartial Hearing Officer against the DOE or stipulation of settlement placed on the record at an impartial hearing with the DOE and (2) fail or failed to obtain full and timely implementation of such Order or settlement.

s. "Non-Implementation Notice" means the notice to be sent to parents following the Effective Date if the Independent Auditor determines that a particular Order is Unimplemented. All Non-Implementation Notices shall be in the form, and contain the information set forth in, the form of Non-Implementation Notice attached hereto as Exhibit B.

t. "Order" means a decision, determination, order or statement of agreement and order (in its entirety, including all Action Items contained therein) issued by an Impartial Hearing Officer in New York City, under the IDEA, Section 504 of the Rehabilitation Act of 1972, 29 U.S.C. § 794, New York State Education Law §§ 4401 *et seq.*, any equivalent federal or state statute or law enacted subsequent to the Effective Date and which becomes the basis for adjudication by Impartial Hearing Officers, and all regulations promulgated thereunder.

u. "Order and Final Judgment" means the proposed order to be entered approving the Settlement substantially in the form attached hereto as Exhibit C.

v. "Payment Order" means an Order, or all Action Items within an Order, requiring the DOE to make a direct payment to a parent, private service provider, or private school.

w. "Plaintiffs' Counsel" means Advocates for Children of New York and Milbank, Tweed, Hadley, & McCloy LLP.

x. "Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Class substantially in the form attached hereto as Exhibit D.

y. "Prospective Payment Order" means a Payment Order requiring DOE to pay for services (including, where specified, any attendant costs) that had not been rendered or tuition (including, where specified, any attendant costs) that had not been paid as of the date of the Payment Order.

z. "Publication Notice" means the Summary Notice of Proposed Settlement of Class Action and Settlement Hearing substantially in the form attached as Exhibit E. To the extent there are any discrepancies between this Publication Notice and the Stipulation, the terms of the Stipulation govern.

aa. "Quarterly Measurement Period" means any given three-month period of time during which the Independent Auditor shall measure the percentage of Orders and Action Items that the DOE has Timely Implemented.

bb. "Reimbursement Payment Order" means a Payment Order requiring the DOE to pay expenses already paid by a Class Member.

cc. "Released Parties" means any and all of the Defendants, their past or present affiliates, subsidiaries, parents, successors and predecessors, officers, directors, agents, employees, attorneys, advisors, insurers, and investment advisors, auditors, accountants, and any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, heirs, successors in interest, or assigns of the Defendants.

dd. "Service Order" means an Order, or all Action Items within an Order, that requires the DOE to take any action other than make a payment directly to a parent, private service provider, or private school.

ee. "Settled Claims" means any and all claims, debts, demands, rights, or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liabilities whatsoever), whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class or individual in nature, (i) that have been asserted in this Action by the Lead Plaintiffs, Class Members, or any of them against any of the Released Parties, or (ii) that could have been asserted in any forum by the Lead Plaintiffs, Class Members, or any of them against any of the Released Parties which arise out of, relate to, or are based upon the

allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint. Settled Claims do not include (i) claims to enforce the Settlement or any provisions thereof, (ii) claims by members of the Compensatory Relief Subclass who opt-out or, (iii) individual claims by members of the Injunctive Relief Subclass concerning orders issued on or after February 1, 2008.

ff. "Settled Defendants' Claims" means any and all claims, rights, or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory, or common law or any other law, rule or regulation, that have been or could have been asserted in the Action or any forum by any Released Parties against any of the Lead Plaintiffs, Class Members, or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action (except for claims to enforce the Settlement or any provisions thereof).

gg. "Settlement" means the settlement contemplated by this Stipulation.

hh. "Settlement Notice" means the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees, and Settlement Fairness Hearing, which is to be sent to members of the Class substantially in the form attached hereto as Exhibit F. To the extent there are any discrepancies between this Settlement Notice and the Stipulation, the terms of the Stipulation govern.

ii. "Timely Implemented" means an Order or Action Item that was implemented within the length of time specified in the Order or, if no such time is specified in the Order, within 35 days of issuance (of the Order itself or of the

Order containing the Action Item), except that particular Orders or Action Items will also be considered to have been timely implemented for measurement purposes if:

i. the DOE has provided the parent with a notice that it is considering appealing the relevant Order or some part thereof in the form attached hereto as Exhibit G, but the DOE does not actually pursue an appeal, and (a) the DOE pays any monetary reimbursements required by the Order within 70 days of the date of issuance of the Order and (b) implements any other parts of the Order within 60 days of the date of issuance of the Order, provided that, except for Orders that require only monetary reimbursement, no more than 40 Orders per calendar year, and no more than 25 Orders in any particular six-month period, shall be eligible to be counted as Timely Implemented pursuant to this provision; or

ii. the DOE has demonstrated that it has taken all steps necessary to implement the Order or Action Item, but could not Timely Implement the Order or Action Item because implementation was dependent upon further steps that, in the determination of the Independent Auditor, could not be completed because of the action or inaction of a third party. Service providers with whom the Defendants have contracts to provide services shall not be deemed "third parties" for purposes of this provision.

jj. "Total Action Items" means the number of Action Items subject to consideration in each Quarterly or Benchmark Measurement Period, as described in more detail in Paragraph 15.

kk. "Total Orders" means the number of Orders subject to consideration in each Quarterly or Benchmark Measurement Period, as described in more detail in Paragraph 15.

ll. "Uncounted Orders" and "Uncounted Action Items" means particular Orders or Action Items that the Independent Auditor would otherwise consider during a particular Quarterly or Benchmark Measurement Period, but which shall not be considered during such Quarterly or Benchmark Measurement Period (and shall be excluded from the calculations of "Total Orders," "Orders Implemented," "Total Action Items," and "Action Items Implemented") if the Independent Auditor determines that:

i. The Order or Action Item cannot be Timely Implemented because it requires the DOE to take action that would either violate applicable law or is factually impossible. In each such instance, the DOE must either appeal the relevant Order or provide the parent with an appropriate written alternative to the requirements of the Order or Action Item and implement that alternative within 35 calendar days of the issuance of the Order. Absent these steps, the Order or Action Item will be included in "Total Orders" or "Total Action Items" but will not be counted as Timely Implemented.

ii. The Order or Action Item cannot be Timely Implemented because the DOE has made a substantial showing of attempts to reach the parent and attempts to obtain compliance with the parent's obligations under the Order. Absent these steps, the Order or Action Item will be included in

"Total Orders" or "Total Action Items," but not counted as Timely Implemented.

iii. The Order or Action Item cannot be Timely Implemented because it required the provision of occupational therapy, physical therapy or bilingual counseling, or services to be provided by hearing teachers, vision teachers, bilingual special education teachers, bilingual speech teachers, or monolingual speech teachers, (all of which the DOE maintains are shortage areas) and the DOE has made a substantial showing that it offered the parent an appropriate substitute service within 35 calendar days of the issuance of the relevant Order or Action Item. Absent these steps, the Order or Action Item will be included in "Total Orders" or "Total Action Items," but will not be counted as Timely Implemented.

iv. The Order, in its entirety, or the Action Item was timely appealed by the DOE.

mm. "Unimplemented" or "Unimplemented Order" means an Order or Action Item that is found by the Independent Auditor to have not been Timely Implemented.

## II. SCOPE AND EFFECT OF SETTLEMENT

2. The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action and any and all Settled Claims as against all Released Parties and any and all Settled Defendants' Claims against any of the Lead Plaintiffs, Class Members, or Plaintiffs' Counsel.

3. (a) Upon the Effective Date of this Settlement, the Class Members, on behalf of (i) themselves, and (ii) their past or present legal representatives shall, with respect to each and every Settled Claim, release and forever discharge, and shall forever be enjoined from prosecuting, any Settled Claims against any of the Released Parties.

(b) Upon the Effective Date of this Settlement, each of the Defendants, on behalf of themselves and the Released Parties shall, with respect to each and every Settled Defendants' Claim, release and forever discharge, and shall forever be enjoined from prosecuting, any Settled Defendants' Claim against any of the Lead Plaintiffs, Class Members, or Plaintiffs' Counsel.

## III. INJUNCTIVE RELIEF

4. Upon the Effective Date and subject to the requirements of Paragraph 10, the DOE must comply with the following benchmarks. For purposes of these benchmarks, compliance will be measured by the Independent Auditor for Payment Orders and Service Orders by both a percentage of Orders and a percentage of Action Items that have been Timely Implemented. Whether a particular benchmark has been met will be determined solely by the Independent Auditor, as provided below.

a. First Benchmark: For the period ending six months after the Effective Date (the "First Benchmark Measurement Period"), the DOE shall Timely Implement 75% of Action Items or Orders. If the DOE Timely Implements 75% or more of Action Items within the First Benchmark Measurement Period, then it must also Timely Implement 70% or more of Orders within the First Benchmark Measurement Period in order to be deemed in compliance with the First Benchmark. Alternatively, if the DOE Timely

Implements 75% or more of Orders within the First Benchmark Measurement Period, then it must also Timely Implement 70% or more of Action Items within the First Benchmark Measurement Period in order to be deemed in compliance with the First Benchmark.

b. Second Benchmark: For the six month period that immediately follows the monitoring period for which the DOE has been determined to have achieved the First Benchmark (the "Second Benchmark Measurement Period"), the DOE shall Timely Implement 85% of Action Items or Orders. If the DOE Timely Implements 85% or more of Action Items within the Second Benchmark Measurement Period, then it must also Timely Implement 80% or more of Orders within the Second Benchmark Measurement Period in order to be deemed in compliance with the Second Benchmark. Alternatively, if the DOE Timely Implements 85% or more of Orders within the Second Benchmark Measurement Period, then it must also Timely Implement 80% or more of Action Items within the Second Benchmark Measurement Period in order to be deemed in compliance with the Second Benchmark.

c. Third Benchmark: For two consecutive years ("Year 1" and "Year 2") following the monitoring period for which DOE has been determined to have achieved the Second Benchmark (the "Third Benchmark Measurement Period"), the DOE shall Timely Implement 91.5% of Action Items or Orders. If the DOE Timely Implements 91.5% or more of Action Items within the Third Benchmark Measurement Period, then it must also Timely Implement 88% or more of Orders within the Third Benchmark Measurement Period in order to be deemed in

compliance with the Third Benchmark. Alternatively, if the DOE Timely Implements 91.5% or more of Orders within the Third Benchmark Measurement Period, then it must also Timely Implement 88% or more of Action Items within the Third Benchmark Measurement Period in order to be deemed in compliance with the Third Benchmark.

5. Except as specified in Paragraph 7, the DOE will be deemed to have complied with a benchmark for a particular Benchmark Measurement Period if it complies with that benchmark on an aggregate basis for the full Benchmark Measurement Period (even if it was not in compliance for all separate Quarterly Measurement Periods within the Benchmark Measurement Period).

6. If a later Benchmark is met earlier than otherwise required by this Stipulation, then the provisions of this section shall operate as follows:

a. If, at the end of the First Benchmark Measurement Period, the DOE has met the Second Benchmark, then the Third Benchmark Measurement Period will commence instead of the Second Benchmark Measure Period.

b. If, at the end of the First Benchmark Period, the DOE has met the Third Benchmark, then the Third Benchmark Period will be deemed to have commenced at the beginning of the First Benchmark Measurement Period.

c. If, at the end of the Second Benchmark Measurement Period, the DOE has met the Third Benchmark Measurement Period, then the Third Benchmark Measurement Period will be deemed to have commenced at the beginning of the Second Benchmark Measurement Period.

7. If, after the Independent Auditor certifies that the Third Benchmark has been met for Year 1, the Independent Auditor concludes that the DOE did not meet the Third Benchmark for Year 2, but the DOE met or exceeded the Second Benchmark for Year 2, the time periods for compliance with the Third Benchmark will be extended for one year (the "Extension Period"). At the end of the Extension Period, if the DOE meets the Third Benchmark in the aggregate (i.e., the DOE has implemented at least (x) 91.5% of Total Action Items or Total Orders and (y) 88% of the other measure in a consecutive three-year period), then the provisions of Paragraph 22 will go into effect. However, if at the end of the Extension Period the DOE fails to meet the Third Benchmark in the aggregate, then the Parties will follow the provisions of Paragraph 10.b.

8. If, after the Independent Auditor certifies that the Third Benchmark has been met for Year 1, the Independent Auditor concludes that the DOE did not meet the Third Benchmark for Year 2 and also did not meet the Second Benchmark for Year 2, the provisions of Paragraph 10 shall apply. The success of any Corrective Action Plan required under this Paragraph will be measured with reference to the Third Benchmark.

9. Timely Implementation of Payment Orders and Service Orders will be measured separately for purposes of Paragraphs 10, 11, 15, 16, 21, 22, and 23.

10. Failure to Meet Benchmarks:

a. If the DOE (i) fails to meet the First Benchmark or the Second Benchmark at the required date or (ii) fails to meet the Third Benchmark at the end of Year 1, the DOE must, within three months of issuance of the final Benchmark Report (as defined below) notifying the parties of the missed

benchmark, formulate and implement a Corrective Action Plan designed to correct the problems that caused the DOE to miss the benchmark at issue.

b. If the DOE fails to meet the required benchmark for the six month period following implementation of the Corrective Action Plan, then Lead Plaintiffs may ask the Court, by motion within 60 days of the date of the relevant final Benchmark Report, or such longer time as the Court may grant by application, to hold that the DOE has violated this Stipulation and thereby impose a remedy on the DOE.

i. In connection with such a motion, Plaintiffs may request any remedy they deem appropriate.

ii. In connection with such a motion, the DOE may oppose the relief requested by Lead Plaintiffs.

iii. In connection with such a motion, the DOE may oppose the motion by arguing that the Court should decline to grant relief because the DOE has implemented the percentage of Orders required by the Benchmark at issue, even though it did not implement a sufficient percentage of the Action Items to satisfy the benchmark at issue, or the DOE has implemented the percentage of Action Items required by the Benchmark at issue, even though it did not implement a sufficient percentage of the Orders to satisfy the benchmark at issue

iv. In connection with such a motion, the record shall be limited to the Independent Auditor's Quarterly and Benchmark Reports (as defined below) and the documents and information available to the

Independent Auditor, even if not utilized by the Independent Auditor. The Lead Plaintiffs may rely on that record to support the relief they seek by motion, and the DOE may rely on that record to challenge the conclusions in the Independent Auditor's Reports and oppose the relief sought by Lead Plaintiffs in their motion.

v. If Lead Plaintiffs file such a motion, the DOE shall provide Lead Plaintiffs' Counsel with all documents concerning any aspect of the Independent Auditor's report that the DOE intends to dispute in defending against Lead Plaintiffs' motion within 60 days of the filing of the motion.

c. In the event that Lead Plaintiffs' Counsel do not timely file a motion, the missed benchmark will be deemed to have been met.

11. The Parties will not use any benchmark for any purpose in any litigation except for the purpose of showing compliance with their obligations under this Stipulation or in connection with motion practice contemplated by this Stipulation. In particular, the Parties will not argue, in any litigation, that these benchmarks (i) establish a basis for evaluating compliance with Defendants' obligations under federal or state law or (ii) establish a basis for Defendants' failure or refusal to implement any Orders (as to categories of Orders or as to individual Orders).

**Independent Auditor**

12. The Parties will ask the Court to select an individual or entity to act as the Independent Auditor. If the parties are able to agree on the selection of an Independent Auditor before December 21, 2007, the Parties shall submit a joint request to the Court. If the Parties are not able to agree on the selection of an Independent Auditor prior to

December 21, 2007, then on December 21, 2007, Lead Plaintiffs and Defendants shall each submit letter briefs (not to exceed 3 single-spaced pages, exclusive of attachments) proposing their respective suggestions for appointment as Independent Auditor. Lead Plaintiffs and Defendants shall each propose one individual or entity for appointment as Independent Auditor. The Parties may respond to each other's submissions regarding proposals for the Independent Auditor no later than January 4, 2007; any such responses shall be in the form of letter briefs not to exceed three single-spaced pages, exclusive of attachments.

a. The Independent Auditor appointed by the Court shall perform his, her or its duties at all times in an independent and unbiased manner. Upon appointment by the Court, the Independent Auditor shall do equal right to the poor and to the rich, shall not allow any of its decisions or determinations to be influenced by the prospect of obtaining future business from any individual or entity (including but not limited to the Parties), and will faithfully and impartially discharge and perform all the duties of the Independent Auditor set forth in the Stipulation and the orders of the Court.

b. Following the appointment of the Independent Auditor and before the Independent Auditor begins its substantive work, the Independent Auditor shall (i) meet with representatives of Lead Plaintiffs and Defendants jointly and (ii) meet with the representatives of Lead Plaintiffs and Defendants separately to enable Lead Plaintiffs and Defendants to give the Independent Auditor their views regarding the work to be done by the Independent Auditor and approaches the Parties believe the Independent Auditor should consider in performing such work.

Following the aforementioned meetings, the Independent Auditor may request advice from representatives of Lead Plaintiffs and/or Defendants on any issues that arise in the course of the Independent Auditor's work; the Independent Auditor shall have the sole discretion to determine whether to seek such advice and, if it does seek such advice, whether to follow any such advice it might receive.

c. The Independent Auditor appointed by the Court may retain a firm and/or individual with special education experience to assist in fulfilling the Independent Auditor's obligations hereunder, and who will be bound by the obligations of the Independent Auditor as specified in Paragraph 12.a. and can be removed by the same procedures specified in Paragraph 16.h.-i.; in the event the Independent Auditor does so, it shall provide notice of its retention of such firm and/or individual to counsel for the Parties, but shall not be required to seek the Court's permission for such retention. In addition, each report by the Independent Auditor shall disclose the names and affiliations of all individuals who participated or assisted in the preparation of such report.

13. As set forth herein, the Independent Auditor will determine whether particular benchmarks have been met.

14. The DOE will pay all costs and fees for the Independent Auditor's work.

15. The Independent Auditor will measure compliance with benchmarks as follows:

a. During each Quarterly or Benchmark Measurement Period, the Independent Auditor shall separately calculate the percentage of Orders and

Action Items for Payment and Service Orders that were timely implemented during that Quarterly or Benchmark Measurement Period by calculating the following metrics for each measurement period:

$$100 * \frac{\text{Orders Implemented}}{\text{Total Orders minus Uncounted Orders}} \quad \text{and} \quad 100 * \frac{\text{Action Items Implemented}}{\text{Total Action Items minus Uncounted Action Items}}$$

16. The Independent Auditor will generate reports concerning the DOE's implementation of Orders and Action Items for all Quarterly Measurement Periods (each a "Quarterly Report") and Benchmark Measurement Periods (each a "Benchmark Report") beginning on the Effective Date until the prospective relief provisions of this Stipulation have ceased to be in force, pursuant to the provisions in Paragraphs 22-23.

a. The Independent Auditor's reports will be based on information from the DOE's various Order tracking databases, samples of individual students' records (as the same are selected by the Independent Auditor), and interviews with staff of the New York City Impartial Hearing Office, Office of Nonpublic School Payables, DOE paralegals, Implementation Liaisons, and other staff responsible for implementing Orders. These interviews shall be conducted during a two-week period chosen by the Independent Auditor following the last date of each quarter.

b. In preparing its reports for each measurement period, the Independent Auditor shall consider Orders, except Uncounted Orders, that were issued at least 35 calendar days before the end of each Quarterly or Benchmark Measurement Period, that require the DOE to take action, and that the DOE has

not timely appealed. Where the Independent Auditor determines that a particular Order requires the DOE to take multiple actions that are dependent upon one another, and that the DOE cannot complete all such actions within 35 days, the Independent Auditor shall consider that Order and/or those Action Items during the Quarterly or Benchmark Measurement period during which implementation should have been completed under the terms of the Order.

c. Each Quarterly Report and Benchmark Report will address the implementation of Service Orders and Payment Orders separately.

d. When the Independent Auditor issues a report to assess compliance with a benchmark for a Benchmark Measurement Period, it shall aggregate the results for any previously reported quarters within that measurement period and shall report compliance on both a quarterly basis and for the Benchmark Measurement Period at issue.

e. Each Independent Auditor's Quarterly and Benchmark Report will identify any Orders that the Independent Auditor determines were Unimplemented by case number.

f. The Independent Auditor shall provide counsel for the Parties with drafts of its reports by email for comment before finalizing its reports no later than 45 calendar days following the end of each quarter, unless the parties agree otherwise. Counsel for the Parties may comment on those drafts within 15 calendar days of receiving the drafts from the Independent Auditor. The Independent Auditor may reflect comments from counsel for the Parties in its final reports based on its judgment of the merits of any such comments.

g. The Independent Auditor shall provide his or her final Quarterly and/or Benchmark Reports to Counsel for the Parties no later than 15 calendar days after the deadline for counsel for the Parties to provide comments to the Independent Auditor.

h. Any Party may apply to the Court for the removal of the Independent Auditor at any time. Such removal shall require a showing of (a) corruption or malfeasance by the Independent Auditor that suggests to the Court that the Independent Auditor is no longer able or suitable to perform the duties set forth in this Stipulation; (b) a material failure of the Independent Auditor to perform the duties set forth in this Stipulation, or (c) the death or unforeseen permanent or temporary unavailability of the Independent Auditor.

i. In event of the removal or resignation of the Independent Auditor, the Parties will agree on the individual(s) or entit(ies) to replace the Independent Auditor. If the parties are unable to reach an agreement within 60 calendar days of the Independent Auditor's removal or resignation, then the Parties will ask the Court to appoint a successor Independent Auditor; in such event, each Party may propose candidates or challenge candidacy proposed by the other Party.

**Rights Retained by Injunctive Relief Subclass**

17. Orders issued on or after February 1, 2008 and before the Effective Date will not be counted for purposes of Benchmark Compliance. However, the Independent Auditor will determine whether such Orders were Timely Implemented. No more than 60 days after the Effective Date, the Independent Auditor will provide to the DOE, based on the information described in Paragraph 16.a., a list of Unimplemented Orders issued

during the period between February 1, 2008 and the Effective Date. Within 14 calendar days of receipt of this list, DOE shall send a Non-Implementation Notice to each Class Member who received an Unimplemented Order during the period between February 1, 2008 and the Effective Date, and shall provide copies of such Non-Implementation Notices to Class Counsel as set forth in Paragraph 19.

18. Members of the Injunctive Relief Subclass whose Orders are issued on or after February 1, 2008 shall retain all rights to seek appropriate individual relief in an appropriate forum.

19. Within 14 calendars days after each Quarterly Report is issued in final form by the Independent Auditor, the DOE shall send a Non-Implementation Notice to each parent and child with an Unimplemented Order during that quarter. If the parent or child were represented by counsel in connection with the Order, the Non-Implementation Notice shall also be sent to counsel. All Non-Implementation Notices shall be sent by first-class mail and copies of all Non-Implementation Notices sent during each quarter shall be provided to Lead Plaintiffs' Counsel within 30 calendar days after each Quarterly Report is issued in final form by the Independent Auditor.

20. In the event that a parent or child who is sent a Non-Implementation Notice elects to commence litigation to enforce an Unimplemented Order, the Non-Implementation Notice shall be deemed *prima facie* evidence that the Order at issue was not Timely Implemented, and such parent or child shall not be required to come forward with additional evidence of failure to Timely Implement his or her Order unless the court concludes that the DOE has successfully proven that the Order at issue was in fact Timely Implemented. In seeking to prove Timely Implementation of the Order at issue,

the DOE shall be limited to the Independent Auditor's report pursuant to which the Non-Implementation Notice was sent and the documents and information available to the Independent Auditor in connection with the preparation of that report, all of which shall be made available to the parent or child (with such confidentiality restrictions as may be deemed appropriate) upon request (without the need for a formal discovery request) as soon as the DOE indicates an intent to seek to prove that the Order at issue was Timely Implemented.

**Sunset Provisions**

21. The DOE may meet the Third Benchmark at any time.

22. If the Independent Auditor certifies that DOE has met the Third Benchmark for either (i) each of Year 1 and Year 2 of the Third Benchmark Period (measured for each such year individually) or (ii) in the aggregate for three consecutive years if the provisions of Paragraph 7 or 8 have been triggered, the injunctive and prospective provisions of the settlement agreement will expire.

23. If the injunctive and prospective provisions of the Stipulation have not terminated pursuant to the provisions of Paragraph 22 within four years following the end of the monitoring period for which the DOE has been determined to have achieved the Second Benchmark, then the provisions of Paragraph 10.b will be followed.

## IV. COMPENSATORY RELIEF

24. For members of the Compensatory Relief Subclass who have not opted out by sending in the form attached hereto as Exhibit H by June 30, 2008, the DOE will provide compensatory relief as provided below. For Compensatory Relief Subclass Members whose Orders can be classified as multiple types, i.e. Service Orders,

Prospective Payment Orders, and/or Reimbursement Payment Orders, such members can seek each type of relief set forth below that is applicable to their respective Orders.

a. For Authorized Claimants whose Services Orders were not Timely Implemented, the DOE will pay for either:

i. the provision of Compensatory Educational Services, or

ii. the reimbursement of costs for educational services or assistive technology incurred by Authorized Claimants.

b. For Authorized Claimants who received a Prospective Payment Order issued prior to July 1, 2006 and who did not receive the services for which prospective payment was ordered, the DOE will pay for either:

i. the provision of Compensatory Educational Services, or

ii. the reimbursement of costs for educational services or assistive technology incurred by Authorized Claimants.

c. For Authorized Claimants who received a Prospective Payment Order issued between July 1, 2006 and June 30, 2007 and who did not receive the services for which prospective payment was ordered, the DOE will pay for either

i. the amount specified in the Prospective Payment Order that was never paid (provided that payments will not be made for services incurred more than two years after the Effective Date), or

ii. the provision of Compensatory Educational Services, or

iii. the reimbursement of costs for educational services or assistive technology incurred by Authorized Claimants.

d. For Authorized Claimants who received a Prospective Payment Order issued after June 30, 2007 and who did not receive the services for which prospective payment was ordered, the DOE will pay any amounts specified in the Prospective Payment Order that were not previously paid.

e. For Authorized Claimants who received a Prospective Payment Order and who received the services for which prospective payment was ordered, the DOE will pay any amounts specified in the Prospective Payment Order that were not previously paid.

f. Subject to the provisions of Paragraphs 29 and 30(i), (a), (b), and (c)(i) below, for Authorized Claimants whose Reimbursement Payment Orders were never paid, the DOE will pay any amounts ordered to be paid by the Reimbursement Payment Orders.

**Administration and Administration Expenses**

25. The Claims Administrator shall administer the claims for compensation for the Compensatory Relief Class subject to the jurisdiction of the Court.

26. The DOE shall pay all costs of administering such claims and making such payments, as well as the costs of giving notice of the Settlement.

**Authorized Claimants**

27. To be treated as an "Authorized Claimant," each member of the Compensatory Relief Subclass shall be required to submit a Proof of Claim (in the form attached Exhibit I). To the extent that there are discrepancies between the Proof of Claim form and the Stipulation, the Stipulation governs.

28. All Proofs of Claim must be submitted to the Claims Administrator on or before June 30, 2008. Any member of the Compensatory Relief Class who does not opt out and who does not submit a valid Proof of Claim by that date will not be entitled to receive any of the relief set forth in Paragraph 24, but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action or claim against the Released Parties concerning the Settled Claims. A Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first class Mail and addressed in accordance with the instructions thereon.

29. Each Proof of Claim will indicate which of the forms of relief outlined in Paragraph 24 it seeks. Each Proof of Claim must be supported by the documentation described below:

a. To the extent an Authorized Claimant seeks the reimbursement of education- or service-related costs incurred in connection with Orders that were not implemented, then the Authorized Claimants' Proof of Claim shall be accompanied by:

i. an invoice on provider letterhead detailing the amount owed or owing and the service provided, or an affidavit from the provider detailing the amount owed or owing and the service provided,

ii. both sides of a cancelled check, a credit card statement, a bank statement or on-line screen showing electronic debits, an Authorized Claimant affidavit of payment, or a copy of a loan agreement.

The Independent Auditor may excuse for good cause shown an Authorized Claimant's failure to provide the documents required under (i).

b. To the extent an Authorized Claimant seeks payment on a Payment Order that was never paid in full, and except where the Authorized Claimant seeks payment of a Prospective Payment Order issued on or before June 30, 2006, the Authorized Claimant must submit the following documentation with his or her Proof of Claim.

i. If the Authorized Claimant's Reimbursement Payment Order specified a dollar amount to be paid without submission of further documentation, the Authorized Claimant shall not be required to submit additional documentation in order to be paid and the Payment Order itself shall be the only evidence necessary to support the proof of claim.

ii. If (x) the Authorized Claimant seeks payment of a Prospective Payment Order issued on or before June 30, 2006 or (y) the Authorized Claimant's Reimbursement Payment Order (i) did not specify a dollar amount to be paid, (ii) specified only a maximum amount to be paid, or (iii) mandated reimbursement of a specified dollar amount upon submission of further documentation, the Authorized Claimant shall be required to submit:

(a) an invoice on provider letterhead detailing the amount owed or owing and the service provided, or an affidavit from the provider detailing the amount owed or owing and the service provided, and

(b) if payment relating to the Authorized Claimant's Order was made in whole or in part by the Authorized Claimant, both sides of a cancelled check, a credit card statement, a bank statement or on-line screen showing electronic debits, an Authorized Claimant affidavit of payment, or a copy of a loan agreement.

iii. Payment under Paragraph 29.b shall be made to the Authorized Claimant and/or service provider, as appropriate. Where payment is to be made to a service provider, DOE may request of that provider additional documentation (such as a substitute W-9 Form) if and only if (i) such additional documentation is required to process such payment and (ii) the DOE does not already have current documentation containing the same information for that provider on file. For the avoidance of doubt, the prior sentence shall only authorize a request for additional documentation to any particular provider once, regardless of how many Proofs of Claim relate to that provider. The Independent Auditor may excuse for good cause shown an Authorized Claimant's failure to provide the documents required under Paragraph 29.b.ii.a.

c. Where an Authorized Claimant seeks payment on a Prospective Payment Order issued on or after July 1, 2006, the Authorized Claimant shall be required to submit to the Claims Administrator the following documentation upon completion of the service:

(i) an invoice on provider letterhead detailing the amount owed or owing and the service provided, or an affidavit from the

provider detailing the amount owed or owing and the service provided,

(ii) and, if payment relating to the Authorized Claimant's Order was made in whole or in part by the Authorized Claimant, both sides of a cancelled check, a credit card statement, a bank statement or on-line screen showing electronic debits, an Authorized Claimant affidavit of payment, or a copy of a loan agreement.

Notwithstanding anything to the contrary in this Stipulation, no payment shall be authorized in connection with Prospective Payment Orders issued on or after July 1, 2006 for services incurred more than two years after the Effective Date.

30. For any Proof of Claim submitted, the DOE shall have the right to submit documentation by which the DOE can seek to demonstrate either that (i) the Order at issue was in fact Timely Implemented or (ii) the student suffered no or only *de minimis* harm despite the failure to Timely Implement the Order that is the subject of the Proof of Claim.

a. Any such challenge shall be submitted in full by the DOE no later than thirty-five (35) days after the Proof of Claim sought to be challenged is postmarked and shall be submitted by means of a written objection accompanied by documentary support. A full copy of any such challenge shall be sent to the claimant at the address specified in the Proof of Claim, by return receipt. A copy

will also be sent to any advocate identified by the Claimant on the Proof of Claim form.

b. A claimant shall have the right to respond to any challenge by the DOE by disputing any or all of the DOE's submission within sixty (60) days after receiving the DOE's challenge.

c. If the DOE's submission demonstrates to the satisfaction of the Independent Auditor that (i) the student's Order was in fact Timely Implemented or (ii) the student suffered no or only *de minimis* harm despite the failure to Timely Implement the student's Order, the claimant shall be entitled to no or *de minimis* Compensatory Educational Services, as determined by the Independent Auditor.

**<u>Distribution to Authorized Claimants</u>**

31. Subject to the following additional provisions, an Authorized Claimant seeking Compensatory Educational Services shall be presumed to be entitled to a voucher entitling the Authorized Claimant to $8,000 in educational services or assistive technology:

a. An Authorized Claimant shall be entitled to a voucher entitling the Authorized Claimant to $15,000 in Compensatory Educational Services if the student was out of school or in a grossly inappropriate placement for more than 45 school days within a 60 school day period, unless the DOE can demonstrate that its failure to Timely Implement the Authorized Claimant's Order was not the cause of the Authorized Claimant's grossly inappropriate placement or being out of school. Unless an Authorized Claimant establishes otherwise to the

Independent Auditor's satisfaction, Authorized Claimants who received home instruction will not be considered to be out of school or in a grossly inappropriate placement.

b. An Authorized Claimant for whom the DOE is able to demonstrate to the Independent Auditor's satisfaction that any harm to the child was *de minimis* shall receive a voucher for up to $2,000 in Compensatory Educational Services. Where the DOE demonstrates to the Independent Auditor's satisfaction that an Order was implemented within 60 calendar days from issuance, *de minimis* harm will be presumed unless the Authorized Claimant demonstrates otherwise to the Independent Auditor's satisfaction.

c. An Authorized Claimant for whom the DOE can demonstrate that it only failed to provide one of speech therapy, occupational therapy, physical therapy, or counseling pursuant to an Order shall receive a voucher entitling the claimant to $4,000 in Compensatory Educational Services.

d. An Authorized Claimant with multiple Orders during the Class Period will receive compensatory relief relating to no more than one Order per school year during the Class Period. An Authorized Claimant with multiple Orders issued in one school year during the Class Period shall receive compensatory relief under this Paragraph 31 relating to the Order that would entitle him or her to the greatest amount of relief for that school year.

e. Where the DOE affirms that it sent an invitation to participate in the 2004 Summer Related Services Compensation Program to a particular Authorized Claimant, the face value of such Claimant's voucher shall be reduced

by 50% or $4,000, whichever is less, unless the Independent Auditor determines that the Authorized Claimant has demonstrated that he or she did not receive the invitation or has established a reasonable justification for not using it. In no event shall application of this provision result in the elimination of the full value of an Authorized Claimant's voucher.

f. An Authorized Claimant who received a local or Regents high school diploma on or before January 31, 2008, shall not be entitled to receive a voucher for Compensatory Educational Services, but may make a claim for the reimbursement of costs incurred because his or her Order was not implemented, or for the payment of a Payment Order that was never paid.

32. Where an Authorized Claimant seeks payment on a Payment Order that was never paid in full, that Payment Order shall be paid in full by the DOE within 60 days of the later of (i) submission of the Proof of Claim, (ii) the submission of supporting documentation pursuant to Paragraph 29.b., (iii) submission by the provider of any documentation that may be required of it for the DOE to process such payment, or (iv) resolution in the Authorized Claimant's favor of any challenge brought by the DOE pursuant to Paragraph 30(i), (a), (b), and (c)(i).

**Administration of the Settlement**

33. Each Proof of Claim shall be reviewed and approved by the Claims Administrator, subject to the following provisions for review of certain Proofs of Claim by the Independent Auditor:

a. All Proofs of Claim seeking vouchers for Compensatory Educational Services shall be reviewed and approved by the Independent Auditor.

The Independent Auditor shall determine the amount of Compensatory Educational Services awarded to any Authorized Claimant who submits a Proof of Claim according to the guidelines set forth above in Paragraph 31. The Independent Auditor's determination of the amount to be awarded to a particular claimant shall be conclusive and not subject to challenge.

b. Where a Proof of Claim is challenged by the DOE pursuant to Paragraph 29, the Proof of Claim form (together with any objection by the DOE and any response thereto by the claimant) will be forwarded to the Independent Auditor, who shall determine in accordance with this Stipulation the extent, if any, to which the Proof of Claim shall be allowed. The Independent Auditor's determination in this regard shall be conclusive and not subject to challenge.

**Vouchers**

34. Compensatory Educational Services will be provided by means of vouchers. Subject to the specific provisions below, each Authorized Claimant that receives one or more vouchers for educational services and/or assistive technology shall be permitted to use his or her vouchers as he or she determines is in the student's best interest.

a. The amount for which an Authorized Claimant can use a voucher for assistive technology will be capped at $3,000.00, unless the Authorized Claimant provides the Independent Auditor with information sufficient to establish a need for assistive technology the cost of which exceeds $3,000.00.

b. The DOE will have no obligation to support any assistive technology selected by an Authorized Claimant or provide such technology, including any upgrades or updates.

c. An Authorized Claimant may use a voucher at approved providers that have agreed to accept the voucher as payment, a preliminary list of which providers is attached hereto as Exhibit A. These providers will submit invoices for payment to the Claims Administrator. The invoices will be paid within 45 days of submission. The DOE, at all times, will make sufficient funds available for payment of these invoices within 45 days of submission.

d. Vouchers may be used for a combination of services or technology, from one or more providers, up to the limit of their face value.

e. An Authorized Claimant may request approval from the Independent Auditor for the use of a voucher at providers who have not been approved. The Independent Auditor's determination of such a request shall be conclusive and not subject to challenge. These providers will submit invoices to Claims Administrator. If such providers do not provide assistive technology to an Authorized Claimant, the invoice must describe the Authorized Claimant's attendance at the provider's school or location of service, a description of the provider's school or the service provided, and the amount due.

f. An Authorized Claimant must begin using his or her voucher within one year of receiving the voucher and must complete using the voucher within two years of receiving the voucher.

**Right to Opt Out of the Settlement**

35. Any member of the Compensatory Relief Subclass may request to be excluded from the Compensatory Relief Subclass by returning the opt-out form attached hereto as Exhibit H no later than June 30, 2008, but cannot request exclusion from the Injunctive Relief Subclass, to the extent that they are a member of both subclasses. Any member of the Compensatory Relief Subclass who submits a valid and timely request for exclusion shall have no rights to Compensatory Educational Services, shall not receive a voucher, and will not be deemed to have released any of the Defendants with regard to his or her right to seek appropriate individual relief in an appropriate forum.

**TERMS OF ORDER FOR NOTICE AND HEARING**

36. Promptly after this Stipulation has been fully executed, counsel for the Parties shall apply to the Court for entry of the Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings, substantially in the form annexed hereto as Exhibit D. In connection with that application, counsel for the Parties shall ask the Court to hold the Settlement Fairness Hearing (as defined in the Order for Notice and Hearing) no earlier than February 4, 2008.

## V. TERMS OF ORDER AND FINAL JUDGMENT

37. If the Settlement contemplated by this Stipulation is approved by the Court, Counsel for the Parties shall request that the Court enter the Order and Final Judgment substantially in the form annexed hereto as Exhibit C.

## VI. EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

38. The "Effective Date" of the Settlement shall be the first day of the month after all of the following shall have occurred:

a. Final Approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

b. Entry by the Court of the Order and Final Judgment, substantially in the form set forth in Exhibit C annexed hereto, which Order and Final Judgment has become Final, or, in the event that the Court enters an order and final judgment in a form other than the Order and Final Judgment ("Alternative Judgment") and none of the Parties hereto elect to terminate the Settlement, the date that such Alternative Judgment becomes Final.

c. The Effective Date shall be no sooner than March 1, 2008.

For example, if the provisions of Paragraphs 38a. and b. are satisfied as of March 20, 2008, the Effective Date would be April 1, 2008.

39. Defendants' Counsel or Plaintiffs' Counsel shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so to all other Parties hereto within thirty (30) days of: (i) the Court's declining to enter the Order for Notice and Hearing in any material respect; (ii) the Court's refusal to approve this Stipulation or any material part of it; (iii) the Court's declining to enter the Order and Final Judgment in any material respect or the Court's entry of an Alternative Judgment; (iv) the date upon which the Order and Final Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Second Circuit or the Supreme Court of the United States; or (v) the date upon which an Alternative

Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Second Circuit or the Supreme Court of the United States (if the Settlement and this Stipulation have not been earlier terminated as a result of the entry of such Alternative Judgment).

40. Except as otherwise provided herein, in the event the Settlement is terminated, reversed, or fails to become effective for any reason, then the Parties to this Stipulation shall be deemed to have reverted to their respective positions in the Action immediately prior to the execution of this Stipulation and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Stipulation and any related orders had not been entered.

## VII. ATTORNEYS' FEES AND EXPENSES

41. The Parties agree that Plaintiffs' Counsel are entitled to a reasonable attorneys' fee and reimbursement of expenses. Lead Plaintiffs will submit a request to Defendants' Counsel for attorneys' fees no later than January 29, 2008. After receipt of Lead Plaintiffs' request, counsel for the Parties will negotiate the fee. If counsel cannot agree within ninety (90) days of Lead Plaintiffs' request for fees, Lead Plaintiffs will apply to the Court for an award of attorneys' fees and reimbursement of expenses. Defendants shall pay the amount of any such award to Plaintiffs' Counsel within 60 calendar days after any award of attorneys' fees becomes Final.

42. The Parties agree that Plaintiffs' Counsel are also entitled to a reasonable attorneys' fee and reimbursement of expenses for time spent executing and enforcing the terms of this Stipulation set forth in Paragraphs 4-12,16.f-16.i, 19-20, 34.c, and 36-42. Lead Plaintiffs will submit requests to Defendants' Counsel for these fees no later than June 30 of each calendar year until the provisions of Paragraph 22 become effective. If

counsel cannot agree on the fees due for each yearly period within ninety (90) days of Lead Plaintiffs' request for fees, Lead Plaintiffs will apply to the Court for an award of attorneys' fees and reimbursement of expenses for such yearly period, and the Defendants shall pay the amount of any such award to Plaintiffs' Counsel within 60 calendar days after any such award of such attorneys' fees becomes Final.

## VIII. MISCELLANEOUS PROVISIONS

43. All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

44. The Parties to this Stipulation intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Class Members against the Released Parties with respect to the Settled Claims. Accordingly, Lead Plaintiffs and Defendants agree not to assert in any forum that the litigation was brought or defended in bad faith or without a reasonable basis. The Parties shall assert no claims of any violation of Rule 11 or any other provision of the Federal Rules of Civil Procedure or any statute relating to the prosecution, defense, or settlement of the Action. The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's length in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

45. This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties or their successors-in-interest, or by order of the Court.

46. The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

47. The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and expenses to Plaintiffs' Counsel and enforcing the terms of this Stipulation. The Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation and the orders contemplated herein.

48. The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior, contemporaneous, or subsequent breach of this Stipulation.

49. This Stipulation and its exhibits constitute the entire agreement among the Parties concerning the Settlement of the Action, and no representations, warranties, or inducements have been made by any party hereto concerning this Stipulation and its exhibits other than those contained and memorialized in such documents. This Stipulation supersedes and replaces any prior or contemporaneous writing, statement, or understanding.

50. This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Stipulation shall exchange among themselves original signed counterparts.

51. This Stipulation and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York, and the construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal

laws of the State of New York without regard to principles relating to conflicts of laws, except to the extent that federal law requires that federal law govern.

52. This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

53. All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

54. Lead Plaintiffs' Counsel and Defendants' Counsel agree to cooperate fully with one another with respect to the Parties' seeking Court approval of the Order for Notice and Hearing, the Stipulation, and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

55. Nothing in this Stipulation shall be deemed to be a waiver of any applicable privilege against disclosure, including but not limited to the attorney-client privilege and the attorney work product doctrine, and no party shall argue that any privilege was waived in connection with the negotiation of the Settlement or this Stipulation.

56. This Stipulation shall be binding upon, and inure to the benefit of, the Parties and their respective successors, assigns, heirs, spouses, executors, administrators and legal representatives.

57. All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation.

58. Wherever in this Stipulation or in the exhibits "notice," "notification," or the like is provided for, such "notice," "notification," or the like shall be in writing, unless otherwise specified.

Dated: New York, New York
December 11, 2007

**ADVOCATES FOR CHILDREN OF NEW YORK**

By: ______________________
Shawn V. Morehead
151 West 30th Street, 5th Floor
New York, New York 10001
Telephone: (212) 822-9525

-and-

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: ______________________
Douglas W. Henkin
Rachel Penski
One Chase Manhattan Plaza
New York, New York 10005-1413
Telephone: (212) 530-5000
**Counsel for Lead Plaintiffs and the Class**

**MICHAEL A. CARDOZO CORPORATION COUNSEL OF THE CITY OF NEW YORK**

By: ______________________
Jeffrey S. Dantowitz
100 Church Street, Room 2-121
New York, New York 10007
Telephone: (212) 788-0939

**Counsel for Defendants**

# NYSCEF Confirmation Notice

## Kings County Supreme Court

The NYSCEF website has received an electronic filing on 01/19/2023 02:22 PM. Please keep this notice as a confirmation of this filing.

**501944/2023**

**Gary Apple v. The Department of Education of the City of New York**

**Assigned Judge: None Recorded**

### Documents Received on 01/19/2023 02:22 PM

| Doc # | Document Type |
|---|---|
| 1 | SUMMONS + COMPLAINT |
| 2 | EXHIBIT(S) A |
| 3 | EXHIBIT(S) B |
| 4 | EXHIBIT(S) C |
| 5 | EXHIBIT(S) D |

### Filing User

Stewart Lee Karlin | slk@stewartkarlin.com | (212) 792-9670
111 John Street, 22nd Floor, New York, NY 10038

### E-mail Notifications

An email regarding this filing has been sent to the following on 01/19/2023 02:22 PM:

**STEWART L. KARLIN - slk@stewartkarlin.com**

# NYSCEF Confirmation Notice

## Kings County Supreme Court

**501944/2023**

**Gary Apple v. The Department of Education of the City of New York**

**Assigned Judge: None Recorded**

### Email Notifications NOT Sent

| Role | Party | Attorney |
| --- | --- | --- |
| Respondent | The Department of Education of the City of | No consent on record. |

* Court rules require hard copy service upon non-participating parties and attorneys who have opted-out or declined consent.